UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CORR WIRELESS COMMUNICATIONS, L.L.C.
CELLULAR SOUTH, INC., AND
CELLULAR SOUTH LICENSES, LLC                        PLAINTIFFS

vs.                               CIVIL ACTION NO. 3:12-cv-00036-SA-SAA

AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC., AND
QUALCOMM INCORPORATED                                      DEFENDANTS

**REPLY OF CELLULAR SOUTH PLAINTIFFS
TO QUALCOMM'S RESPONSE TO
PLAINTIFFS' MOTION FOR EXPEDITED SCHEDULING AND CASE
MANAGEMENT CONFERENCE AND OTHER RELIEF**

Plaintiffs Corr Wireless Communications, L.L.C.; Cellular South, Inc.; and Cellular South Licenses, LLC (collectively "Cellular South") submit this Reply to Defendant Qualcomm Incorporated's Response in Opposition to Cellular South's Motion for Expedited Scheduling [Doc. #20] and supporting memorandum ("Response") [Doc. #21].

## INTRODUCTION

Qualcomm's Response makes it clear that Qualcomm is already fully familiar with the facts and the legal issues presented by this lawsuit. Indeed, Qualcomm is sufficiently apprised of the facts to tell the Court that Cellular South actually has "fundamentally a technological problem and a business problem." Response, at 2. Moreover the Response makes it clear that Qualcomm is already well along in the process of formulating a two-pronged response to the complaint consisting of (1) a Rule 12(b)(6) motion; and (2) a primary jurisdiction motion in light of the pending FCC proceedings referenced in Qualcomm's Response. Response at 2.

Cellular South's Complaint details how the Defendants themselves created what Qualcomm refers to as the so-called "technological and business problem" through actions that

01352417

violated Sections 1 and 2 of the Sherman Act. Cellular South's Complaint asserts that any solution can be remedied only by an order of this Court that remedies the effects of that unlawful conduct.

Obviously, the parties see this case very differently. But clearly this is not the procedural occasion to determine "who is right and who is wrong" or how the case will ultimately be resolved. What is at issue now is Cellular South's request that this Court establish a schedule that will allow the case to be decided on the merits within a time frame that will protect Cellular South, if it prevails on the merits, from further irreparable harm. Until this matter is resolved on the merits and appropriate injunctive relief provided, the actions of the Defendants will continue to injure Cellular South by depriving it of the essential devices and roaming capability that are necessary to effective competition in the wireless carrier market.

Under these circumstances of irreparable harm, there is simply no merit to the suggestion of Qualcomm and the other Defendants that this case should simply be conducted on some "customary" schedule that is appropriate for more typical cases that do not involve irreparable harm.

There is no inappropriate burden with proceeding on an expedited basis in this matter. Qualcomm and the other Defendants are fully informed about the facts because they have been involved at every step of the creation of Band 17 as the private domain of AT&T. The Defendants, with their enormous financial resources and access to very capable lawyers, will have no difficulty in litigating these issues within the time suggested by Cellular South's proposed scheduling order.

01352417

Thus, Cellular South's request is completely consistent with the Federal and Local Rules of Civil Procedure, efficient use of this Court's resources and the swift and efficient resolution of this litigation.

## ARGUMENT

I. **Cellular South's Motion complies with the federal rules and properly invokes this Court's discretion to tailor the scheduling order to meet the specific needs of this unique case.**

Qualcomm devotes most of its Response to a defense of the Federal and Local Rules of Civil Procedure and this Court's authority. Yet, Cellular South's Motion offends neither. First, the expedited scheduling and case management that Cellular South seeks for this unique case is specifically contemplated – in fact, encouraged – by those very rules. Federal Rule 1 states that the civil procedure rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." The primary vehicle through which the federal courts "secure the just, speedy, and inexpensive determination of every action" is by exercising their discretion to tailor their pretrial scheduling orders specifically to suit each case before them pursuant to Federal Rule 16, which "promotes a concept of judicial management with the participation and cooperation of counsel and the parties to reach a *swift, inexpensive and just resolution of litigation.*" Moore's Federal Practice § 16.03[1][a] (3d ed. 2011) (emphasis added).

