# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| CORR WIRELESS COMMUNICATIONS, L.L.C., CELLULAR SOUTH, INC., AND CELLULAR SOUTH LICENSES, LLC<br><br>Plaintiffs<br><br>v.<br><br>AT&T, INC., AT&T MOBILITY LLC, MOTOROLA SOLUTIONS, INC., MOTOROLA MOBILITY, INC., AND QUALCOMM INCORPORATED<br><br>Defendants | No. 3:12-cv-036-SA-SAA |

**MEMORANDUM BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO AT&T INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2)**

**TABLE OF CONTENTS**

TABLE OF AUTHORTIES……………………………………………………………………ii

I.     AT&T INC. IS SUBJECT TO PERSONAL JURISDICTION UNDER
      SECTION 15 U.S.C. § 22..................................................................................................2

II.    THE COMPLAINT SUED AT&T INC. FOR ITS OWN ROLE IN THE
      ANTICOMPETITIVE MISCONDUCT THAT CREATED INJURY IN
      MISSISSIPPI……………………………………………………………………………...8

CONCLUSION……………………………………………………………………………..13

**TABLE OF AUTHORITIES**

**CASES**

**Page(s)**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
 368 F.3d 1174 (9th Cir. 2004)……………………………………………………3

*Allred v. Moore & Peterson*,
 117 F.3d 278, 282 (5th Cir. 1997)……………………………………………..12

*Bigelow v. RKO Radio Pictures*,
 327 U.S. 251, 264, 66 S. Ct. 574, 579-580, 90 L.Ed. 652 (1946)…………………………12

*Black v. Acme Markets, Inc.*,
 564 F.2d 681, 685 (5th Cir. 1977)…………………………………………………12

*Blau v. AT&T Mobility*,
 2012 WL 10546, at *1 (N.D. Cal. 2012)…………………………………………...13

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
 11 F.3d 1255, 1258 (5th Cir. 1994)……………………………………………2, 3, 4

*Chrysler Corp v. Fedders Corp.*,
 643 F.2d 1229, 1240 (6th Cir. 1981)…………………………………………..13

*Crawford v. Allstate Texas Lloyd's*,
 2012 WL 489151, at *3, n.4 (E.D. Tex. Jan. 11, 2012)…………………………………..7

*Dale v. Ala Acquisitions, Inc.*,
 203 F. Supp. 2d 694, 699, n.4 (S.D. Miss. 2002)………………………………………3

*Doe v. Unocal Corp.*,
 248 F.3d 915, 921 (9th Cir. 2001)…………………………………………………..13

*Fontenot v. Mullins Mfg. Co., Inc.*,
 No. 95-31013, 1996 WL 255289, at *1 (5th Cir. May 1, 1996)…………………………..4

*GO-Video, Inc. v. Akai Elec. Co., Ltd.*,
 885 F.2d 1406 (9th Cir. 1989)………………………………………………………….4

*GTE New Media Services Inc. v. Bellsouth Corp.*,
 199 F.3d 1343, 1352 (D.C. Cir. 2000)……………………………………………...13

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
    425 U.S. 738, 743 n.2 (1976)……………………………………………………………..4

*In re Automotive Refinishing Paint Antitrust Litigation*,
    358 F.3d 288 (3d Cir. 2004)……………………………………………………………………4

*In re Heritage Bond Litigation*,
    2004 WL 5639773, at *2 (D.C. Cal. Mar. 29, 2004)……………………………………...7

*In Re Magnetic Audiotape Antitrust Litigation*,
    334 F.3d 204, 207-208 (2d Cir. 2003)……………………………………………….…..13

*Nationwide Mutual Ins. Co. v. Olvera*,
    2008 WL 2858993 (N.D. Miss. July 22, 2008)………………………………………...3

*Paper Systems Inc. v. Mitsubishi Corp.*,
    967 F. Supp. 364, 368 (E.D. Wis. 1997)……………………………………………….. 5

*United States v. Employing Plasterers Ass'n*,
    347 U.S. 186, 189 (1954)……………………………………………………………….4

*Waldron v. British Petroleum Co.*,
    149 F. Supp. 830, 835 (S.D.N.Y. 1957)………………………………………………..6

**STATUTES**

15 U.S.C. § 22…………………………………………………………………………..1, 2, 8, 12, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(k)(1)(A)………………………………………………………………...……12

