# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| CORR WIRELESS COMMUNICATIONS, L.L.C., ) | |
| CELLULAR SOUTH, INC., AND ) | |
| CELLULAR SOUTH LICENSES, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:12-cv-036-SA-SAA |
| ) | |
| AT&T, INC., AT&T MOBILITY LLC, ) | |
| MOTOROLA SOLUTIONS, INC., AND ) | |
| QUALCOMM INCORPORATED, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## AT&T INC.'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ...........................................................................................................................1

I.     No Jurisdictional Statute Authorizes this Court To Exercise Personal
Jurisdiction Over AT&T Inc. ..........................................................................................1

II.    No AT&T Entity Doing Business in Mississippi Is an Alter Ego of AT&T Inc. ...............6

III.   Plaintiffs Have Failed To Establish Jurisdiction Under the Mississippi Long-
Arm Statute ...................................................................................................................8

IV.   Jurisdictional Discovery Should Be Denied ...................................................................11

CONCLUSION........................................................................................................................11

# TABLE OF AUTHORITIES

Page

## CASES

*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694 (5th Cir. 1999)............................5

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174
(9th Cir. 2004)........................................................................................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................9

*Automotive Refinishing Paint Antitrust Litig.*, *In re*, 358 F.3d 288 (3d Cir.
2004) .................................................................................................................................5, 6

*Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255 (5th Cir. 1994) ........................................3

*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)................................10

*Dale v. ALA Acquisitions, Inc.*, 203 F. Supp. 2d 694 (S.D. Miss. 2002).........................................4

*Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir. 1990)........................................................8

*Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005)................................2, 3

*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331 (5th Cir. 1999)..................................6, 7, 8

*Eastman Kodak Co. v. Southern Photo Material Co.*:

    295 F. 98, *aff'd*, 273 U.S. 359 (1927) ....................................................................................3

    273 U.S. 359 (1927)................................................................................................................3

*Fontenot v. Mullins Mfg. Co.*, No. 95-31013, 1996 WL 255289 (5th Cir.
May 1, 1996)..........................................................................................................................4

*GO-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir. 1989)..................................................5

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir.
2000) .....................................................................................................................................2

*Hanson v. Denckla*, 357 U.S. 235 (1958) ..................................................................................10

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983) .................................................6, 7

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324,
*aff'd*, 602 F.3d 237 (3d Cir. 2010) ........................................................................................6

*Lifeline Ambulance Servs., Inc. v. Laidlaw, Inc.*, 16 F. Supp. 2d 686
(S.D. Miss. 1998) ..........................................................................................9, 10

*Management Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520
(N.D. Tex. 2001) ..................................................................................................5

*Nationwide Mut. Ins. Co. v. Olvera*, No. 3:07CV100-M-A, 2008 WL 2858993
(N.D. Miss. July 22, 2008)..................................................................................4

*North Am. Plastics, Inc. v. Inland Shoe Mfg. Co.*, 592 F. Supp. 875
(N.D. Miss. 1984) ..............................................................................................10

*Paternostro v. Dow Furnace Co.*, 848 F. Supp. 706 (S.D. Miss. 1994).......................................10

*Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415 (5th Cir. 1986),
*aff'd sub nom. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484
U.S. 97 (1987)....................................................................................................10

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)..............................................................................10

*Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982)............................................................................11

## STATUTES AND RULES

Clayton Act § 12, 15 U.S.C. § 22 ....................................................................1, 2, 3, 4, 5

15 U.S.C. § 78aa ..............................................................................................................3, 4

Fed. R. Civ. P. 12(b)(2)....................................................................................................11

## OTHER MATERIALS

1B Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (3d ed. 2006) ....................................3

Herbert Hovenkamp, *Personal Jurisdiction and Venue in Private Antitrust Actions
in the Federal Courts: A Policy Analysis*, 67 Iowa L. Rev. 485 (1982)..............................3

AT&T Inc. has presented sworn evidence that it does not transact business in Mississippi. It has no place of business here, employs no one, provides no services, sells nothing, makes nothing, and pays no taxes. *See* Threkeld Aff. ¶¶ 9-12. It maintains a separate corporate identity and structure from its subsidiaries that do these things. *See id.* ¶ 8. Plaintiffs provide no meaningful evidence to contest this showing.

