UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CORR WIRELESS
COMMUNICATIONS, L.L.C.,
CELLULAR SOUTH, INC., and
CELLULAR SOUTH LICENSES, LLC                                    PLAINTIFFS

VS.                                          CIVIL ACTION NO. 3:12-cv-036-SA-SAA

AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC.,
QUALCOMM INCORPORATED, and
JOHN DOES 1-10                                                 DEFENDANTS

<u>**MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT**</u>

Plaintiffs Corr Wireless Communications, L.L.C., Cellular South, Inc. and Cellular South

Licenses, LLC (collectively, Cellular South) submit this Memorandum in Support of their

Motion for leave to file a Second Amended and Supplemental Complaint against AT&T, Inc.,

AT&T Mobility LLC, Motorola Solutions, Inc., Motorola Mobility, Inc. (collectively, Motorola),

Qualcomm Incorporated, and John Does 1-10 (collectively, Defendants).  A true and correct

copy of Cellular South's proposed Second Amended and Supplemental Complaint is attached to

the Motion to Amend as Exhibit 1.

As established by the United States Supreme Court and reiterated by the Fifth Circuit

Court of Appeals, a motion to amend under FED. R. CIV. P. 15(a) should be granted unless it

would cause undue delay, would be futile, would cause undue prejudice to defendants, is deemed

to have been made in bad faith or with a dilatory motive, or if there has been a repeated failure to

cure deficiencies by amendments previously allowed.  Because none of those circumstances exist

here, this Court should grant Cellular South leave to amend its Complaint, allowing Cellular

South an opportunity to cure the pleading deficiencies identified by the Court in its

Memorandum Opinion.

**I.** **The Court Should Freely Give Leave to Amend Absent Some Apparent Reason or Substantial Justification Otherwise.**

Although the determination of whether to grant leave to amend a complaint is within the

sound discretion of the court, that discretion is limited by the explicit language of FED. R. CIV. P.

15(a), which provides that "[t]he court should freely give leave [to amend] when justice so

requires." *See also Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 245-46 (5th Cir. 1997).

"Rule 15(a) expresses a strong presumption in favor of liberal pleading . . . ." *Lowrey*, 117 F.3d

at 245 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). While it is acknowledged that leave

to amend is not automatic, the United States Supreme Court has held that "[i]f the underlying

facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be

afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182

(1962); *see also Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 205 (5th Cir. 1969)

("Summary disposition of litigation, especially antitrust cases, is disfavored and amendments

should be liberally granted so that all cases may be decided on their merits.").

In *Foman v. Davis*, the Supreme Court set forth the criteria for determining whether a

court should grant leave to amend a complaint and held as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith
> or dilatory motive on the part of the movant, repeated failure to cure deficiencies
> by amendments previously allowed, undue prejudice to the opposing party by
> virtue of allowance of the amendment, futility of amendment, etc.—the leave
> sought should, as the rules require, be "freely given."

371 U.S. at 182.

The Fifth Circuit Court of Appeals has time and again reinforced the liberal standard set

forth in *Foman* for determining whether to grant or deny a motion to amend. For example, in

*United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386-87 (5th Cir. 2003), the Fifth Circuit noted that leave to amend "should be granted absent some justification for refusal." 336 F.3d at 386. The court elaborated:

> The liberal amendment policy underlying Rule 15(a) affords the court broad discretion in granting leave to amend and, consequently, a motion for leave to amend should not be denied unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . ."

*Id.* (quoting *Foman*, 371 U.S. at 182). The court in *Humana Health*, a False Claims Act case, ruled that the district court did not abuse its discretion in denying leave to amend because the party seeking amendment failed to expressly request leave to amend before the district court, because that party had already twice been granted leave to amend but failed to cure the complaint's lack of specificity, and because amendment was deemed to be futile. *Id.* at 387-88. *See also Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 309 F.3d 836, 841 (5th Cir. 2002) ("[A] district court must have a 'substantial reason' to deny a request for leave to amend." (citation omitted)).

