# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

|  |  |
|---|---|
| CORR WIRELESS COMMUNICATIONS, L.L.C., CELLULAR SOUTH, INC., AND CELLULAR SOUTH LICENSES, LLC, Plaintiffs, v. AT&T, INC., AT&T MOBILITY LLC, MOTOROLA SOLUTIONS, INC., AND QUALCOMM INCORPORATED, Defendants. | No. 3:12-cv-036-SA-SAA |

**DEFENDANT AT&T MOBILITY LLC'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

BACKGROUND .......................................................................................................................2

ARGUMENT .............................................................................................................................4

    THE NEW ALLEGATIONS OF THE PROPOSED SECOND AMENDED
    COMPLAINT DO NOT SUPPORT ANY CLAIM THAT DEFENDANTS
    CONSPIRED TO SUBVERT THE 3GPP PROCESS .......................................................6

CONCLUSION ........................................................................................................................10

# TABLE OF AUTHORITIES

<u>**Page**</u>

**CASES**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
 486 U.S. 492 (1988)..................................................................................................3, 7, 8

*Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*,
 851 F.2d 478 (1st Cir. 1988) ................................................................................................8

*Enron Corp. Sec., In re*,
 535 F.3d 325 (5th Cir. 2008) ...............................................................................................5

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
 547 F.3d 266 (5th Cir. 2008) ...............................................................................................8

*Southmark Corp., In re*,
 88 F.3d 311 (5th Cir. 1996) .................................................................................................5

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
 Civil Action No. 11-4574, 2012 WL 3584626 (E.D. Pa. Aug. 21, 2012) .........................10

*United States ex rel. Adrian v. Regents of the Univ. of California*,
 363 F.3d 398 (5th Cir. 2004) ...............................................................................................5

**STATUTES**

Communications Act of 1934, 47 U.S.C. § 151 *et seq.* ..................................................................2

Sherman Act, 15 U.S.C. § 1 *et seq.* ............................................................................................2, 6

 § 1, 15 U.S.C. § 1..............................................................................................................2, 10

 § 2, 15 U.S.C. § 2................................................................................................................2, 3

**OTHER MATERIALS**

XIII Herbert Hovenkamp, *Antitrust Law* (2d ed. 2005)...................................................................8

AT&T Mobility respectfully requests that the Court deny Plaintiffs' motion for leave to amend their antitrust complaint because the proposed amendment would be futile.[1] The proffered Second Amended Complaint, like the previous amended complaint, would fail to state a claim on which relief may be granted because it fails to allege facts sufficient to support the claim that Defendants entered into an unlawful conspiracy in violation of the antitrust laws. Plaintiffs' Second Amended Complaint introduces no new facts indicative of a conspiracy; indeed, in their memorandum, Plaintiffs do not cite to a single specific allegation that they have added to the Second Amended Complaint, nor do they attempt to explain why any such allegations differ from what Plaintiffs previously alleged and argued. Their motion simply re-argues points already, and properly, rejected by the Court.

## INTRODUCTION

The Court should deny Plaintiffs' motion for leave to amend their complaint because the allegations they seek to add fail to remedy the deficiencies that led this Court to dismiss their First Amended Complaint. In its August 31, 2012 Memorandum Opinion ("Op."), the Court correctly held that the first amended complaint failed to state any claim based on Defendants' alleged participation in the 3GPP standard-setting process because Plaintiffs failed to allege that Defendants conspired "to employ . . . any improper practices within the standard setting process" that would "subvert[]" that process or turn it "into a sham." Op. 21. The Second Amended Complaint supplies no such allegations – to the contrary, Plaintiffs concede that the 3GPP process was followed "to the letter," Mot. 8, and the added allegations in the Second Amended Complaint confirm that fact. As this Court has recognized, disputes about the technical merits of

---

[1] The proposed Second Amended Complaint continues to name AT&T Inc. as a defendant but contains no new allegations concerning conduct by AT&T Inc. AT&T Inc.'s pending motion to dismiss for lack of personal jurisdiction is not affected by the proposed amendment.

standards adopted through a valid standard-setting process cannot be the basis for a conspiracy claim. Plaintiffs have alleged nothing more.

