UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CORR WIRELESS
COMMUNICATIONS, L.L.C.,
CELLULAR SOUTH, INC., and
CELLULAR SOUTH LICENSES, LLC                                            PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:12CV036- SA

AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC.,
QUALCOMM INCORPORATED, and
JOHN DOES 1-10                                                          DEFENDANTS

MEMORANDUM OPINION

Defendant AT&T Inc. filed a Motion to Dismiss asserting that this Court lacks jurisdiction over AT&T Inc. under Rule 12(b)(2). On August 31, 2012, this Court dismissed Plaintiffs' claims against all Defendants pursuant to Rule 12(b)(6), with the exception of AT&T Inc. due to the outstanding personal jurisdiction motion. Because the Court lacks personal jurisdiction over AT&T Inc., that entity is hereby dismissed. However, even if the Court could assert jurisdiction over AT&T Inc., Plaintiffs' claims against it would likewise fail a 12(b)(6) inquiry.

*Factual and Procedural Background*

AT&T Inc. is incorporated in Delaware and is headquartered in Texas. Plaintiffs' Amended Complaint acknowledges that AT&T Inc.'s principal place of business is in Dallas, Texas. Plaintiffs contend that that entity is registered to do business in the State of Mississippi and has a registered agent for process in Mississippi. AT&T Inc. refutes this contention but acknowledges that there once was an "AT&T Inc." registered with the Mississippi Secretary of State, but that entity is not the same AT&T Inc. that exists today. The "new" AT&T Inc. has

never registered with the Mississippi Secretary of State, and Plaintiffs have not brought forth evidence that the entities are not the same. AT&T Inc. asserts it is solely a holding company that conducts no business directly with the public, does not own or maintain a telecommunications network, and perhaps most importantly, does not conduct business in Mississippi.

Plaintiffs' assert that "[w]ith respect to the matters which are the subject of this complaint, AT&T, Inc. and AT&T Mobility LLC have acted for themselves, and through direct or indirect subsidiaries and/or affiliates for whose actions and omissions they are responsible, including AT&T GNS Belgium SPRL." Plaintiffs further lump all AT&T entities together and collectively refer to them as "AT&T." Plaintiffs essentially contend that the AT&T entities, along with the other defendants conspired to manipulate the 3GPP standard setting process.[1] Plaintiffs assert that after the Defendants "caused 3GPP to fragment Band 12 by creating Band 17, AT&T and the other Defendants continued to preserve what their concerted action had wrought (*i.e.*, AT&T's private ecosystem) when that private ecosystem was threatened by Cellular South." After Plaintiffs filed the aforementioned petition for rulemaking with the FCC, Plaintiffs maintain that AT&T and the other Defendants agreed to improperly delay Band Class 12 standards. Plaintiffs have also brought an exclusive dealing claim against the Defendants. As to the particular allegations against AT&T Inc., on page 115 of the complaint, Plaintiffs quote AT&T Inc.'s Chief Executive Officer, Randall Stephenson, as making a statement at a conference concerning competition in the spectrum marketplace.

AT&T Inc. filed this Motion to Dismiss pursuant to Rule 12(b)(2) requesting that the Court acknowledge that it lacks personal jurisdiction over AT&T Inc. as a holding company. In

---

[1] The Court's prior Order and Memorandum Opinion, dated August 31, 2012, provides a more thorough explanation of Plaintiffs' allegations against all Defendants. See Corr Wireless Comm. v. AT&T, Inc., --- F. Supp. 2d ---, 2012 U.S. Dist. Lexis 124042, 2012 WL 3782601 (N.D. Miss. Aug. 31, 2012). Because of the nature of this motion and the Court's findings under the Clayton Act, such an extensive hashing of the Plaintiffs' contentions is not necessary to review personal jurisdiction of AT&T Inc.

particular, AT&T Inc. contends that there is no basis for the Court to exercise personal jurisdiction under the Clayton Act, the Mississippi Long Arm Statute, or due process. Moreover, AT&T Inc. complains that Plaintiffs have failed to present evidence that AT&T Inc. and its subsidiaries have not maintained separate corporate identities and asserts that dismissal of AT&T Inc. is proper. AT&T Inc. attached an affidavit executed by Steven Threlkeld, the Executive Director of Accounting in the AT&T Services, Inc., Finance Department. In that capacity, Threlkeld is the Accounting Controller for numerous companies, including AT&T Inc. In response, Plaintiffs attached several judicial filings and pleadings by AT&T Inc., public comments to the FCC, and news articles they assert evidence that this Court has jurisdiction over AT&T Inc.