Rule 16(a) expressly provides that "[i]n any action, *the court may order the attorneys . . . to appear for one or more pretrial conferences* for such purposes as: (1) *expediting disposition of the action*; [and] (2) *establishing early and continuing control so that the case will not be protracted . . .*" (emphasis added). Thus, there can be no dispute that this Court may in its discretion order the attorneys for these Defendants to appear for an early pretrial conference as

3

01352417

requested by Cellular South for the purpose of "expediting disposition of th[is] action." Moreover:

> Rule 16 is explicitly intended to encourage ***active judicial management*** of the case development process and of trial in most civil actions. Judges must fix deadlines for completing the major pretrial tasks, and ***judges are encouraged to actively participate in designing case-specific plans for positioning litigation as efficiently as possible*** for disposition by settlement, motion, or trial.

Moore's Federal Practice § 16.02 (emphasis added).

Rather than the "settled" and "customary" procedures that Qualcomm demands be applied in this case, "Rule 16 gives a judge in actively managed cases a wide range of tools, and then directs the judge to selectively apply those tools to tailor a case development plan that is directly responsive to ***the specific needs and circumstances of each individual case***." *Id.* at § 16.03[2] (emphasis added). Thus:

> Rule 16, perhaps more clearly than any other rule, reflects an ***express rejection of the notion that one procedural size fits all cases.*** To equip judges to fashion case development plans that are tailored to the needs to individual cases, the Rule necessarily confers a great deal of discretion on the individual judges who apply it.

*Id.* at § 16.04[1][a] (emphasis added).

Moreover, the flexible case management powers spelled out under Rule 16 are entirely consistent with this Court's inherent authority to manage its docket so as to best promote justice and judicial efficiency. *See Johnson v. Okolona Mun. Separate Sch. Dist.,* 2010 U.S. Dist. LEXIS 44682 (N.D. Miss. 2010) ("The Court has the 'inherent power to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants.' Indeed, the Court has a duty to manage its docket 'to achieve the orderly and expeditious disposition of cases.'") (quoting *United States v. Colomb,* 419 F.3d 292, 299 (5th Cir. 2005)); *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir. 1995) ("The federal courts are vested

4

01352417

with the inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' This power is necessarily incident to the judicial power granted under Article III of the Constitution.") (footnotes omitted).

Rule 16(b)(1) thus specifically provides that the Court should enter its scheduling order *either* "(A) after receiving the parties' report under Rule 26(f); *or* (B) after consulting with the parties' attorneys . . . *at a scheduling conference* or by telephone, mail, or other means." (Emphasis added). Under Rule 16(b)(3)(A), the scheduling order must specifically "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Under Rule 16(b)(3)(B), the scheduling order may also, in the Court's discretion:

(i) modify the timing of disclosures under Rules 26(a) and 26(e)(1);
(ii) modify the extent of discovery:
(iii) provide for disclosure or discovery of electronically stored information;
(iv) include any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced;
(v) set dates for pretrial conferences and for trial; and
(vi) include other appropriate matters.

Just such a scheduling conference and scheduling order are, of course, exactly what Cellular South proposes in its Motion. Additionally, Rule 16(c)(2) provides that "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters," among others:

(A) formulating and simplifying the issues, and eliminating frivolous claims or defenses;

\* \* \*

(E) determining the appropriateness and timing of summary adjudication under Rule 56;
(F) controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37;

5

    (G)    identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further conferences and for trial;

    (H)    referring matters to a magistrate judge or a master;

* * *

    (K)    disposing of pending motions;

    (L)    adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;

    (M)    ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue;

* * *

    (O)    establishing a reasonable limit on the time allowed to present evidence; and

    (P)    facilitating in other ways the just, speedy, and inexpensive disposition of the action.

These are, again, precisely the sorts of provisions proposed by Cellular South.