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CORR WIRELESS COMMUNICATIONS, L.L.C.
CELLULAR SOUTH, INC., AND
CELLULAR SOUTH LICENSES, LLC                                         PLAINTIFFS

vs.                                        CIVIL ACTION NO. 3:12-cv-00036-SA-SAA

AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC., AND
QUALCOMM INCORPORATED                                                DEFENDANTS

**MEMORANDUM BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION
TO AT&T INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2)**

AT&T Inc. has filed its motion to dismiss under Rule 12(b)(2) and, in support, argues that AT&T Inc. is merely a "holding company" with no business or contacts in Mississippi and, hence, not subject to the personal jurisdiction of this Court. AT&T Inc.'s attempts to hide behind its self-created fiction (when it suits it) to avoid jurisdiction should not be permitted. As described more fully below, AT&T Inc.'s motion and brief ignore a host of critical circumstances, which subject AT&T Inc. to the personal jurisdiction of this Court.

First, AT&T Inc. is subject to the jurisdiction in this antitrust case based on 15 U.S.C. §22. AT&T Inc. simply ignores the law in this Circuit on personal jurisdiction under 15 U.S.C. §22 by claiming that AT&T Inc. is not subject to personal jurisdiction under that statute. The Fifth Circuit has confirmed that Section 12 of the Clayton Act, 15 U.S.C. §22, which provides for nationwide service of process, also provides for personal jurisdiction of the defendant in any district in the United States, as long as the defendants has "minimum contacts" with the United States. Because AT&T Inc. has minimum contacts with the United States, it is subject to personal jurisdiction here.

Second, AT&T Inc. is subject to personal jurisdiction here for its own acts, and was sued in the Complaint for its own acts. AT&T's argument misquotes the Complaint by suggesting that it has been sued merely as an alter ego of its subsidiaries. The Complaint alleges that AT&T Inc. – itself – was a participant in the misconduct of which complaint is made here, and thus, even in the absence of the federal statute discussed above, AT&T Inc. would be subject to jurisdiction in this state under traditional long-arm jurisdictional standards.

For these reasons, AT&T Inc.'s motion should be denied.

I.  **AT&T INC. IS SUBJECT TO PERSONAL JURISDICTION UNDER SECTION 15 U.S.C. § 22.**

AT&T Inc. is subject to personal jurisdiction in this Court under the jurisdictional grant contained in the Clayton Act, 15 U.S.C. §22.[1]

Section 12 of the Clayton Act, 15 U.S.C. §22, provides for nationwide service of process as follows:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

The Fifth Circuit has found that where a federal statute provides for nationwide service of process, there is personal jurisdiction over any defendant in every district in the nation as long as that defendant has minimum contacts with the United States. *Busch v. Buchman, Buchman &*

---

[1] There is no dispute that 15 U.S.C. §22 is the applicable statute at issue. AT&T declares that "[t]here is no basis under the Clayton Act, 15 U.S.C. §22 for this Court to exercise personal jurisdiction over AT&T Inc." [AT&T Inc. Motion, at ¶3]. Cellular South cited that statute in the Complaint in the section entitled "Jurisdiction, Venue and Impact on Commerce," but, through typographical error, referenced **4** U.S.C. §§15, 22, rather than **15** U.S.C. §§15, 22. [Compl. ¶46]. Cellular South has cured this typographical error in the First Amended and Supplemental Complaint, and clarified that venue and personal jurisdiction are based on 15 U.S.C. §22, even though AT&T has already recognized that contention.

*O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994). The court recognized that in such instances, "[g]iven that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States." *Id.* at 1258.

Federal courts in Mississippi have followed the Fifth Circuit's lead in finding personal jurisdiction proper over non-resident corporations when such corporations were served under statutes allowing nationwide service of process, regardless of any lack of contacts with the State of Mississippi. In *Nationwide Mutual Ins. Co. v. Olvera*, 2008 WL 2858993 (N.D. Miss. July 22, 2008), the court found a Tennessee corporation was subject to personal jurisdiction in Mississippi regardless of lack of contacts with the State because the applicable interpleader statute allowed nationwide service of process. In doing so, the court cited the Fifth Circuit's decision in *Busch* to note that the "defendant needs only to have minimum contacts with the United States to satisfy due process." *Id.* at **1. *See also Dale v. Ala Acquisitions, Inc.*, 203 F. Supp. 2d 694, 699, n.4 (S.D. Miss. 2002) (court found the defendant was subject to personal jurisdiction in Mississippi under RICO's nationwide service of process provisions, and applied the holding in *Busch*).