Plaintiffs' primary argument instead rests on an erroneous reading of the Clayton Act's service-of-process clause under which that clause contains no geographical limitations whatsoever. That argument ignores the plain language of the statute and is against the weight of authority. Plaintiffs incorrectly claim that Fifth Circuit precedent has already resolved this issue, and they mischaracterize the cases they cite.

Plaintiffs' other theories are equally flawed. Their attempt to paint AT&T Inc. as an alter ego of its subsidiaries based on out-of-context quotations is foreclosed by the Fifth Circuit's repeated instructions that corporate form should not be lightly disregarded. Their attempt to invoke the Mississippi long-arm statute is based on merely conclusory allegations, and they do not even argue that they can meet the due process requirement of purposeful availment. Finally, their request for jurisdictional discovery should be denied because it is clear that this Court lacks personal jurisdiction over AT&T Inc.

## ARGUMENT

### I. No Jurisdictional Statute Authorizes this Court To Exercise Personal Jurisdiction Over AT&T Inc.

**A.** In its opening memorandum ("Mem.") (at 4-5), AT&T Inc. showed that § 12 of the Clayton Act, codified as 15 U.S.C. § 22, does not authorize personal jurisdiction over AT&T Inc. in this case. Section 12 provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in

> any district wherein it may be found or transacts business; and all process in such
> cases may be served in the district of which it is an inhabitant, or wherever it may
> be found.

The first clause is a venue clause that defines the proper forums in which an antitrust suit against a corporate defendant may be brought (the district it "inhabit[s]" or any district "wherein it may be found or transacts business"). The second clause is a service-of-process clause that provides for service of process against a corporate defendant anywhere in the world ("wherever it may be found"). But § 12's second clause provides for worldwide service of process not in *all* cases, but only "in *such* cases." 15 U.S.C. § 22 (emphasis added). The limiting phrase "such cases" is naturally read to refer back to the cases defined by the venue provision of the first clause. Section 12 thus provides for worldwide service of process when and only when a suit has been properly brought in a district where the defendant (1) "is an inhabitant," (2) "may be found," or (3) "transacts business." Therefore, to rely on § 12 for service of process, Plaintiffs must satisfy one of those three criteria, which they cannot do. *See* Mem. 4-5; *infra* Part II.

Precedent supports this plain-language interpretation of § 12. The D.C. Circuit and the Second Circuit have held that a "party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both of its clauses. To read the statute otherwise would be to ignore its plain meaning." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) ("[T]he plain language of Section 12 indicates that its service of process provision applies (and, therefore, establishes personal jurisdiction) only in cases in which its venue provision is satisfied."); *see* Mem. 5. This conclusion is supported by the leading antitrust

treatise,[1] by the Supreme Court's description of the statute in *Eastman Kodak Co. v. Southern Photo Material Co.*, 273 U.S. 359 (1927),[2] and by the Fifth Circuit's opinion in that case.[3]

      **B.**     Plaintiffs, however, argue that they may invoke § 12's worldwide service-of-process clause without showing that AT&T Inc. is an inhabitant of, may be found in, or transacts business in this district. They even assert that AT&T Inc. "ignores the law in this Circuit on personal jurisdiction." Opp. 1. That is not so: the Fifth Circuit has never decided this question.

      Plaintiffs rely heavily on *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255 (5th Cir. 1994), but it does not help them. In *Busch*, the court of appeals addressed the scope of a district court's personal jurisdiction under 15 U.S.C. § 78aa, which provides for nationwide service of process under the Securities Exchange Act of 1934. The court first determined that the suit had

---

[1] *See* 1B Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 271d, at 270-71 (3d ed. 2006) (analyzing the text of § 12 and concluding "that the worldwide service provision attaches to those circumstances where venue is established 'in such cases' – namely, based on where the defendant is found or transacts business"); *see also* Herbert Hovenkamp, *Personal Jurisdiction and Venue in Private Antitrust Actions in the Federal Courts: A Policy Analysis*, 67 Iowa L. Rev. 485, 509 (1982) ("A better approach is to interpret section 12 the way it is written. Worldwide service is proper only when the action is brought in the district where the defendant resides, is found, or transacts business.").