Allowing amendment "is especially advisable when such permission is sought after the dismissal of the first complaint." *Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Id.* (citing *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 230 (7th Cir. 1995) (reversing denial of leave to amend because record was not clear that plaintiff could state no set of facts upon which relief could be granted); *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978) ("The permission to amend a complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim upon

which relief can be granted."); *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.")).

The Circuit Courts of Appeals unanimously recognize the Supreme Court's admonition that leave to amend a complaint should be freely given under Rule 15(a) in the absence of some substantial justification or apparent reason for denial. *See, e.g.*, *Sanofi-Aventis v. Apotex, Inc.*, 659 F.3d 1171, 1181-82 (Fed. Cir. 2011); *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (policy of allowing complaints to be freely amended should be "applied with extreme liberality"); *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1052-53 (6th Cir. 2011); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010); *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.").

As explained in greater detail below, Cellular South seeks leave to amend in order to set forth more extensive factual allegations and remedy the pleading deficiencies identified by the Court in its Memorandum Opinion.  Consistent with the precedent of the Supreme Court and Circuit Courts of Appeals, district courts also generally allow a movant to amend its complaint to include additional factual allegations to cure deficiencies identified in a ruling on a motion to dismiss.  *See, e.g.*, *Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *3 (N.D. Cal 2012) (noting court had previously granted leave to amend antitrust complaint to plead specific facts supporting Sherman Act § 1 claims following dismissal); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1190, 1200-02 (S.D. Tex. 2009) (granting defendant's

motion to dismiss but also granting plaintiff leave to amend complaint to include factual allegations "that raise a reasonable expectation of a conspiracy" between defendants and noting that, under the federal rules, such leave should be "freely granted," especially where plaintiff "has not received numerous chances to amend without correcting pleading flaws"); *E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 683 F. Supp. 2d 401, 427 (E.D. Va. 2009) (granting motion to dismiss but also granting leave to amend antitrust complaint to allege relevant geographic market and anticompetitive conduct therein); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1113 (N.D. Cal. 2008) (granting motion to dismiss after finding that, as initially drafted, antitrust complaint lacked sufficient allegations specific to each defendant but also granting leave to amend complaint to enhance specific facts); *Arnold Chevrolet, LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 192-93 (E.D.N.Y. 2006) (granting motions to dismiss only to extent that court could "not conceive of any possible permutation on the facts as pled that might support an amendment" and granting leave to amend complaint to "address the pleading concerns" enunciated by the court).

II.     **There is No Apparent Reason or Substantial Justification for Denying Cellular South's Motion to Amend.**

The Court should grant Cellular South's Motion to Amend if there is no finding of the following:  (a) undue delay, bad faith, or dilatory motive; (b) repeated failure to cure pleading deficiencies by amendments previously allowed; (c) undue prejudice to the Defendants by virtue of allowing the amendment; or (d) futility of amendment.

A.     **No Undue Delay.**  First, it should be clear that Cellular South's Motion to Amend is not made for purposes of undue delay or with dilatory motive for the simple and obvious reason that Cellular South has sought expeditious review throughout these proceedings.

5

Additionally, this Motion to Amend is not made in bad faith. Cellular South requests leave to amend its Complaint in a candid effort to cure pleading deficiencies identified by the Court.

**B.     No Repeated Failure to Cure Pleading Deficiencies.**  Second, there has not been a "repeated failure to cure pleading deficiencies by amendments previously allowed." This is the first time Cellular South has sought to amend its Complaint following the Court's Memorandum Opinion, which identified pleading deficiencies.[1] Cellular South now seeks to amend its Complaint in an effort to cure the pleading deficiencies identified by the Court.

**C.     No Undue Prejudice.**  Third, Defendants cannot show that allowing Cellular South to amend its Complaint will cause them "undue prejudice." In *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d at 245-46, the court opined that "the touchstone of the inquiry under rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint." 117 F.3d at 245. At this stage of the proceedings, the Defendants are more than sufficiently aware of the nature of Cellular South's claims against them, and they will suffer no undue prejudice from the amendment.