## BACKGROUND

**1.** The First Amended Complaint sought to allege claims under Sections 1 and 2 of the Sherman Act based on four types of actual or anticipated conduct: alleged manipulation of 3GPP standard-setting; alleged delay in the development of Band 12 standards and devices; alleged potential agreements between AT&T Mobility and device manufacturers to restrict the supply of devices to Plaintiffs; and the alleged possibility that AT&T Mobility might refuse to allow Plaintiffs' customers to "roam" onto AT&T Mobility's network. Based on these allegations, Plaintiffs set out five antitrust claims under Sections 1 and 2 of the Sherman Act and a single claim under the Communications Act of 1934.

**2.** On August 31, 2012, after extensive briefing and a full day of oral argument, the Court dismissed the amended complaint.

**a.** With respect to the claim that Defendants had conspired unlawfully to manipulate the 3GPP process, the Court noted that Plaintiffs had provided "no factual allegations to plausibly show the existence of an agreement." Op. 18. Plaintiffs offered no direct allegations concerning the time, place, or participants in any agreement, "or even what such an alleged agreement entailed." *Id.* The fact that all of the Defendants participated in the 3GPP process relating to the creation of Band 17 did not support Plaintiffs' claim, because Defendants' joint participation in standard-setting does not provide a basis for an antitrust claim in the absence of allegations that Defendants "*bias[ed] the standard setting process* . . . through the use of improper and unfair practices and procedures." Op. 21. "While Plaintiffs argue that Defendants' technical justifications set forth during the 3GPP process are merely pretext for

2

anticompetitive behavior, the 3GPP process was followed to the letter. That is, there are no facts demonstrating procedural irregularities within the process, that the 3GPP process was subverted or turned into a sham, or that the Defendants agreed to employ – or indeed did employ – any improper practices within the standard setting process." *Id.* The Court thus distinguished *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988), in which the Supreme Court held that conspirators are not immune from antitrust liability when they employ such improper means to bias a standard-setting process.

    **b.**  The Court held that the amended complaint likewise failed to allege any facts to support the claim that Defendants reached any agreement to delay development of Band Class 12 standards and devices. Op. 25-26. The Court dismissed Plaintiffs' remaining claims – based on AT&T Mobility's alleged exclusive-dealing arrangements with device manufacturers and its alleged refusal to provide roaming services access to Plaintiffs – because "conclusory speculation regarding what could happen at some unknown date in the future . . . fails to plausibly state a violation of federal antitrust laws." Op. 26; *see* Op. 32. With respect to Plaintiffs' roaming-related claim, the Court noted that AT&T Mobility is subject to regulatory requirements; "Cellular South has not alleged that AT&T has presently failed to comply" with those obligations. Op. 26-27. And the Court noted, in any event, Plaintiffs did not allege any basis for a claim that AT&T Mobility has any duty, under the antitrust laws, to provide roaming services to the Plaintiffs. *See* Op. 29-30. With respect to Plaintiffs' "exclusive dealing" allegations, the Court also held that the amended complaint "fail[ed] to allege facts" in support of the assertion that any such arrangements could "harm competition." Op. 32.

    **c.**  The Court further held that the foregoing deficiencies were also fatal to Plaintiffs' claims under Section 2. *See* Op. 32-39.

  **3.**  Plaintiffs filed their motion for leave to file a Second Amended Complaint; the new allegations in the proffered complaint provide additional detail concerning 3GPP's deliberative process related to the adoption of Band 17 standards. The purpose of the allegations appears to be to support Plaintiffs' argument that (1) despite broad membership in 3GPP, a small number of interested parties may influence the consideration and resolution of certain issues, and that occurred in this case (Mot. Ex. A ¶¶ 209-237); and (2) Plaintiffs and other similarly situated licensees did not pay attention to the proposed creation of Band 17 because they assumed that development would continue on existing Band 12 (*id.* ¶¶ 238-250). But the basis for Plaintiffs' standard-setting-related claims has not changed: Plaintiffs concede that "[t]he heart of this antitrust claim *is and was* the allegation that the interference justifications offered by the Defendants to justify the creation of Band 17 were simply not true." Mem. 6 (emphasis added); *cf.* Mot. Ex. A ¶ 257 (acknowledging that "the two types of interference described above as justification for the creation of Band 17" are "real" but claiming that they nonetheless "provided no justification for the creation of Band 17").