*Personal Jurisdiction Standard*

Federal Rule of Civil Procedure 4 provides that "[s]erving a summons or filing a waiver of services establishes personal jurisdiction over a defendant . . . when authorized by federal statute. FED. R. CIV. P. 4(k). "Absent a federal statute that provides more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits." Submersible Sys. v. Perforadora Cent., 249 F.3d 413, 418 (5th Cir. 2001).

1. *Statutory Authority – The Clayton Act*

Plaintiffs contend that the Clayton Act, 15 U.S.C. § 22, provides for nationwide service of process over antitrust defendants, thus establishing personal jurisdiction over AT&T Inc. as it undeniably has minimum contacts with the United States. Defendants argue for a more restrictive reading of Section 12.

3

Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. Section 12 consists of two separate clauses – the first relating to the venue and the second concerning service of process and, therefore, personal jurisdiction. See In re Automotive Refinishing Paint Antitrust Litig., 358 F.3d 288, 293 (3rd Cir. 2004). The parties dispute whether the two clauses of Section 12 should be read as an integrated whole or independently of each other. Specifically, they dispute whether the venue provision of the first clause of Section 12 must be satisfied before the plaintiffs can avail themselves of the authorization of worldwide service of process contained in the second clause.

As explained by one court:

> the dispute centers on whether the jurisdiction provision operates independently from the venue provision, specifically, whether "in such cases" in the second clause refers to "any suit, action, or proceeding under the antitrust laws against a corporation" or only to antitrust actions against corporations brought in a judicial district in which the corporation is either an "inhabitant," "may be found" or "transacts business." If the first interpretation is adopted, plaintiffs can rely on 28 U.S.C. § 1391(d) [the Alien Venue Statute] which provides for venue in antitrust actions against foreign corporations "in any district" and on the second clause of Section 12 for personal jurisdiction over defendants based on a minimum contacts analysis considering their contacts with the United States as a whole. If the second interpretation prevails the service provision is only effective when, pursuant to Section 12's first clause, the action is brought in a district where the defendant resides, is found or transacts business.

In re Magnetic Audiotape Antitrust Litig., 171 F. Supp. 2d 179, 184 (S.D.N.Y. 2001), vacated sub nom. on other grounds, Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft, 31 F. App'x 738 (2d Cir. 2002). The Plaintiffs dispute whether the present litigation can only be brought in a

4

federal district where AT&T Inc. is an "inhabitant," may be "found," or "transacts business" based on its contacts with the forum district or state. Plaintiffs contend that this antitrust action may be brought in any federal district based on AT&T Inc.'s "minimum contacts" with the United States as a whole.

In support of their contention that the two clauses of Section 12 should be read independently, as opposed to interdependent, Plaintiffs cite case law, primarily from the Ninth and Third Circuits. Plaintiffs rely on the Ninth Circuit's pronouncement in Go-Video, Inc. v. Akai Electric Co., 885 F.2d 1406 (9th Cir. 1989), to support their claim that Section 12 affords nationwide service of process independent of the venue requirement. In that case, the Ninth Circuit determined that the Section 12 phrase "in such cases" was facially ambiguous. Id. at 1408. The court ultimately held that "in such cases" refers to antitrust cases generally, as opposed to referring to cases in which the venue provision it follows in the text has been satisfied. Thus, venue is proper in federal antitrust suits if the venue requirements of Section 12 or 28 U.S.C. § 1391 are satisfied. To reach this determination, the Ninth Circuit reviewed its treatment of specific venue statutes as opposed to general venue statutes, the legislative history and interpretation of the Clayton Act, and the division among lower courts and other comments on the question. Id. at 1409-11. The Court further examined the "hidden intricacies" of the word "such" and looked to other statutes where antecedents and consequents were facially ambiguous. Id. at 1412. The conclusion reached by the Ninth Circuit after analyzing these facets of the Clayton Act was that process may be served on an antitrust defendant pursuant to 15 U.S.C. § 22 in cases where venue is not established under that section but lies properly under other venue statutes. Id. at 1413. Therefore, the Ninth Circuit's determination allows the allegedly injured

5

party a greater range of potential places in which to bring suit, on the assumption that the Section 12 venue provision is not exclusive or narrowly conceived. Id.