Nor has Cellular South violated the Court's uniform local rules by asking the Court in its discretion to order an early scheduling conference to expedite this case. On the contrary:

> Even in courts with elaborate local rules, the assigned judge retains discretion to order an initial case management conference when the judge is not obligated to do so by some general directive. Thus, counsel who believe that their case would benefit from such a conference are encouraged to ask (jointly, if possible) the assigned judge to schedule one. In making this request, counsel should explain how the conference would contribute to the expedition and rationality of the case development process and should propose an agenda.

Moore's Federal Practice § 16.31 (emphasis added). Once again, this is exactly what Cellular South has requested with its Motion for Expedited Scheduling and Case Management Conference.

6

01352417

## II. This case requires expedited treatment if Cellular South is to obtain meaningful relief.

As demonstrated in its Motion, Cellular South's proposed trial date of March 31, 2013, is at the "back end of the window" that would allow the Court to issue effective injunctive relief to prevent significant, irreparable harm resulting to Cellular South and to competition in the wireless carrier market from the Defendants' ongoing unlawful conduct. It has now become clear, after many efforts to seek to develop alternative business and technological solutions that would allow Cellular South to avoid this litigation, that relief from this Court provides the only feasible way for Cellular South to deploy its Band 12 4G-LTE network on any schedule that may reduce, if not eliminate, the irreparable harm that is being suffered. Therefore, Cellular South has proposed a case management order that reasonably tracks backward from that assumed trial date to establish the necessarily ambitious motion and discovery deadlines. *See* Doc. # 10-1.

Cellular South thus demonstrated in its Motion why it must obtain its requested injunctive relief by no later than the Spring of 2013 if the injunction is to prevent further irreparable harm. Nothing in Qualcomm's Response refutes this showing. Moreover, it is clear from Qualcomm's Response that it intends to respond to the Complaint with one or more Rule 12(b) motions to dismiss. Thus, at this juncture Qualcomm's interest is not in the "massive fact-gathering effort" it claims is necessary to answer the Complaint, but rather the preparation of motion(s) to dismiss and any related motions based on primary jurisdiction (as suggested in the Response). It should be noted that Qualcomm has already had nearly three weeks to work on preparation of those motions, as of the date of this Reply. Cellular South's Proposed Case Management and Scheduling Order [Doc. #10-1] suggests a briefing schedule for such motions that will allow all parties to fully brief the motions, and the Court to hear argument, if desired, and rule on the motions, before discovery even begins.

01352417

In response to Qualcomm's assertion that Cellular South's failure to seek preliminary injunctive relief belies its claim of economic hardship, Cellular South has already noted in its Motion that it would not be feasible to submit the bond that would be required to obtain preliminary injunctive relief. *See* Doc. #10 at ¶ 10. It is also very difficult to see how Qualcomm's arguments about the complexity of the case and the fact-finding necessary would be any different if Cellular South were instead seeking a preliminary injunction and claiming a substantial likelihood of success on the merits of the case as required for such relief.[1] Finally, the injunctive relief sought by Cellular South is by its very nature permanent – since it would be difficult, if not impossible, for it to be undone once implemented. Therefore, it makes much more sense for the Court to proceed directly to trial on Cellular South's claims for permanent injunctive relief as contemplated by Cellular South's proposed case management order.

Cellular South agrees with Qualcomm as to the need for a meet and confer to explore whether and to what extent the parties can agree on the proposed schedule. Indeed, Cellular South proposed such a meeting to all counsel for Defendants by email immediately following their respective appearances in the case. However, while all have expressed a willingness to eventually participate in a meet and confer at some unspecified time in the future, none has agreed to such a conference to date. Of course, judging from Qualcomm's Response and insistence that this case be scheduled in the "customary" course, it appears unlikely that such a meeting would produce any overall agreement. However, Cellular South continues to stand ready for such a conference at any time and continues to suggest that it would be appropriate for

---

[1] Citing *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974), the Court in *Union Nat. Life Ins. Co. v. Tillman*, 143 F.Supp. 2d 638, 641 (N.D. Miss. 2000), set forth the standard for granting a preliminary injunction. The party seeking the same must establish the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied; (3) that the threatened injury to the plaintiff outweighs any damage that an injunction might cause the defendant; and (4) that granting the injunction will not disserve the public interest.