Federal courts, including the Fifth Circuit, have applied this same rule to subject defendants to jurisdiction in antitrust litigation in any federal court in the United States, regardless of their contacts with the forum State or whether venue would have been proper in that court.

In *Action Embroidery Corp. v. Atlantic Embroidery, Inc.,* 368 F.3d 1174 (9th Cir. 2004), the Ninth Circuit explained that under Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant did not depend upon there being proper venue in that

court. The defendants argued that the jurisdiction granted by Section 12 should be dependent on the first clause of the statute, which dealt with venue. The Ninth Circuit disagreed, noting

> The juxtaposition of the venue and service of process provisions in Section 12, without more, does not convince us that Congress intended to make these concepts analytically interdependent, rendering a court's exercise of personal jurisdiction over an antitrust defendant dependent on the propriety of venue. Without a clear indication from Congress that it intended to do so, we will not blur the basic, historic difference between these discrete concepts and what is required for their satisfaction. We therefore hold that under Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant does not depend upon there being proper venue in that court.

*Id.* at 1179-80; *see also In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288 (3d Cir. 2004) (provision of Clayton Act permitting worldwide service was independent of and did not require satisfaction of venue provision, such that personal jurisdiction was to be assessed based on defendant's contacts with United States as a whole); *GO-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989) (under Section 12 of the Clayton Act, due process only required a showing of minimum contacts with the United States and not the forum state); *United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 189 (1954). *Cf. Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 743 n.2 (1976) (noting that the Supreme Court has "permitted the reach of the Sherman Act to expand along with expanding notions of congressional power" over interstate commerce).

The Fifth Circuit has likewise followed its precedent from *Busch, supra*, and applied the same rule in the context of antitrust litigation, and Section 12 of the Clayton Act. In *Fontenot v. Mullins Mfg. Co., Inc.*, No. 95-31013, 1996 WL 255289, at *1 (5th Cir. May 1, 1996), the Fifth Circuit recognized that the Clayton Act provided for nationwide service of process. *Id*. As a consequence, the "relevant minimum contacts inquiry here" is whether the defendant had sufficient minimum contacts with the United States, which the Fifth Circuit found it did. *Id*.

The purpose of this expansive scheme for personal jurisdiction over corporations in antitrust litigation was explained by the court in *Paper Systems Inc. v. Mitsubishi Corp.*, 967 F. Supp. 364, 368 (E.D. Wis. 1997) as follows:

> Personal jurisdiction defines a court's power; if § 22 provides for worldwide service without exception, Congress has extended the federal courts' powers to their constitutional limit to enforce the antitrust laws. Perhaps more than any other law, the antitrust laws are national in scope and impact. The antitrust laws define the rules of the free market economy; like the weather, the economy respects no state or natural borders. Goods made in Oregon may be bought in Wisconsin or Japan. Competitors may locate in all corners of the country; yet, even in their absence from one state, their activities will profoundly affect consumers in that state. . . .
>
> \* \* \*
>
> If the antitrust laws are to be effective, district courts' jurisdiction must reach the limits of the power of the United States of America. In the case of antitrust laws, it makes no sense to tie a district court's jurisdiction to the state in which it sits; it neither promotes the enforcement of antitrust law nor the management of litigation. . . .

Of course, these principles apply to the case at hand, since the effects from the illegal conduct alleged in the Complaint have profound effect across the nation, and this court's jurisdiction must reach to those limits if it is to effectively enforce the antitrust laws.

AT&T Inc. should not be permitted to exalt fiction over fact, by hiding behind its holding company status when it so desires, but operating a number of subsidiaries plainly doing business nationwide. As noted by one Court after the adoption of the Clayton Act:

> The amendment to the anti-trust laws brought about by the adoption of 12 of the Clayton Act resulted in a more liberal venue provision in anti-trust actions than in most other types of action, and this liberality was intentionally sought by Congress. (citation omitted).
>
> \* \* \*
>
> A corporation may be a fiction of the law but there is no reason to carry the fiction to the extreme of saying that a corporation which has wholly owned subsidiaries performing services in the local jurisdiction which ordinarily would

5

> be performed by service employees, or making sales which ordinarily would be made by a sales department, is in fact not transacting business in that jurisdiction, particularly when the entire corporate set-up of the defendant shows that it is designed to operate to a substantial degree through separate corporate entities responding to the wishes and directions of the parent and providing the revenues sought by the parent. We would be exalting fiction over fact if we were to conclude that under those circumstances the parent company was not in fact transacting business in this District through the instrumentality of its wholly owned subsidiaries.