[2] *See Eastman Kodak*, 273 U.S. at 372-73 ("[Section 12's] necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of [an antitrust] suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business' – although neither residing nor 'found' therein – *in which case* the process may be issued to and served in a district in which the corporation either resides or is 'found.'") (emphasis added); *Daniel*, 428 F.3d at 424 (discussing this passage and noting that "[t]he Supreme Court's use of 'in which case' . . . to link Section 12's process provision to the satisfaction of its venue clause suggests that the phrase 'in such cases' in the statute serves the same purpose").

[3] *See Eastman Kodak Co. v. Southern Photo Material Co.*, 295 F. 98, 101 (5th Cir. 1923) ("Section 12 of the Clayton Act provides that process, in suits under the anti-trust laws brought in any district wherein the defendant transacts business, may be served in the district of which such defendant is an inhabitant."), *aff'd*, 273 U.S. 359 (1927).

been brought in a district that met the statutory requirements of § 78aa, *see* 11 F.3d at 1256-57, and only then turned to the question whether § 78aa's authorization of service was consistent with due process. On that separate constitutional question it held that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Id.* at 1258; *see* Opp. 2-3.

In the present case, however, the question is whether the Clayton Act *does* provide for nationwide service of process on the record before this Court. AT&T Inc. has argued that (1) to invoke the Clayton Act's service-of-process clause Plaintiffs must show that AT&T Inc. transacts business in this district, and (2) Plaintiffs have failed to make that required showing. *Busch*, which did not interpret the Clayton Act, is not to the contrary.[4]

Plaintiffs also rely on *Fontenot v. Mullins Manufacturing Co.*, No. 95-31013, 1996 WL 255289 (5th Cir. May 1, 1996) (per curiam), which applied *Busch* to uphold personal jurisdiction under the Clayton Act. *Fontenot*, however, "is not precedent," *id.* at *1, and contains limited legal and factual discussion. It does not address the language of § 12, leaving unclear whether the Texas defendant in that case even argued that it did not "transact business" in Louisiana. Nor is it clear whether the record in *Fontenot* would have supported such an argument. The plaintiff there alleged that the defendant "had intentionally failed to fill his orders for various parts," *id.*; it is possible that the defendant had filled *other* orders in Louisiana. This Court should not hold

---

[4] Similarly, Plaintiffs rely (at 3) on *Nationwide Mutual Insurance Co. v. Olvera*, No. 3:07CV100-M-A, 2008 WL 2858993 (N.D. Miss. July 22, 2008), which involved interpleader jurisdiction, and on *Dale v. ALA Acquisitions, Inc.*, 203 F. Supp. 2d 694, 704 (S.D. Miss. 2002), which involved service of process under the RICO statute. Neither case interpreted § 12 or applied the Clayton Act. Both are therefore off point here.

that a nonprecedential opinion resolved a significant statutory question that it did not even discuss.[5]

    **C.**    Plaintiffs also rely (at 3) on *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004), and *GO-Video*.  Those Ninth Circuit cases are not binding on this Court and are unpersuasive.  This Court should follow the holdings of the D.C. and Second Circuits for the reasons set forth by Judge Lynn in *Management Insights, Inc. v. CIC Enterprises, Inc.*, 194 F. Supp. 2d 520 (N.D. Tex. 2001).  That case examined the circuit split and "f[ound] the approach taken by the D.C. and Second Circuits to be the more reasonable not only in light of the structure and wording of the statute, but also because the alternate reading leads to nonsensical results."  *Id.* at 531.  It persuasively reasoned that the Ninth Circuit's position would "completely eviscerate[ ] any semblance of a venue inquiry in antitrust cases involving corporate defendants – a result . . . Congress could not have intended."  *Id.* at 532.

    Plaintiffs also cite *In re Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288 (3d Cir. 2004), which held that "the service of process provision on foreign corporations is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act."  *Id.* at 297.  The Third Circuit's reasoning and holding were specific to *non–United States* defendants.  *See id.* at 297 n.10 (discussing the "crucial" distinction between

---

[5] The Fifth Circuit also stated in *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir. 1999), which Plaintiffs do not cite, that § 12 "allows for jurisdiction over any federal antitrust suit in any district in which a defendant transacts business, and provides that 'all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.'  When jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole to determine whether the requirements of due process have been met."  *Id.* at 718 (citing *GO-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir. 1989)).  These statements are dicta, because the court held that "Clayton Act personal jurisdiction over the antitrust claims [was] . . . unavailable."  *Id.*  In any event, *Access Telecom* suggests, if anything, that the Clayton Act conveys "jurisdiction" only in a "district in which a defendant transacts business."