**D.     Not Futile.**  Allowing Cellular South an opportunity to amend its Complaint would not be futile. Cellular South's proposed Second Amended and Supplemental Complaint sets forth additional factual allegations addressing the perceived deficiencies addressed by the Court in its Memorandum Opinion. The heart of this antitrust claim is and was the allegation that the interference justifications offered by the Defendants to justify the creation of Band 17 were simply not true. The Second Amended and Supplemental Complaint alleges that the claims of interference were false as a matter of science and engineering. That is a fact that Cellular

---

[1]     Cellular South did amend its complaint once after the Motions to Dismiss were filed but before the Memorandum Opinion was issued to correct some technical defects in the original complaint, and allege new facts which had developed since the initial filing.

South contends must be accepted for purposes of this litigation.[2] Cellular South would never have instituted this litigation if there really had been genuine interference issues that would have actually impeded the utilization of Band 12 by carriers such as AT&T.

Because the Defendants have asserted no reason for creating Band 17 other than interference – and because the claim that "interference" required the creation of Band 17 is demonstrably false as a matter of science – Cellular South alleges that the only plausible reason for the creation of Band 17 was to craft a private ecosystem for AT&T, resulting in the multitude of anticompetitive effects outlined in the First Amended and Supplemental Complaint. The First Amended and Supplemental Complaint alleged that, because those interference claims are demonstrably false, they were a mere pretext to allow creation of a private ecosystem for AT&T for anticompetitive purposes.

The Court's Memorandum Opinion did not directly address this critical issue of whether the claims of interference were true or false. Instead, the Court stated:

> Unlike *Allied Tube*, which involved a standard setting process that was biased through the use of improper and unfair practices and procedures, *see Clamp-All Corp. v. Cast Iron Soil Pipe Institute*, 851 F.2d 478, 488 (1st Cir. 1988) (Breyer, J.) (discussing *Allied Tube*), in this case *sub judice*, the Defendants' conduct during the 3GPP process in 2008 is, on its face, lawful. While Plaintiffs argue that Defendants' technical justifications set forth during the 3GPP process are merely pretext for anticompetitive behavior, the 3GPP process was followed to the letter. That is, there are no facts demonstrating procedural irregularities within the process, that the 3GPP process was subverted or turned into a sham, or that

---

[2]    The proposed Second Amended and Supplemental Complaint alleges additional facts that have come to light since the First Amended and Supplemental Complaint was filed which makes it not only plausible but indisputable that Defendants' claims of interference are false. For example, Cellular South has learned that Qualcomm has manufactured and is selling a chip which works on Band 12 and U.S. Cellular is actually operating a Band 12 network (albeit with a limited number of Band 12 devices and no prospect for Band 12 roaming). It is virtually impossible to reconcile those facts with the Defendants' contentions advanced at 3GPP to justify the creation of Band 17. Moreover, the FCC has already made it clear that most of the interference concerns offered to 3GPP have no merit and is seriously considering whether any interference concerns justify the separation of Band 17 from Band 12.

the Defendants agreed to employ—or indeed did employ—any improper practices within the standard setting process. The highly complex and technical arguments in favor of creating Band Class 17 were set out in writing for evaluation by experts, and the concerns relating to such creation of Band Class 17 were duly contemplated at 3GPP meetings. The 3GPP acted by a consensus as it relates to the creation of Band Class 17, and there was no objection from any person or entity, including the Plaintiffs and Verizon Wireless, who also holds spectrum licenses in the Lower A Block.

(Memorandum Opinion at 21.)

In short, the Court found that the action of 3GPP made it implausible that the interference claim was false. Cellular South believes that the Defendants' vague descriptions of the 3GPP process led the Court to attribute far more reliance on the 3GPP process than is warranted under the facts shown in the Second Amended and Supplemental Complaint. Those facts make it clear that *Allied Tube* and *Clamp-All* require a different result.