## ARGUMENT

  Plaintiffs' proposed amendments make clear that their only remaining antitrust claim is a direct attack on the 3GPP's decision to create a new Band 17. Plaintiffs make no attempt to resuscitate claims related to (1) delay in development of Band 12 standards or devices; (2) alleged exclusive-dealing arrangements in the future; or (3) alleged future denial of access to roaming. Accordingly, those claims remain dismissed.

  The Court should reject Plaintiffs' effort to revive their claims related to establishment of Band 17 because Plaintiffs offer no new factual allegations to support the claim that Defendants unlawfully conspired to subvert the 3GPP process. The decision whether to grant a motion for

leave to amend rests within the sound discretion of this Court. *See United States ex rel. Adrian v. Regents of Univ. of California*, 363 F.3d 398, 403 (5th Cir. 2004). Such a motion should be denied where, as here, the proposed amendment is "futile" because the amended allegations fail to state a claim. *See In re Enron Corp. Sec.*, 535 F.3d 325, 334 n.6 (5th Cir. 2008); *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996); *see also* Mem. 3 (admitting that leave for amend is properly denied when "amendment [is] deemed to be futile"). Denial of leave to amend is particularly appropriate in this case because Plaintiffs' motion is, in substance, a motion for reconsideration of the Court's order of dismissal. Plaintiffs do not argue that they have offered any new direct allegations to support the claim that Defendants entered into an unlawful agreement, when the alleged agreement was entered into, or who the individuals participating were. The proposed Second Amended Complaint contains no allegations regarding any specific statements or conduct by AT&T Mobility. Nor do Plaintiffs offer any new factual allegations to support their assertion that Defendants illegally subverted the 3GPP standard-setting process. To the contrary, Plaintiffs simply argue what they have argued all along: that Defendants' concerns about interference were pretextual and that this allegation is sufficient to state a claim under Section 1 – even though the 3GPP process was followed "to the letter" and even though there is no allegation that Defendants ever submitted any false or misleading data to the 3GPP.[2] Plaintiffs' amended allegations continue to ask the Court simply to infer that the

---

[2] Plaintiffs repeatedly claim – as they did in their First Amended Complaint – that "the interference claims which were submitted by [Defendants] to justify the creation of Band 17 were in fact false and pretextual." Mot. Ex. A ¶ 253. *Compare* First Am. Compl. ¶ 200 (filed June 8, 2012) (ECF No. 75) ("none of the interference claims had any merit"; "all of [them] were pretextual"). But Plaintiffs acknowledge that "the two types of interference described above as justification for the creation of Band 17" are "real." Mot. Ex. A ¶ 257. *See also id* ¶ 255 ("[T]here is no dispute that a nearby Channel 51 broadcast station will interfere with a wireless carrier if it operates on the Lower A Block."). In fact, there is no allegation at all that any defendant ever submitted any falsified or inaccurate *data* concerning interference, so Plaintiffs'

5

conspiracy "had to have" occurred. Op. 17-18. This Court has already ruled that Plaintiffs' theory is untenable; Plaintiffs offer no reason for the Court to revisit its prior resolution of this legal issue.[3]

## THE NEW ALLEGATIONS OF THE PROPOSED SECOND AMENDED COMPLAINT DO NOT SUPPORT ANY CLAIM THAT DEFENDANTS CONSPIRED TO SUBVERT THE 3GPP PROCESS