The Ninth Circuit reiterated its Go-Video holding in a more analogous case to the situation here, Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174 (9th Cir. 2004). That court noted that it was a question of first impression in the Ninth Circuit as to whether venue was a necessary component of personal jurisdiction under Section 12 of the Clayton Act. Id. at 176. There, the court found that the "question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper." Id. at 1178-79. After reviewing other federal statutes authorizing nationwide service of process, the Ninth Circuit held that the

> juxtaposition of the venue and service of process provisions in Section 12, without more, does not convince us that Congress intended to make these concepts analytically interdependent, rendering a court's exercise of personal jurisdiction over an antitrust defendant dependent on the propriety of venue.

Id. at 1179. Accordingly, the Ninth Circuit explicitly held in Action Embroidery that under Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant does not depend upon there being proper venue with that court. Id. at 1179-80.

The Third Circuit encountered Section 12 in In Re: Automotive Refinishing Paint Antitrust Litigation, 358 F.3d 288 (3rd Cir. 2004). That circuit held that the clauses of Section 12 should be read exclusive of each other. Accordingly, personal jurisdiction is assessed on the basis of defendant's aggregate contact with the United States as a whole and is as broad as the limits of due process under the Fifth Amendment. Id. at 298-99.

Defendants counter with judicial opinions from the D.C. Circuit, as well as the Second Circuit. In GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000),

6

the defendants appealed a district court order finding personal jurisdiction and venue proper where the sole contact was the operation of websites accessible to persons within the district. On appeal, the parties agreed that the nationwide service clause conferred nationwide jurisdiction, but disagreed whether the venue clause must be satisfied for there to be nationwide personal jurisdiction over the antitrust defendants.

In reviewing the Ninth Circuit's pronouncement in Go-Video, the D.C. Circuit found that the Ninth Circuit's holding was a "tortured interpretation of Section 12," "particularly given the literal convolutions required to jettison to first clause." Id. at 1345, 1357. The D.C. Circuit held:

> The language of the statute is plain, and its meaning seems clear: The clause before the semi-colon relates to a supplemental basis for venue in actions under the Clayton Act; The clause after the semi-colon relates to nationwide service of process in antitrust cases; and invocation of the nationwide service clause rests on satisfying the venue provision.

Id. at 1356. Accordingly, the court noted that reference to serving process "in such cases" "clearly seems to require that the preceding clause's venue requirements be established before nationwide service can be authorized." Id. at 1357. Therefore, the D.C. Circuit held that "[a] party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both its clauses. To read the statute otherwise would be to ignore its plain meaning." Id.

The Second Circuit took up the issue of whether nationwide service of process (and personal jurisdiction) is available under Section 12 only in cases satisfying the section's specific venue provision or otherwise in Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408 (2d Cir. 2005). The Second Circuit noted that "[t]he answer turns on construction of the introductory phrase 'in such cases' in the process provision, which defines the scope of its applicability." Id. at 422. The court held that the plain language of Section 12 indicates that its service of process

7

provision applies (and therefore, establishes personal jurisdiction) only in cases in which its venue provision is satisfied. Id. at 423. The court analyzed the "common meaning" of "such" and the clause placement, determining that it is "'in such cases,' i.e., such venued cases, that Section 12 makes worldwide service of process available." Id. at 424. Because the court found the statutory language to be plain, the Second Circuit determined there was no need to analyze the legislative history of that statute. However, the court noted that even if it were to consider that history, the conclusion reached by the Ninth Circuit relying on such legislative history was not supported. Further, the Second Circuit refused to consider judicial treatment of other statutes with nationwide service of process provisions, due to the impossibility of inhering Congressional intent and the intricacies of statutory text and structure. Id. at 426.