8

01352417

the parties to discuss the details of the various elements of the proposed schedule as preparation in the event that Court should agree with the overall time frame proposed by Cellular South.

### III. Need for Special Master.

Qualcomm also opposes Cellular South's request for a special master to handle discovery issues that may arise in this case, arguing that it is "ironic" that Cellular South would suggest that the Court may need assistance to deal with a complex case while simultaneously shortening trial deadlines. There is nothing ironic about what Cellular South is suggesting. First, Fed. R. Civ. P. 53 plainly allows, and Fed. R. Civ. P. 16(c)(2)(H) specifically contemplates, referral of certain matters to a special master. Second, the Defendants in this case are sophisticated litigators, regularly involved in complex business disputes that require short response, discovery and trial preparation times. In fact, the federal court in the recently concluded AT&T/T-Mobile merger litigation appointed a special master and greatly expedited the discovery proceedings. AT&T did not oppose the appointment.

On the other hand, the workload of our Magistrate Judges in this judicial district has recently increased significantly as a result of their share in responsibility for civil cases. Thus, Cellular South's suggestion that a special master be appointed to navigate discovery issues on an expedited schedule is a reasonable attempt to alleviate the burden to the Court while at the same time expediting resolution of this matter.

### CONCLUSION

Clearly, some cases are more pressing than others. Simply put, claims for injunctive relief to prevent further irreparable harm are more pressing than claims for damages for past wrongs. It is precisely for this reason that the Federal Rules grant the Court wide discretion to control its docket and scheduling. Consistent with these principles, Cellular South is asking the

01352417

Court to establish a case management schedule that offers the opportunity to resolve this case on a time schedule that would afford Cellular South meaningful relief in the event that it prevails.

For all of these reasons, Cellular South respectfully requests that the Court set a scheduling and case management conference at its earliest convenience and, after such conference, enter a scheduling order based on the proposed case management order attached as Exhibit 1 to Cellular South's Motion for Expedited Scheduling and Case Management Conference and Other Relief.

Dated: April 23, 2012.

Respectfully submitted,

/s Alan W. Perry
Alan W. Perry, MSB #4127
Daniel J. Mulholland, MSB #3643
Walter H. Boone, MSB #8651
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
City Centre, Suite 200
200 South Lamar Street
Jackson, Mississippi 39201
Tel.: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Jr., MSB #8995
M. Patrick McDowell, MSB # 9746
Joseph A. Sclafani, MSB #99670
Brian C. Kimball, MSB #100787
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Tel.: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

01352417

Walter T. Johnson, MSB #8712
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
P.O. Box 650
Jackson, MS 39205
Tel: 601-965-1900
Fax: 601-965-1901
wjohnson@watkineager.com

*Counsel for Plaintiffs Cellular South, Inc.,
Corr Wireless Communications, L.L.C. and
Cellular South Licenses, LLC*

01352417

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF System, which sent notification of such filing to the following:

*Attorneys for Defendants AT&T, Inc. and AT&T Mobility LLC:*

David W. Upchurch
Holland, Ray, Upchurch & Hillen, P.A.
P.O. Drawer 409
Tupelo, MS 38802-0409

*Attorneys for Defendant Qualcomm Incorporated:*

L.F. Sams, Jr.
Otis R. Tims
Margaret Sams Gratz
Mitchell, McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802-7120

Cravath, Swaine & Moore LLP
825 8th Avenue
New York, NY 10019

*Attorneys for Defendant Motorola Solutions, Inc.:*

Jim M. Greenlee
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 South Lamar Blvd., Suite A
P.O. Drawer 707
Oxford, MS 39655

This, the 23rd day of April, 2012.

/s Alan W. Perry
Alan W. Perry

01352417