*Waldron v. British Petroleum Co.*, 149 F. Supp. 830, 835 (S.D.N.Y. 1957) (finding defendant corporation was transacting business in the district based on the actions of its subsidiaries in the district). Section 12 of the Clayton Act was intended to expand the reaches of jurisdiction so that the persons and companies harmed by corporations doing business throughout the nation through their subsidiaries could enforce the antitrust laws in their own jurisdictions.

It is particularly appropriate to find that AT&T Inc. is subject to the broader jurisdictional standards that courts are to use in claims asserting federal antitrust claims because, outside of this Court, AT&T has made it clear that it has major involvement in the wireless carrier business conducted in its name in the fifty states.

AT&T Inc. does not, as a general rule, even deny that it is deeply involved in the wireless carrier business in all fifty states, including Mississippi. Indeed, in the Answer filed by AT&T Inc. in the litigation brought by the Department of Justice against AT&T Inc. to block the AT&T/T-Mobile merger ("Merger Litigation"), AT&T Inc. described its own business as follows:

> AT&T is a leader in mobile broadband, in devices like smart phones and tablets, and in technology that drives mobile applications and next-generation services, . . . AT&T invested more than $30 billion in wireless spectrum and infrastructure from 2008-2010, including numerous network initiatives to squeeze as much capacity as possible out of its existing spectrum.[2]

---

[2] Answer of AT&T Inc., *United States of America v. AT&T, Inc., et al.*, United States District Court for the District of Columbia, Civil Action No. 1:11-cv-01560-ESH, Doc. 44, at 3.

That Answer, it should be noted, was filed on AT&T Inc.'s behalf by the Kellogg Huber firm, which happens to be the same firm which represents the AT&T entities in this case. The argument advanced here – that AT&T is merely a holding company that only conducts business in Texas – is far different than the picture presented to the District Court in Washington that was dealing with the Merger Litigation. AT&T admitted that it is one of the world's largest providers of communication services, and provides mobile wireless communications in all fifty states. The Complaint alleged:

> 7. AT&T, with headquarters in Dallas, Texas, is a corporation organized and existing under the laws of the State of Delaware. AT&T is one of the world's largest providers of communications services, and the second-largest mobile wireless telecommunications services provider in the United States, as measured by subscribers. **AT&T provides mobile wireless telecommunications services in 50 states, the District of Columbia, and Puerto Rico, providing approximately 98.6 million connections to mobile wireless devices.** In 2010, AT&T's revenues from mobile wireless telecommunications services were $53.5 billion, and its total revenues were more than $124 billion. (Emphasis added).

AT&T responded to this allegation as follows:

> **Response:** Defendants admit the allegations of this paragraph and further respond that AT&T provided approximately 98.6 million connections to mobile wireless devices as of the second quarter of 2011. (Emphasis added).

AT&T made similar admissions in its Answer in the related matter filed by Cellular South.[3]

---

[3] Answer of AT&T, Inc., *Cellular South, Inc., et al. v. AT&T, Inc., et al.*, United States District Court for the District of Columbia, Civil Action No. 1:11-cv-01690-ESH, Doc. 40. AT&T Inc.'s answers to the DOJ Complaint and Cellular South Complaint in the Merger Litigation have been attached as Exhibits A and B to Cellular South's response, even though these pleadings may be considered by the Court as public records subject to judicial notice. *See Crawford v. Allstate Texas Lloyd's,* 2012 WL 489151, at *3, n.4 (E.D. Tex. Jan. 11, 2012) (court can take judicial notice of filings in other cases because they are a matter of public record and are "available for public viewing in the Court's CM/ECF or PACER docketing system, and the record of filings in that case cannot reasonably be challenged."); *In re Heritage Bond Litigation*, 2004 WL 5639773, at *2 (D.C. Cal. Mar. 29, 2004) (court construing Fed. R. Civ. P. 12(b)(2) motion properly took "judicial notice of its own records").