"alien corporations" and "out-of-state [domestic] corporations"); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 337-38 (D. Del. 2007) (distinguishing *Automotive Refinishing* and explaining that "the Third Circuit has never applied a 'national contacts' test for establishing personal jurisdiction over a *domestic* antitrust defendant"), *aff'd*, 602 F.3d 237 (3d Cir. 2010).  AT&T Inc. is a domestic corporation; *Automotive Refinishing* is thus not on point.

## II.  No AT&T Entity Doing Business in Mississippi Is an Alter Ego of AT&T Inc.

In its opening memorandum (Mem. 6-8), AT&T Inc. showed that Plaintiffs cannot establish personal jurisdiction over AT&T Inc. by treating it as an alter ego of its subsidiaries that do business in Mississippi.  This showing was supported by an affidavit from Steven Threkeld, an Accounting Controller for AT&T Inc., which established that AT&T Inc. is a "legally and factually separate corporate entity, distinct from its subsidiaries," each of which has "its own independent corporate, partnership, or limited liability company status, identity, and structure."  Threkeld Aff. ¶ 8.  AT&T Inc. does not "own or maintain a telecommunications network" and "do[es] not provide telecommunications services . . . of any kind to the public."  *Id.* ¶ 9.

The Threkeld affidavit triggered the "long presum[ption of] the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999).  This presumption must be overcome with "clear evidence," including "an additional or a plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family."  *Id.* (internal quotation marks omitted); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir.

1983) ("The degree of control . . . must be greater than that normally associated with common ownership and directorship.").

Without expressly asserting an "alter ego" theory – or making any attempt to discuss controlling Fifth Circuit precedent on the subject – Plaintiffs assert (at 5) that "AT&T Inc. should not be permitted to exalt fiction over fact" and that this Court should disregard the difference between AT&T Inc. and its subsidiaries. Rhetoric aside, Plaintiffs do not dispute that AT&T Inc. has correctly described the presumption recognized in *Dickson Marine*. They do not dispute any of the particulars of the Threkeld Affidavit or even mention it. Instead, they rely on out-of-context quotations from pleadings in unrelated cases, FCC comments filed on behalf of the entire AT&T corporate family, and generalized statements from senior corporate officers about the status of competition in the wireless industry. None of these materials suffices.

*First*, AT&T Inc.'s answers to antitrust complaints filed by the United States and by Cellular South in the T-Mobile merger litigation, *see* Opp. Exs. A-B, are consistent with its position here. AT&T Inc. had been sued over an allegedly anticompetitive "stock purchase agreement" in a forum to which it had consented. Opp. Ex. A, at 5, 7. A "holding company" that "owns the stock of its corporate subsidiaries," Threkeld Aff. ¶¶ 5, 9, is a logical defendant in such an action. The allegations in context touched on the total business conducted by AT&T Inc.'s relevant subsidiaries, and AT&T Inc. responded in kind. In one answer, AT&T Inc. explicitly answered on behalf of AT&T Mobility as well as on its own behalf. *See* Opp. Ex. B, at 1. In the other, it left that point implicit. Neither approach shows a "degree of control . . . greater than that normally associated with common ownership and directorship." *Hargrave*, 710 F.2d at 1160.

*Second*, comments and letters filed with the FCC by "AT&T Inc., on behalf of AT&T Mobility LLC and its wholly-owned and controlled wireless affiliates," Opp. Ex. C, at 1; Opp. Ex. D, at 1, or filed without explicit reference to subsidiaries, *see* Opp. Ex. E, do not indicate lack of adherence to the corporate form. It is common and efficient for large corporate families to coordinate their regulatory interactions through a parent, while keeping ordinary business operations at the subsidiary level. Such coordination is not a " 'plus' factor" that demonstrates an alter-ego relationship. *Dickson Marine*, 179 F.3d at 338.

*Third*, statements by AT&T Inc.'s senior officers that refer, at a high level of generality, to the business operations of its subsidiaries, *see* Opp. Exs. F-H, are in no way unusual and do not show an alter-ego relationship. Thus, the Fifth Circuit held in *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir. 1990), that a parent did not become its wholly owned subsidiary's alter ego merely because it was "responsible for general policy," even though the parent in that case also made use of "centralized bank accounts," filed a "consolidated federal tax return," and "offer[ed] benefit plans to its subsidiaries' employees." *Id.* at 1363. Documents showing general policy responsibility alone, without any of the other factors considered in *Dalton*, thus do not meet the requirement of clear evidence to overcome the presumption of corporate separateness.