Plaintiffs agree that 3GPP followed its own rules "to the letter." However, that does not reach the more fundamental question that determined the outcome in *Allied Tube*. As made clear by then-Judge Breyer in *Clamp-All*, the fundamental question for antitrust analysis is not whether there has been compliance "with the letter" of the rules of standard setting organizations, but, rather, whether there has been compliance with the "spirit" of those rules:

> *See Indian Head, Inc. v. Allied Tube & Conduit Corp.*, 817 F.2d 938 (2d Cir.) (antitrust claim stated where defendant conspired with other steel companies to block the approval of plaintiff's product by a national certifying organization; **defendant acted within the letter of the organization's rules, but violated their spirit** by paying for and packing a meeting with voters who had little to no professional interest in the subject matter), *aff'd*, 486 U.S. 492, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988) . . . .

*Clamp-All Corp.*, 851 F.2d at 488 (emphasis added).

*Allied Tube* dealt with the National Fire Association – a body in which the steel conduit manufacturers were able to obtain a small majority by taking legal efforts to "turn out the vote." *Allied Tube* involved a decision by the standards setting body whose process was followed

"within the letter." 817 F.2d 938, 940, 947 (2d Cir.), *aff'd*, 486 U.S. 492 (1988). That action – like that of 3GPP – was, on its face, lawful. There was nothing improper in the conduct of the proponents of steel conduit, who did nothing more than make sure that the steel supporters, all legitimate members of the Association, turned out and voted. The problem in *Allied Tube* was not the "turn out the vote" effort, which was perfectly permissible under the rules. Instead, the problem in *Allied Tube* was that the facts raised a real concern that the decision that "polyvinyl chloride conduit is unsafe" was not the result of science or good judgment, but, rather, the result of the greater voting power of the steel conduit manufacturers.

However, *Allied Tube* held that a standard setting organization, even it follows the rules, cannot adopt standards to exclude competitors based on pretextual concerns which favor the majority. As the United States Supreme Court noted in its affirmation of the Second Circuit's decision in *Allied Tube*:

> That rounding up supporters is an acceptable and constitutionally protected method of influencing elections does not mean that rounding up economically interested persons to set private standards must also be protected.

486 U.S. 492, 504 (1988). The Supreme Court in *Allied Tube* went on to say:

> The antitrust validity of these efforts is not established, without more, by petitioner's literal compliance with the rules of the Association, for the hope of procompetitive benefits depends upon the existence of safeguards sufficient to prevent the standard-setting process from being biased by members with economic interests in restraining competition.

*Id.* at 509. The process followed by the steel-favoring members of the National Fire Association – even though they followed the rules of the Association to the letter – provided no assurance that there had been unbiased consideration of the actual merits of the claim that polyvinyl chloride conduit was safe. As the Supreme Court stated:

> What petitioner may not do (without exposing itself to possible antitrust liability for direct injuries) is bias the process by, as in this case, stacking the private standard-setting body with decisionmakers sharing their economic interest in

restraining competition.

*Id.* at 511.  Thus, the fact that 3GPP followed its own procedures to the letter **does not end the inquiry**.  The problem in this case is that the 3GPP deck, like the deck in *Allied Tube*, was stacked.  Indeed, the situation at 3GPP was far worse than in *Allied Tube*, since the RAN 4 Working Group included no members who had a substantial economic interest in resisting AT&T's efforts to restrain competition.  *Allied Tube* teaches that decisions on issues of science made by private bodies stacked in favor of one result are not entitled to deference.