1. Plaintiffs argue that their antitrust claim may proceed because they have adequately alleged that "the 3GPP deck . . . was stacked" against Cellular South and that the "'spirit' of 3GPP" was "not satisfied by the process that led to the creation of Band 17." Mem. 10. Such conclusory assertions cannot supply the factual allegations required to demonstrate an agreement in violation of the Sherman Act.[4] As this Court correctly ruled, in the absence of allegations that Defendants conspired to subvert the 3GPP process or turn it into a sham, the assertion that challenged standards are "anticompetitive" either in their purpose or in effect fails to state a claim under Section 1 of the Sherman Act. Op. 21. Despite access to the records of the 3GPP proceedings, including all of the submissions considered therein – not to mention the benefit of extensive Federal Communications Commission proceedings addressing these very issues – Plaintiffs not only are forced to concede that the 3GPP process was followed to the

---

allegation of "falsity" appears to refer to nothing more than a disagreement as to whether the interference data provided a *justification for* the creation of Band 17. That is not a basis for any antitrust claim.

[3] Plaintiffs' assertion (at 12) that there is "uncertainty" concerning pleading requirements after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), is unsupported; more important, it is irrelevant because nothing in the proposed Second Amended Complaint "cure[s] the pleading defects" of the prior amended complaint, Mem. 13. To the contrary, the proposed pleading offers no new factual allegations to support the inference that Defendants illegally conspired.

[4] Not only are these assertions conclusory, but they also contradict the factual allegations of the complaint, which acknowledge – as noted below – that substantial players in the wireless industry, such as Ericsson, Nortel, and Verizon, did have a meaningful opportunity to raise objections to the approval of Band 17 and to oppose that approval if they had concluded the action was unjustified. *See infra* p. 9.

6

letter, but also fail to identify a single piece of data that any of the Defendants submitted to 3GPP that was false or misleading. As this Court correctly noted:

> The highly complex and technical arguments in favor of creating Band Class 17 were set out in writing for evaluation by experts, and the concerns relating to such creation of Band Class 17 were duly contemplated at 3GPP meetings. The 3GPP acted by a consensus as it relates to the creation of Band Class 17, and there was no objection from any person or entity, including the Plaintiffs and Verizon Wireless, who also holds spectrum licenses in the Lower A Block.

*Id.* Plaintiffs do not and cannot take issue with this conclusion.

Plaintiffs mischaracterize the Court's holding, however, when they claim that the Court found that "the action of 3GPP made it implausible that the interference claim was false." Mem. 8. As an initial matter, as noted in note 2, *supra*, Plaintiffs do not allege that Defendants' interference claims are false; to the contrary, they affirmatively allege that interference exists. *See*, *e.g.*, Mot. Ex. A ¶¶ 255, 257. Rather, they argue that interference concerns did not justify the creation of a separate Band Class because such interference would not affect carriers operating in certain portions of Band 12. And the Court never questioned *that* assertion; that is, the Court did not reject the technical validity of Plaintiffs' arguments about the necessity for the creation of a separate Band 17. *See* Op. 21. The Court nevertheless correctly ruled that such disputes about the technical merits of a standard adopted through a bona fide standard-setting process do not provide the basis for an antitrust claim – and that does not change because a plaintiff accuses the participants in the standard-setting process of anticompetitive motives.

  **2.**  Plaintiffs argue that the allegations of the proffered Second Amended Complaint give greater force to their argument that the 3GPP process described in the complaint was comparable to the actions of the defendants in *Allied Tube*. Plaintiffs have alleged nothing of the

7

kind.[5] As this Court explained, in *Allied Tube*, the defendants conspired to block approval of the plaintiff's product by packing a meeting with voters who had no professional interest in the standards at issue. *See* Op. 20. It was thus an "egregious case where it [was] clear that the exclusion can have no other purpose than facilitation of collusion or the exclusion of a superior product." XIII Herbert Hovenkamp, *Antitrust Law* ¶ 2232b, at 415 (2d ed. 2005). As this Court explained, *Allied Tube* involved a standard-setting process "that was biased through the use of improper and unfair practices and procedures." Op. 21 (citing *Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 488 (1st Cir. 1988)). Nothing comparable is alleged here; to the contrary, all the participants in the standard-setting process were legitimate parties with an undisputed interest in the standards governing wireless spectrum.