While both parties cite Fifth Circuit law as supporting their positions, the Court notes that no prior proclamations by the Fifth Circuit have specifically addressed the interplay of personal jurisdiction with the venue provision under the Clayton Act. Plaintiffs cite Busch v. Buchman, Buchman & O'Brien Law Firm, 11 F.3d 1255 (5th Cir. 1994), in which the Fifth Circuit found that the venue provision of the Securities Exchange Act grants nationwide service of process to any federal court where "any act or transaction constituting the violation occurred." Id. at 1256. Plaintiffs also cite Fontenot v. Mullins Manu. Co., 85 F.3d 625 (5th Cir. 1996), wherein the Court "recognized that the Clayton Act provides for nationwide service of process." Id. at *1 (citing Black v. Acme Markets, Inc., 564 F.2d 681, 683-84 (5th Cir. 1977)). The Northern District of Mississippi has likewise acknowledged that "in actions providing for nationwide service of process, the defendant needs only to have minimum contacts with the United States to satisfy due process." Nationwide Ins. Co. v. Olvera, 2008 U.S. Dist. Lexis 81442, *3 (N.D. Miss. July 22, 2008) (citing Busch, 11 F.3d at 1258). Plaintiffs also cited Dale v. Ala. Acquistions,

Inc., 203 F. Supp. 2d 694, 698-99 (S.D. Miss. 2002), on the basis that RICO's nationwide service of process provision was deemed to convey personal jurisdiction over defendants with minimum contacts with the United States.

Defendants cite Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694 (5th Cir. 1999) in which the Fifth Circuit held that where jurisdiction is invoked under the Clayton Act, the court is to examine the defendant's contact with the United States as a whole to determine whether the requirements of due process have been met. Id. at 718. There, however, there was no personal jurisdiction over the foreign Mexican defendants pursuant to the Clayton Act as there was no evidence the entity was doing business in the United States. Id. The Court did find, however, that the exercise of personal jurisdiction over the Mexican company was proper pursuant to the due process clause, finding that the foreign corporation had sufficient minimum contacts with Texas to convey specific jurisdiction in the forum state. Id.

On the basis of the Fifth Circuit's pronouncements about Section 12, the Court feels confident in stating that where the Clayton Act provides for nationwide service of process, the relevant minimum contacts inquiry is whether defendant had sufficient minimum contacts with the United States. As to the issue presented here, however, the Fifth Circuit has no binding precedent to dictate the outcome of this motion. In this instance, the Court must back up and determine first whether the Clayton Act provides for nationwide service of process in all antitrust actions, or solely where venue is appropriate pursuant to that statute.

Relevant persuasive authority exists from the Northern District of Texas. In Management Insights, Inc. v. CIC Enter., Inc., 194 F. Supp. 2d 520 (N.D. Tex. Nov. 19, 2001), the court sua sponte sought briefing from the parties on the issue of whether 15 U.S.C. § 22 providing for nationwide service of process for antitrust violations would allow the court to assert personal

9

jurisdiction over the defendants in relation to the Sherman Act claims. Id. at 522. The court found that Section 12 is inapplicable to establish that jurisdiction over the defendants because "operation of the statute is predicated upon proper venue, which is lacking in this case." Id at 530. Accordingly, that district court determined that the venue provision of Section 12 is a precondition to the second clause's extraterritorial reach.

After reading and analyzing all case law cited by the parties, as well as indulging in an extensive national examination of other courts' treatment of Section 12, the Court finds that the two clauses of 15 U.S.C. § 22 should be read as an integrated whole. Accordingly without satisfying the venue provision of the Clayton Act, service of process is not proper, and therefore, personal jurisdiction cannot be had pursuant to that federal statute. The Court finds as persuasive the reasoning employed in the Second Circuit, the D.C. Circuit, and the district court for the Northern District of Texas. The plain reading of the statute is not ambiguous. The clauses are separated by a semi-colon, not a period, and are further conjoined by the word "and." Thus the Court holds that the phrase "in such cases" refers to those causes of action filed where the antitrust defendant is an "inhabitant," may be "found," or "transacts business." Reading the statute as it is written leads the Court to find that without a proper venue finding, nationwide service of process is not available. Accordingly, the Court must decide whether venue is appropriate in this district in order to determine whether the exercise of personal jurisdiction over AT&T Inc. is proper under the statute.