Thus, if the federal statute required any showing that AT&T Inc. had sufficient contacts with Mississippi for the purpose of subjecting AT&T to the jurisdiction in this state in claims based on the antitrust laws, the Court should hold AT&T Inc. to its own statements – including its filings with the FCC and the less formal statements made by AT&T Inc.'s CEO which are discussed below – that AT&T Inc. conducts its wireless communications business all across the nation, including Mississippi.

However, as the law makes cited above makes clear, it is sufficient under the federal jurisdictional statute that AT&T Inc. has minimum contacts with the United States. Thus, AT&T is appropriately subject to personal jurisdiction of this Court under Section 12 of the Clayton Act, 15 U.S.C. §22.

## II. THE COMPLAINT SUED AT&T INC. FOR ITS OWN ROLE IN THE ANTICOMPETITIVE MISCONDUCT THAT CREATED INJURY IN MISSISSIPPI.

The Complaint alleges that AT&T Inc. itself acted. Specifically, the Complaint alleges:

> 42. With respect to the matters which are the subject of this complaint, AT&T, Inc. and AT&T Mobility LLC have acted **for themselves**, and through direct or indirect subsidiaries and/or affiliates for whose actions and omissions they are responsible . . . . The AT&T entities are referred to collectively as "AT&T."
> (Emphasis added.)

Thus, AT&T Inc.'s claim (AT&T Memorandum Brief in Support of Motion to Dismiss, at 2) that the "complaint does not allege any conduct by AT&T Inc. specifically" is simply not true. The Complaint alleges that AT&T Inc. acted directly in the anticompetitive conduct.

AT&T Inc. does not act just as a holding company. AT&T Inc. itself takes part in the business related to the acquisition and use of spectrum for the wireless carrier business. Clearly that business is not just run by its subsidiary, as shown by the numerous filings of AT&T Inc. with the FCC relating to the Interoperability Petition and the Notice of Proposed Rule Making.

8

*See* Exhibits C, D, and E (submissions by AT&T Inc. opposing the Interoperability Petition). While AT&T Inc. now attempts to claim that it is just a holding company, its employees and representatives are clearly engaged in managing, operating and representing the wireless business operated by AT&T and its subsidiaries.

It is Cellular South's contention that AT&T Inc. was a participant in the plan to create Band 17. The end result of the creation of Band 17 was to eliminate the ability of small carriers to use Lower A Block spectrum. That would have the effect of making the Lower A Block spectrum unusable to the smaller carriers (by depriving them of devices and roaming access). Since the spectrum would be unusable to the smaller carriers, it would become available for acquisition by AT&T, which would own the only, or virtually the only, network in the Lower 700 MHz spectrum. That allegation is in the Complaint. (¶¶349-350)

Recently, the Chief Executive Officer of AT&T Inc., Randall Stephenson, has made two statements that confirm both (a) the existence of a plan to allow AT&T to acquire the Lower A Block spectrum that AT&T prevented owners from using by the creation of Band 17; and (b) that AT&T Inc., not just its subsidiary, was aware of and a participant in that plan.[4]

The first statement was given by Mr. Stevenson on May 2, 2012, and reflects to the general public the fact that AT&T itself provides wireless service all across the United States. It should be noted that the CEO of AT&T Inc. feels free to speak on behalf of the wireless carrier business, even while AT&T claims here that AT&T Inc. is a mere holding company. Our point cannot be made clearer than it was made by Mr. Stephenson, who stated: "[w]hen people say

---

[4]  The Complaint has been amended to add two statements of AT&T, Inc. that were made after the Complaint was filed – so that the Court may consider those matters in the context of the pending motions to dismiss. (First Amended and Supplemental Complaint (FASC), ¶349)

9

AT&T, I want them to think mobility, wireless."[5] Stephenson goes on to explain on behalf of AT&T Inc., that there are too many competitors in the wireless industry:

> . . . Obviously, the more competitors you have, the less efficient the allocation of the spectrum will be. It just—that's mathematical. And, obviously, you know, there's probably an optimal place in there; I think the markets are more than capable of kind of sorting that out. But it's going to have to change; whether they want it to change, or not, it will probably change. I don't think the market is going to accommodate the number of competitors that are currently in the marketplace.[6]

Mr. Stephenson's statements support the contentions in the Complaint that the motive of AT&T for the creation of Band 17 was to eliminate competitors. Those same comments also show that Mr. Stephenson clearly speaks and acts as CEO of AT&T Inc. with respect to the wireless business – rather than just as the CEO of a company that happens to own stock of a company engaged in the wireless carrier business. The comments of Mr. Stephenson also make it clear that AT&T Inc. is deeply aware of, and involved in, the development and implementation of strategy for the wireless carrier business conducted by AT&T's subsidiary.[7]

---

[5] *See* FASC, ¶349.