III.    **Plaintiffs Have Failed To Establish Jurisdiction Under the Mississippi Long-Arm Statute**

A.      In its opening memorandum (Mem. 5-6), AT&T Inc. showed that Plaintiffs could not meet the requirements of the Mississippi long-arm statute. AT&T Inc. noted (at 5) that the Complaint "does . . . [not] allege that AT&T Inc. has committed any tort in Mississippi." Plaintiffs respond (at 12) that the antitrust violation they allege is a tort and that "both the tortious conduct and the injury occurred in Mississippi." These conclusory assertions lack merit.

8

*First*, Plaintiffs point to no allegation at all (much less evidence) that AT&T Inc. took any action in Mississippi. The basis for their claim (at 12) that the alleged "tortious conduct . . . occurred in Mississippi" is thus unclear. At best, this statement refers to Plaintiffs' theory that AT&T Inc. acted as an alter ego of its subsidiaries, which lacks merit. *See supra* Part II.

*Second*, Plaintiffs point to no factual allegation that AT&T Inc. took any action outside Mississippi that caused them "injury . . . in Mississippi." They rely (at 8) on a general allegation that "AT&T, Inc. and AT&T Mobility LLC have acted for themselves, and through direct or indirect subsidiaries and/or affiliates for whose actions and omissions they are responsible." Compl. ¶ 42. This allegation is "no more than [a] conclusion[ ]," and is "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

*Lifeline Ambulance Services, Inc. v. Laidlaw, Inc.*, 16 F. Supp. 2d 686 (S.D. Miss. 1998), is instructive. In *Lifeline*, a subsidiary defendant had its principal place of business in Mississippi. *See id.* at 687. The plaintiff sought specific jurisdiction over that subsidiary's Canadian parent, alleging that the parent "conspired with [its Mississippi subsidiary] to commit a tort within the State of Mississippi" and that the two "conspired to monopolize the ambulance service market in Atlanta as well as other geographical areas of the country and to exclude competition unfairly in violation of state and federal antitrust law." *Id.* at 689. The court rejected jurisdiction, explaining:

> These bald allegations without more are insufficient to overcome a Rule 12(b)(2) motion. When personal jurisdiction is challenged, plaintiffs must carry their burden of proof on the issue of personal jurisdiction by making a prima facie case . . . . If plaintiffs do not shoulder their burden of proof on this most perfunctory matter, the court is without jurisdiction to adjudicate the case.

*Id.* at 689-90 (quoting *Paternostro v. Dow Furnace Co.*, 848 F. Supp. 706, 709 (S.D. Miss. 1994)) (citations omitted).[6] The allegations here are equally bald.

*Third*, to the extent that Plaintiffs may intend to assert that AT&T Inc.'s own filings with the FCC caused them injury, that claim also lacks merit. To subject a defendant to personal jurisdiction in a particular state solely by virtue of its efforts to influence the federal legislative or regulatory process – when such federal laws generally have an impact in every state by definition – would violate the First Amendment. Indeed, for that reason, good-faith political participation cannot be the basis for liability under the Sherman Act. *See generally California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (holding that *Noerr-Pennington* immunity protects petitions to administrative agencies).

    **B.**     Even if Plaintiffs could establish that the Mississippi long-arm statute applied, and could point to some relevant, concretely alleged activity of AT&T Inc., they certainly have not shown that AT&T Inc. "purposefully avail[ed] itself of the privilege of conducting activities within [Mississippi], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), *quoted in* Mem. 6. Plaintiffs do not (and cannot) dispute that the constitutional requirements of due process constrain this Court's application of a state long-arm statute. *See generally Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 427 (5th Cir. 1986), *aff'd sub nom. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).

    It is settled that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction" as a matter of due process. *Revell v. Lidov*, 317 F.3d 467, 473 & n.41 (5th Cir. 2002) (collecting cases). Even if Plaintiffs had made out a *prima facie* case "that

---

[6] *See also North Am. Plastics, Inc. v. Inland Shoe Mfg. Co.*, 592 F. Supp. 875, 879 (N.D. Miss. 1984) ("[A]bsent a sufficient allegation of particularized facts, judicial economy requires that the corporate veil should not be preliminarily pierced for long-arm jurisdiction on the mere unsubstantiated allegations in the pleadings.").