The "spirit" of 3GPP – if it is to be afforded deference by this Court – must include an understanding that technical issues be made in a context that provides some basic fairness and an opportunity for presentation of competing views.  That requirement was not satisfied by the process that led to the creation of Band 17.  The decision to create Band 17 was effectively made by the Defendants alone.  3GPP's decision was not based on the independent review of expert opinions other than those offered by the Defendants.   There is no evidence and no reason to believe that any company or expert, other than Ericsson which expressed its opposition to the interference claims, made any substantial effort to review or analyze whether the technical conclusions of AT&T, Motorola and Qualcomm were correct.   Instead, the members of 3GPP simply followed the general practice of deferring to those with an interest in the proposal.   In this case, 3GPP did not include or consider the views of the other Lower A Block licensees who had no notice of the proposal to create Band 17.  Even though the 3GPP record notes the need to get feedback from operators in the Lower A Block, Qualcomm and Motorola chose not to consult with Cellular South or other licensees of Lower A Block spectrum or advise them of the proposal to fragment Band 12, even though they knew of its anticompetitive effect.   In short, a determination by a standards setting organization which considers only one side of an issue

proposed by a primary member – without any notice to competitors with other interests – is not entitled to any deference as having been based on a ground other than the desire to achieve an anticompetitive result.

The 3GPP's decision to create Band 17 is worthy of even less deference than that in *Allied Tube* because at least the National Fire Association conducted a full and open debate in which all parties could participate. Here, AT&T took advantage of an existing forum at which its friends were present and in control – just as the steel conduit proponents took advantage of their majority in the National Fire Association. Under those circumstances, it is no surprise that 3GPP reached the result urged by AT&T. Indeed, one would fully expect that the few members who took any notice of the action to create Band 17 at RAN 4 or 3GPP would have approved if no one protested. The 3GPP proceedings, while technically legal, were not in the spirit of a standards setting body that attempts to resolve issues fairly and on the merits, rather than to provide a competitive advantage to a member. Certainly, the 3GPP's decision is not one upon which this Court can rely in finding implausible the claim that interference concerns are false.

Indeed, in *TruePosition, Inc. v. LM Ericsson Tel Co.*, the court recently denied a Motion for Certification for Interlocutory Appeal or, in the Alternative, for Reconsideration of its denial of a Fed. R. Civ. P. 12(b)(6) motion concerning antitrust claims arising out of actions taken by Qualcomm and others at 3GPP stated: "The context of the conspiracy alleged by TruePosition is not only within the confines of a standard-setting organization, but includes the premise that the Corporate Defendants cloaked themselves with the authority of 3GPP, and allegedly abused 3GPP's rules and procedures, in order to frustrate competition in the marketplace." No. 11-4574, 2012 WL 4050798, at *2 (E.D. Pa. Sept. 14, 2012). That is exactly what occurred here. Motorola, Qualcomm and AT&T cloaked themselves in the authority of 3GPP to create Band 17

without technical justification and for anticompetitive purposes. Further, the additional factual allegations in the proposed Second Amended and Supplemental Complaint demonstrate that the Defendants had no technical justification for the creation of Band 17, that the failure of Verizon to object to the creation of Band 17 was merely because Verizon would not be adversely impacted by the creation of Band 17, and that AT&T had a more than plausible motive to act for anticompetitive purposes. Along that line, and as alleged in the proposed Second Amended and Supplemental Complaint, AT&T has gained a competitive advantage over smaller competitors by depriving them of a Band 12 iPhone 5 and has increased the likelihood of acquiring Lower 700 MHz spectrum from smaller licensees on a favorable basis. The proposed Second Amended and Supplemental Complaint more precisely describes the actual proceedings of 3GPP related to the creation of Band 17. Therefore, granting Cellular South leave to file its Second Amended and Supplemental Complaint would not be futile.

In sum, there is no justification to deny Cellular South's Motion to Amend because: (1) such amendment is not sought for purposes of undue delay, bad faith, or with dilatory motive; (2) Cellular South has not repeatedly failed to cure pleading deficiencies by amendments previously allowed; (3) the Defendants would not be unduly prejudiced by virtue of allowing the amendment; and (4) allowing amendment would not be futile.