Plaintiffs argue that it is enough for them to assert that AT&T Mobility "took advantage of an existing forum at which its friends were present and in control," to bring their allegations within *Allied Tube*. Mem. 11. But the same type of conclusory allegation can be put forward with respect to any standard-setting activity. It is always possible for a plaintiff to assert that interested members of a standard-setting organization took a more vigorous role in deliberations than other members with less at stake; that non-participants did not appreciate the importance of an issue; or that the organization failed to conduct an adequate investigation. If such assertions were sufficient to subject every industry standard to antitrust scrutiny, standard-setting would grind to a halt. *See* Op. 21-22 (citing *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 273 (5th Cir. 2008)).

---

[5] This Court has already considered and rejected Plaintiffs' arguments based on *Allied Tube*. *See* Op. 20-21. Plaintiffs nevertheless devote a substantial portion of their memorandum re-arguing the applicability of that precedent, *see* Mem. 8-11, illustrating that their motion is an improper motion for reconsideration that should be rejected for that reason as well.

Moreover, the factual allegations of the complaint provide no support for Plaintiffs' characterization of the process that the 3GPP followed in this case: as alleged in the complaint, several companies (not just Defendants) actively participated in the deliberations that led to the creation of Band 17, and the 3GPP acted in a manner consistent with the technical recommendations submitted. *See* Mot. Ex. A ¶¶ 225-229 (acknowledging, but downplaying, participation by Ericsson, Nortel, and T-Mobile). Notwithstanding Plaintiffs' readiness to accuse Defendants of having made "false" claims, they do not allege that anything in the technical papers that Motorola and AT&T Mobility submitted to the 3GPP was false. Plaintiffs concede that Verizon Wireless – AT&T's largest competitor – participated in the 3GPP process; Verizon had a critical interest in the standards for the Lower A Block because it is a major owner of that spectrum. *See id.* ¶ 234. While Plaintiffs assert that Verizon was indifferent to standard-setting for the Lower A Block, *see id.*, that assertion is implausible: even if Verizon had no immediate plans to exploit that spectrum, it would be economically irrational for Verizon to fail to protect the economic value of spectrum for which it had paid hundreds of millions of dollars. And though Plaintiffs fault Defendants for failing to give them better "notice" of contemplated 3GPP action, *id.* ¶ 242, the complaint does not contest that 3GPP agendas and planned actions were publicly announced. Plaintiffs may regret that they did not take a more active role in the 3GPP process, but that does not give them an antitrust claim.

The standards governing antitrust challenges to standard-setting activity reflect the pro-competitive importance of legitimate standard-setting, which necessarily involves concerted action and which virtually always favors some interests over others. *See* AT&T Mobility Mem. 13-16 (filed May 23, 2012) (ECF No. 66). Absent a factual basis for the claim that standard-setting was turned into a sham designed to exclude competitors, such activity is lawful. Leaving

9

conclusory rhetoric to one side, Plaintiffs allege nothing but a disagreement with the consensus judgment of the 3GPP, reached after legitimate deliberations that followed the organization's lawful procedures "to the letter."

3.  Plaintiffs' reliance on the district court's denial of the defendants' motion to dismiss in *TruePosition, Inc. v. LM Ericsson Telephone Co.*, Civil Action No. 11-4574, 2012 WL 3584626 (E.D. Pa. Aug. 21, 2012) – which the Court already considered in its previous order[6] – does not support Plaintiffs' effort to allege a violation of Section 1. The *TruePosition* court found that the plaintiff had alleged sufficient facts to support the claim that the defendants had agreed to manipulate the 3GPP standard-setting process by using positions of power within 3GPP to circumvent 3GPP rules and by relying on "false" data to prevent or delay consideration of a rival technology. *See id.* at *10-*20 (reviewing allegations related to improper manipulation of 3GPP process), *22 (summarizing detailed allegations). Here, Plaintiffs have failed to allege any such improper manipulation and subversion of the 3GPP process. *See* Op. 21-22.

---

[6] *See* Op. 2 n.2. Plaintiffs cite the district court's denial of the defendants' motion for reconsideration (decided after this Court ruled) but that brief memorandum contains no additional substantive analysis of the complaint at issue there.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion.