Being an "inhabitant" is held to mean incorporated under the laws of the jurisdiction, while being "found" in a district is generally equated with "doing business" there, and requires greater contacts than does "transacting business." Management Insights, Inc., 194 F. Supp. 2d at 532 (citing GE v. Bucyrus-Erie Co., 550 F. Supp. 1037, 1041 n.5 (S.D.N.Y. 1982)). AT&T Inc.

10

avers it is not an inhabitant of, cannot be found within, and does not transact business in the Northern District of Mississippi; therefore, venue is improper and this Court cannot exercise personal jurisdiction over it pursuant to that statute. As noted above, it is undisputed that AT&T Inc. is incorporated in Delaware, with its principal place of business in Texas. AT&T Inc. filed an affidavit stating that AT&T Inc. does not conduct business in Mississippi, is not registered to conduct business in Mississippi, and maintains no registered agent in Mississippi. Moreover, AT&T Inc. is the stock-holder of its subsidiaries, but does not itself own equipment or maintain any property or employees in Mississippi.

Plaintiffs contend that prior court filings in other suits establish that AT&T Inc. has nationwide contacts. The attachments include court documents filed by AT&T Inc. which assert that "AT&T provides mobile wireless telecommunications services in 50 states . . . ." As admitted by Plaintiffs, however, culpability as to AT&T Inc. is not premised on the actions of its subsidiaries, but AT&T Inc. itself. It is undisputed that AT&T Inc. is not an "inhabitant," as it is not incorporated in Mississippi. Plaintiffs have not shown, other than by general unsubstantiated allegations, that AT&T Inc. was or is transacting business or found within this Court's reach. Accordingly, Plaintiffs have not satisfied the first clause of Section 12, and are not entitled to the benefits of the nationwide service of process provision. Therefore, the Court finds Section 12 to be inapplicable because operation of the statute is predicated on proper venue, which is lacking in this district. See Management Insights, Inc., 194 F. Supp. 2d at 530.

*1. Statutory Authority – Mississippi Long Arm Statute*

A "federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the

11

Due Process Clause of the Fourteenth Amendment." Mullins v. TestAmerica, Inc., 564 F.3d 386, 398 (5th Cir. 2009). Mississippi's long-arm statute provides:

> Any nonresident . . . corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57.

### A. Doing Business Prong

The long-arm statute provides jurisdiction over any corporation or person "who shall do any business or perform any character of work or service in this state." MISS. CODE ANN. § 13-3-57. Plaintiffs have failed to refute AT&T Inc's affidavit that it is not doing business in Mississippi. Indeed, Plaintiffs did not even argue that jurisdiction is appropriate under this prong of the long-arm statute. Accordingly, the Court concludes that jurisdiction is not appropriate under the doing business prong of the long-arm statute.

### B. Tort Prong

Plaintiffs assert that antitrust violations are analogous to tort claims for long-arm statute analysis purposes. Plaintiffs contend that the tortious conduct and the injury occurred in Mississippi, therefore, the Court may properly exercise personal jurisdiction over AT&T Inc. For purposes of Mississippi's long-arm statute, "personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi."Allred v. Moore & Peterson, 117 F.3d 278, 282 (5th Cir. 1997). "[A] tort is committed in Mississippi when the injury results in this State." Dunn v. Yager, 58 So. 3d 1171, 1184 (Miss. 2011). "In determining where the injury

occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury." Jobe v. ATR Mktg., 87 F.3d 751, 753 (5th Cir. 1996); see also Vig v. Indianapolis Life Ins. Co., 384 F. Supp. 2d 975, 978-79 (S.D. Miss. 2005). "[C]onsequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." Jobe, 87 F.3d at 753-54 (citing numerous cases).

According to Plaintiffs, AT&T Inc. was a participant in the creation of Band 17, the "end result of [which] was to eliminate the ability of small carriers to use Lower A Block spectrum." Plaintiffs failed to allege or provide evidence that AT&T Inc. committed a tort in whole or in part in Mississippi. If anything, the causes of action allege only that the consequences stemming from AT&T Inc.'s violations occurred in Mississippi. Therefore, jurisdiction is not appropriate under the tort prong of the long-arm statute.