[6] *Id.*

[7] And Mr. Stephenson is not the only one at AT&T Inc. involved in speaking about the role of AT&T Inc. in the wireless carrier business. As noted in a very recent press report, AT&T Inc. CFO John Stephens also speaks on behalf of the wireless portion of AT&T's business:

> John Stephens, CFO of AT&T, spoke at a Nomura investment conference on Wednesday. Stephens was asked about consolidation in light of AT&T's failure to acquire T-Mobile. Regulators panned AT&T's T-Mobile acquisition over competitive worries.
>
> Stephens said:
>
>> I think it is just logical that the industry is going to consolidate in some form or fashion. I think the marketplace has spoken to that with what it has done to pricing in the valuations on some of the companies. From an economic perspective and a highly CapEx-intensive business, I think it is

10

AT&T's motive for the creation of Band 17 was made clearer in yet another recent statement. On June 6, 2012, Mr. Stephenson gave a speech in which he urged, on behalf of the AT&T, that the FCC "continue to put stringent build out requirements on spectrum license holders, so that speculators can't hoard spectrum." (FASC, ¶349) Mr. Stephenson's efforts to persuade the FCC to impose strict limits on build out requirements is clearly directed at the Lower A Block spectrum – since holders of licenses in that spectrum are engaged in an effort to extend the time in which they must deploy a network or give up the spectrum. AT&T's claim that spectrum is being "hoarded" by the current owners is part of the plan to prevent any extension, even though the effective use of that spectrum has been prevented by AT&T's own creation of Band 17. Thus, Mr. Stephenson's effort to promote a strict "build out requirement" is a transparent effort to create a regulatory ruling that will place current owners of Lower A Block spectrum (such as the Plaintiffs) to "sell it or lose it." And, of course, the only likely purchaser (for all of the band alignment reasons discussed in the Complaint and explained in detail in the Memorandum related to the motions to dismiss) is AT&T. (Complaint and FASC, ¶¶271, 349) The fact that Mr. Stephenson is so involved in spectrum issues in the wireless carrier industry supports the contention of the Complaint that AT&T Inc. played a role in matters such as the creation of Band 17.

---

> logical to assume you're going to have two or three and certainly not six and seven competitors in any marketplace. So I think consolidation is logical.
>
> Will the government allow it to happen? They have certainly spoken to us on that as a participant in that from acquiring spectrum and more customers. They spoke to us last year. Whether they will let it go at other levels or at a lower level or smaller deals, we will leave that to the FCC.

Larry Dignan, *AT&T: Telecom consolidation 'logical,' inevitable*, CNET.com, May 30, 2012 <http://news.cnet.com/8301-1035_3-57444125-94/at-t-telecom-consolidation-logical-inevitable/>., attached as Exhibit F to Plaintiffs' Response.

In the same published report, there is a confirmation of AT&T's interest in the Lower A Block spectrum: "AT&T has its eye on additional wireless spectrum in the 700MHz frequency that Verizon Wireless says it will sell if the FCC approves a deal it has struck with cable operators to buy some of its unused AWS spectrum" (FASC, ¶349) – a reference which can only be to Verizon's Lower A Block spectrum. Thus, it is clear that AT&T seeks to acquire the Lower A Block spectrum, even though AT&T is attempting to argue to this Court that the spectrum has little value because of claimed interference concerns. This confirms the contention that AT&T's motives are to accomplish the goals set out in paragraphs 349 - 350 of Complaint and First Amended and Supplemental Complaints – to use the anticompetitive effects of Band 17 to eliminate small carriers that might use the Lower A Block spectrum so that it can be acquired by AT&T.