AT&T Inc. was a participant in the plan to create Band 17," Opp. 9, which they have not, they have not alleged or shown shown that AT&T Inc. conducted activities in Mississippi or directed any action toward Mississippi. Accordingly, they cannot meet the purposeful-availment test.

## IV.    Jurisdictional Discovery Should Be Denied

Finally, Plaintiffs request in the alternative (at 13) that the Court grant them jurisdictional discovery "to determine the nature of AT&T's contacts with Mississippi." The request is an obvious attempt to begin a fishing expedition, given that it lacks any details about the type of discovery Plaintiffs would seek or how it would be relevant. In light of the Threkeld Affidavit showing that AT&T Inc. is separate from its subsidiaries and, in its own person, has no contacts with Mississippi; and in light of Plaintiffs' failure to rebut that affidavit in any way, the likelihood of any benefit from authorizing discovery is nonexistent, while the costs are obvious. "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).

## CONCLUSION

For the reasons set forth above and in its opening Memorandum of Law, AT&T Inc. respectfully requests that this Court dismiss this action against it pursuant to Federal Rule of Civil Procedure 12(b)(2).

Dated:  June 27, 2012                    Respectfully submitted,

                                         AT&T Inc.


                                         /s/ *David W. Upchurch*
                                         DAVID W. UPCHURCH, MSB #10558
                                         HOLLAND, RAY, UPCHURCH & HILLEN, P.A.
                                         P.O. DRAWER 409
                                         TUPELO, MS 38802-0409
                                         TELEPHONE: 662-842-1721
                                         FACSMILE: 662-844-613
                                         dwu@hruhpa.com

                                         Michael Kellogg (Admitted *Pro Hac Vice*)
                                         Aaron Panner (Admitted *Pro Hac Vice*)
                                         William J. Rinner (Admitted *Pro Hac Vice*)
                                         Kellogg, Huber, Hansen, Todd,
                                           Evans & Figel, P.L.L.C.
                                         1615 M Street, N.W., Suite 400
                                         Washington, DC 20036
                                         Telephone: (202) 326-7921
                                         mkellogg@khhte.com
                                         apanner@khhte.com
                                         wrinner@khhte.com

## <u>CERTIFICATE OF SERVICE</u>

I, David W. Upchurch, hereby certify that I have this day filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following registered participants:

Alan W. Perry, Esq., MSB #4127
Daniel J. Mulholland, Esq., #3643
Walter H. Boone, Esq., #8651
Forman, Perry, Watkins, Krutz & Tardy, LLP
200 S. Lamar Street, Suite 100
Jackson, MS 39201-4099
Tel: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Esq., MSB #8995
M. Patrick McDowell, Esq., MSB #9746
Joseph A. Sclafani, Esq., MSB #99670
Brian C. Kimball, Esq., MSB #100787
Brunini, Grantham, Grower & Hewes, PLLC
190 E. Capitol Street, Suite 100
Jackson, MS 39201-2151
Tel: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, Esq., MSB #8712
Watkins & Eager PLLC
400 East Capitol Street, Suite 300 (39201)
P.O. Box 650
Jackson, MS 39205
Tel: 601-965-1900
Fax: 601-965-1901
wjohnson@watkineager.com

*Counsel for Plaintiffs Cellular South, Inc.*
*Corr Wireless Communications, LLC and*
*CellularSouth Licenses, LLC*

L.F. Sams, Jr.
Otis R. Tims
Margaret Sams Gratz
Mitchell, McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802-7120
ssams@mitchellmcnutt.com
otims@mitchellmcnutt.com

Roger G. Brooks, Esq.
Yonatan Even, Esq.
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Counsel for Defendant Qualcomm Inc.*

Jim M. Greenlee, Esq.
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 South Lamar Blvd., Suite A
P.O. Drawer 707
Oxford, MS 39655
jgreenlee@holcombdunbar.com

John S. Gibson, Esq.
Chahira Solh, Esq.
Crowell & Moring, LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505

*Counsel for Defendant Motorola Solutions, Inc.*

DATED this the 27th day of June, 2012.

/s/ *David W. Upchurch*
DAVID W. UPCHURCH