### III.    The Uncertainty of the Level of Specificity Required under *Twombly* Warrants an Opportunity to Amend

Moreover, it is apparent that there is uncertainty in the courts as to the level of specificity required for pleading a claim under the standard set forth in *Twombly*. As a result of this uncertainty, courts should, in situations such as the one at hand, allow a party whose pleading is dismissed based on the *Twombly* pleading standard an opportunity to amend after the court has made its decision. *See, e.g.*, *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943

(7th Cir. 2012) ("In applying Rule 15(a), the uncertainty in pleading standards resulting from the Supreme Court's decisions in *Iqbal* and *Twombly* also provides powerful reasons to give parties a reasonable opportunity to cure defects identified by a district court."); *see also McCauley v. City of Chicago*, 671 F.3d 611, 627-28 (7th Cir. 2011) (Hamilton, J. dissenting in part and noting the uncertainty that litigants, lawyers, and district courts face in the light of *Twombly* and *Iqbal* and opining that "a party whose pleading is dismissed based on the *Iqbal* plausibility standard should be entitled to an opportunity to amend the pleading after the court has made its decision."). It cannot be denied that the basis of dismissal in this case was the Court's determination that certain of the allegations in the First Amended and Supplemental Complaint did not meet the level of plausibility required by *Twombly*. Accordingly, the Court should grant Cellular South leave to amend its Complaint in an effort to cure the pleading defects identified by the Court.

## CONCLUSION

The Federal Rules of Civil Procedure and precedent of the Supreme Court and Federal Courts of Appeals make clear that leave to amend should be freely given. Additionally, there is no apparent reason or substantial justification for the Court to deny Cellular South's Motion to Amend. Cellular South seeks leave to plead facts necessary to remedy the deficiencies in its First Amended Complaint, perceived by the Court in its Memorandum Opinion. Finally, the uncertainty that exists in the wake of *Twombly* and *Iqbal* weighs heavily in favor of granting Cellular South's Motion to Amend. For these reasons, the Court should grant Cellular South leave to file its Second Amended and Supplemental Complaint.

Dated: October 1, 2012.

Respectfully submitted,

  s/ Walter H. Boone
Alan W. Perry, MSB #4127
Daniel J. Mulholland, MSB #3643
Walter H. Boone, MSB #8651
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
City Centre, Suite 200
200 South Lamar Street
Jackson, Mississippi 39201
Tel.: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Jr., MSB #8995
M. Patrick McDowell, MSB # 9746
Joseph A. Sclafani, MSB #99670
Brian C. Kimball, MSB #100787
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Tel.: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, MSB#8712
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
P. O. Box 650
Jackson, MS 39205
Phone: 601-965-1900
Fax: 601- 965-1901
wjohnson@watkinseager.com

*Counsel for Plaintiffs Corr Wireless
Communications, L.L.C., Cellular South, Inc., and
Cellular South Licenses, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2012, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the following:

### <u>Attorneys for Defendants AT&T Mobility LLC, and AT&T, Inc.</u>

David W. Upchurch
Holland Ray Upchurch and Hillen
P.O. Drawer 409
Tupelo, MS 38802-0409
dwu@hruhpa.com

Michael K. Kellogg (PHV)
William J. Rinner (PHV)
Kenneth M. Fetterman (PHV)
Aaron M. Panner (PHV)
Kellogg, Huber, Hansen, Todd, Evans & Figel P.L.L.C.
1615 M. Street NW, Suite 400
Washington, D.C. 20036
mkellogg@khhte.com
wrinner@khhte.com
kfetterman@khhte.com
apanner@khhte.com

### <u>Attorneys for Defendant Qualcomm Incorporated</u>

L.F. Sams, Jr.
Margaret Sams Gratz
Otis R. Tims
Mitchell McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802
ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com

Yonatan Even (PHV)
Roger G. Brooks (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com

**_Attorneys for Defendant Motorola Mobility, Inc._**

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA  90071
jmurray@crowell.com

THIS, the 1st day of October, 2012.

_/s/ Walter H. Boone_____