Dated:  October 18, 2012               Respectfully submitted,

                                        AT&T MOBILITY LLC

                                        /s/ *David W. Upchurch*
                                        DAVID W. UPCHURCH, MSB #10558
                                        HOLLAND, RAY, UPCHURCH & HILLEN, P.A.
                                        P.O. DRAWER 409
                                        TUPELO, MISSISSIPPI 38802-0409
                                        TELEPHONE:  (662) 842-1721
                                        FACSMILE:  (662) 844-6413
                                        dwu@hruhpa.com

                                        Michael K. Kellogg (Admitted *Pro Hac Vice*)
                                        Aaron M. Panner (Admitted *Pro Hac Vice*)
                                        William J. Rinner (Admitted *Pro Hac Vice*)
                                        Kellogg, Huber, Hansen, Todd,
                                          Evans & Figel, P.L.L.C.
                                        1615 M Street, N.W., Suite 400
                                        Washington, D.C. 20036
                                        Telephone:  (202) 326-7921
                                        mkellogg@khhte.com
                                        apanner@khhte.com
                                        wrinner@khhte.com

**CERTIFICATE OF SERVICE**

       I, David W. Upchurch, hereby certify that I have this 18th day of October 2012 filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following registered participants:

    Alan W. Perry, Esq., MSB #4127
    Daniel J. Mulholland, Esq., #3643
    Walter H. Boone, Esq., #8651
    Forman, Perry, Watkins, Krutz & Tardy, LLP
    200 S. Lamar Street, Suite 100
    Jackson, Mississippi 39201-4099
    Tel: (601) 969-7833
    Fax: (601) 960-8613
    aperry@fpwk.com

    Charles L. McBride, Esq., MSB #8995
    M. Patrick McDowell, Esq., MSB #9746
    Joseph A. Sclafani, Esq., MSB #99670
    Brian C. Kimball, Esq., MSB #100787
    Brunini, Grantham, Grower & Hewes, PLLC
    190 East Capitol Street, Suite 100
    Jackson, Mississippi 39201-2151
    Tel: (601) 960-6891
    Fax: (601) 960-6902
    cmcbride@brunini.com

    Walter T. Johnson, Esq., MSB #8712
    Watkins & Eager PLLC
    400 East Capitol Street, Suite 300 (39201)
    P.O. Box 650
    Jackson, Mississippi 39205
    Tel: (601) 965-1900
    Fax: (601) 965-1901
    wjohnson@watkineager.com

    *Counsel for Plaintiffs*
    *Corr Wireless Communications, LLC,*
    *Cellular South, Inc., and*
    *Cellular South Licenses, LLC*

L.F. Sams, Jr., Esq.
Otis R. Tims, Esq.
Margaret Sams Gratz, Esq.
Mitchell, McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, Mississippi 38802-7120
Tel: (662) 842-3871
Fax: (662) 842-8450
ssams@mitchellmcnutt.com
otims@mitchellmcnutt.com
mgratz@mitchellmcnutt.com

Roger G. Brooks, Esq.
Yonatan Even, Esq.
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
rgbrooks@cravath.com
yeven@cravath.com
*Counsel for Defendant Qualcomm Inc.*

Jim M. Greenlee, Esq.
Holcomb, Dunbar, Watts, Best, Masters & Golmon, P.A.
400 South Lamar Boulevard, Suite A
P.O. Drawer 707
Oxford, Mississippi 38655
jgreenlee@holcombdunbar.com
Tel: (662) 234-8775
Fax: (662) 238-7552

John S. Gibson, Esq.
Chahira Solh, Esq.
Crowell & Moring, LLP
3 Park Plaza, 20th Floor
Irvine, California 92614-8505
Tel: (949) 263-8400
Fax: (949) 263-8414
jgibson@crowell.com
csolh@crowell.com
*Counsel for Defendant Motorola Solutions, Inc.*

                                          /s/ *David W. Upchurch*
                                          DAVID W. UPCHURCH