*C. Constitutional Authority*

"To satisfy the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." Mullins v. TestAmerica, Inc., 564 F.3d 386, 398 (5th Cir. 2009). "Jurisdiction may be general or specific, depending on the nature of the defendant's forum-related contacts." Jackson v. Tanfoglio Giuseppe S.R.L., 615 F.3d 579, 584 (5th Cir. 2010). "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." Clemens v. McNamee, 615 F.3d 374, 378 (5th Cir. 2010).

13

The Court "applies a three-step analysis to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." Jackson, 615 F.3d at 585.

For the reasons cited above, Plaintiffs have failed to establish that AT&T Inc. has purposely availed itself of this Court's jurisdiction. Plaintiffs have in no way proved that AT&T Inc. has sufficient contacts with Mississippi to establish jurisdiction. Even if Plaintiffs attempted to argue Defendant AT&T Inc. is subject to personal jurisdiction in the state of Mississippi by virtue of the activities of its subsidiary corporation, AT&T Mobility, which it does not, Plaintiffs have failed to meet that burden.

"Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts." Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999). "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there." Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983). A plaintiff may overcome this presumption of independence by making a prima facie showing of "one corporation asserting sufficient control to make the other its agent or alter ego." Dickson, 179 F.3d at 338. The Fifth Circuit has provided a list of factors to be considered when making this determination:

> (1) the parent and the subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business

>except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc., 85 F.3d 201, 208-09 (5th Cir. 1996); see also Hargrave, 710 F.2d at 1160. Plaintiffs have only presented evidence that AT&T Inc. has acted on its subsidiaries' behalf in court filings, and that AT&T Inc.'s CEO has spoken of the AT&T wireless telecommunications business generally. Plaintiffs have failed to even make this argument that AT&T Inc. is liable for the actions of its subsidiaries, and has expressly refuted its intent to do so. Accordingly, jurisdiction over AT&T Inc. is not proper on the basis of its subsidiaries' contacts with the State of Mississippi.

### D. *Jurisdictional Discovery*

Plaintiffs request jurisdictional discovery to determine AT&T Inc.'s contacts with Mississippi. The Court denies this request on the basis that even if it were proper to exercise personal jurisdiction over AT&T Inc., Plaintiffs would not be able to overcome the Rule 12(b)(6) findings made by this Court. Even though Plaintiffs contend this action was brought against AT&T Inc. for its own acts, the Amended Complaint, as noted above, refers to both AT&T Mobility and AT&T Inc. throughout as "AT&T." The Court further considered remarks by the AT&T Inc. CEO in its Memorandum Opinion in finding that no cause of action survived the 12(b)(6) inquiry. Thus, the Court is confident that were AT&T Inc. to file a Rule 12(b)(6) motion, and Plaintiffs responded as to that entity only, the result would be the same, and this action would be dismissed in its entirety. Thus, the Court finds that jurisdictional discovery would be a waste of resources and is not necessary.

*Conclusion*

The Court does not have personal jurisdiction over AT&T under the Clayton Act, as venue is not proper in this district.  Plaintiffs have failed to show that the exercise of jurisdiction over AT&T Inc. under the Mississippi Long-Arm Statute is appropriate.  Accordingly, AT&T Inc. is dismissed as a party.

Alternatively, the Court notes that were it able to exercise jurisdiction over AT&T Inc., pursuant to the Memorandum Opinion entered August 31, 2012, Plaintiffs have failed to survive a 12(b)(6) inquiry as to all other Defendants.  As the Court noted above, Plaintiffs failed to separately allege action or omissions separate and apart from the general "AT&T" defendants, therefore, the Court finds under the reasoning employed in Corr Wireless Comm. v. AT&T, Inc., --- F. Supp. 2d ---, 2012 U.S. Dist. Lexis 124042, 2012 WL 3782601 (N.D. Miss. Aug. 31, 2012), the dismissal of AT&T Inc. is appropriate.

SO ORDERED, this the 1st day of November, 2012.

/s/ **Sharion Aycock**_____
**U.S. DISTRICT JUDGE**