In short, Cellular South has alleged, and also made a prima facie showing, that AT&T participated in conduct which would subject it to personal jurisdiction in Mississippi under traditional long arm jurisdiction. Fed. R. Civ. P. 4(k)(1)(A). Antitrust claims are usually treated as analogues of tort claims for long arm analyses. *Black v. Acme Markets, Inc.*, 564 F.2d 681, 685 (5th Cir. 1977) ("Delictual conduct violative of the anti-trust laws may be treated analogously to tortious conduct" for the purpose of a personal jurisdiction analysis); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264, 66 S. Ct. 574, 579-580, 90 L.Ed. 652 (1946) (antitrust violations are essentially tortious acts). Under the tort prong of the Mississippi long arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi. *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997). Here, of course, both the tortious conduct and the injury occurred in Mississippi, such that AT&T Inc. is subject to jurisdiction here.

In the unlikely event that the Court were to find that AT&T Inc. is not subject to jurisdiction here pursuant to 15 U.S.C. §22 and further were to find that the foregoing is not sufficient to establish a prima facie case of personal jurisdiction, then Cellular South is entitled to conduct jurisdictional discovery to determine the nature of AT&T's contacts with Mississippi. *GTE New Media Services Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1352 (D.C. Cir. 2000) (jurisdictional discovery warranted in antitrust claim where defendant's corporate subsidiaries' website operations could not be otherwise determined and jurisdictional questions were "quite different for some defendants as opposed to others"); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 921 (9th Cir. 2001) (in addition to affidavits, further discovery, including several witness depositions and documentary discovery ordered to determine personal jurisdiction); *Chrysler Corp v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (additional, limited discovery "may be appropriate" when a defendant moves to dismiss for lack of jurisdiction under Section 12 of the Clayton Act, 15 U.S.C. §22)(citations omitted); *In Re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 207-208 (2d Cir. 2003) (court reversed district court's refusal to allow limited discovery on issue of personal jurisdiction prior to Fed. R. Civ. P. 12(b)(2) dismissal).[8]

## CONCLUSION

AT&T Inc.'s motion to dismiss should be denied, or, in the alternative, Cellular South should be permitted jurisdictional discovery to ascertain the role and participation of AT&T Inc. in the creation of Band 17 and the other misconduct at issue.

---

[8] When faced with similar challenges to its holding company argument, AT&T Inc. has readily withdrawn its challenges to personal jurisdiction rather than face the scrutiny of jurisdictional discovery. *See Blau v. AT&T Mobility*, 2012 WL 10546, at *1 (N.D. Cal. 2012) (AT&T Inc. withdrew its motion to dismiss for lack of personal jurisdiction, after the court ordered sixty days of jurisdictional discovery).

13

June 13, 2012                           Respectfully submitted,

                                                                             s/ Walter H. Boone_____
Alan W. Perry, MSB #4127
Daniel J. Mulholland, MSB #3643
Walter H. Boone, MSB #8651
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
City Centre, Suite 200
200 South Lamar Street
Jackson, Mississippi 39201
Tel.: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Jr., MSB #8995
M. Patrick McDowell, MSB # 9746
Joseph A. Sclafani, MSB #99670
Brian C. Kimball, MSB #100787
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Tel.: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, MSB#8712
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
P. O. Box 650
Jackson, MS 39205
Phone: 601-965-1900
Fax: 601- 965-1901
wjohnson@watkinseager.com

*Counsel for Plaintiffs Cellular South, Inc.,
Corr Wireless Communications, L.L.C. and
Cellular South Licenses, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

***Attorneys for Defendants AT&T Mobility LLC, and AT&T, Inc.***

David W. Upchurch
Holland Ray Upchurch and Hillen
P.O. Drawer 409
Tupelo, MS 38802-0409
dwu@hruhpa.com

Michael K. Kellogg (PHV)
William J. Rinner (PHV)
Kenneth M. Fetterman (PHV)
Aaron M. Panner (PHV)
Kellogg, Huber, Hansen, Todd, Evans & Figel P.L.L.C.
1615 M. Street NW, Suite 400
Washington, D.C. 20036
mkellogg@khhte.com
wrinner@khhte.com
kfetterman@khhte.com
apanner@khhte.com

***Attorneys for Defendant Qualcomm Incorporated***

Sandy Sams
Margaret Sams Gratz
Otis R. Tims
Mitchell McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802
ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com

Yonatan Even (PHV)
Roger G. Brooks (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com

***Attorneys for Defendant Motorola Mobility, Inc.***

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
jmurray@crowell.com


THIS, the 13th day of June, 2012.


      /s/ Walter H. Boone_____