UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**CORR WIRELESS
COMMUNICATIONS, L.L.C.,
CELLULAR SOUTH, INC., and
CELLULAR SOUTH LICENSES, LLC**                             PLAINTIFFS

VS.                                                    CIVIL ACTION NO. 3:12-cv-036-SA-SAA

**AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC.,
QUALCOMM INCORPORATED, and
JOHN DOES 1-10**                                            DEFENDANTS

<u>**MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT OR,
ALTERNATIVELY, MOTION TO ALTER OR AMEND ORDER TO PERMIT
AMENDMENT TO COMPLAINT**</u>

Plaintiffs Corr Wireless Communications, L.L.C., Cellular South, Inc. and Cellular South Licenses, LLC (collectively, Cellular South) submit this Memorandum in Support of their Motion to Amend Complaint pursuant to Fed. R. Civ. P. 15(a)[1] or, alternatively, Motion to Alter or Amend Order dated November 1, 2012 pursuant to Fed. R. Civ. P. 59(e).

<u>**INTRODUCTION**</u>

Cellular South files this Motion for the limited purpose of addressing the perceived deficiencies in its claims against AT&T, Inc., which led to the Court's entry of an Order granting AT&T, Inc.'s motion to dismiss for lack of personal jurisdiction [Dkt. #115] on November 1, 2012. Already pending before this Court is Cellular South's Motion to Amend Complaint [Dkt.

---

[1] As the Court is well aware, Fed. R. Civ. P. 15(a) provides that leave to amend a party's pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Although it is within the Court's discretion whether to grant or deny a motion to amend, the motion should only be denied where "there is a substantial reason to do so." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).

1

#105], which Cellular South filed on October 1, 2012. This Motion is intended as a supplement to Cellular South's earlier Motion to Amend. Attached to the Motion is Cellular South's proposed Third Amended and Supplemental Complaint ("TASC") which adds to the allegations contained in paragraphs 45 and 52 of Cellular South's proposed Second Amended and Supplemental Complaint ("SASC") [Dkt. #105, Att. #1] but is in all other respects identical to the SASC.

## I. THE PURPOSE OF THE PROPOSED AMENDMENT.

The primary clarifications and additions made by the proposed amendment are described below.

First, for all of the reasons stated in Cellular South's arguments in support of permitting the SASC [Dkt. ##106, 117], this Court must accept as true its allegations that the interference claims used as a basis to create Band 17 were false and pretextual in nature. Accepting such allegations as true leads inexorably to the conclusion that the real motivation for creating Band 17 was to establish a private ecosystem for AT&T, with all of the anticompetitive purposes and effects outlined in the SASC. That action, according the allegations of the SASC, constitutes a Section 1 conspiracy among the Defendants and a Section 2 violation by AT&T, Inc. and AT&T Mobility LLC. Thus, for the same reasons, the Court must also revisit the claims against, and jurisdiction over, AT&T, Inc. in light of the amended and clarified allegations. The TASC clarifies that AT&T, Inc. itself participated in the actions to create and use Band 17, and that such participation is sufficient to subject it to personal jurisdiction in this forum.

In addition, the TASC alleges more clearly facts relating to the actions of AT&T, Inc. to demonstrate its participation in a conspiracy with AT&T Mobility LLC which subjects AT&T,

2

Inc. to personal jurisdiction in this Court pursuant to the "conspiracy theory" of jurisdiction enunciated by several courts.

Finally, the TASC seeks to clarify the record to include in the amended complaint the factual assertions contained in some of the attachments to Cellular South's Response in Opposition to AT&T Inc.'s Motion to Dismiss. Although the Court has already considered those attachments and facts, the TASC seeks to incorporate those facts into the complaint itself, out of an abundance of caution, and no prejudice will result from their inclusion.

## II. THERE ARE NO GROUNDS SUFFICIENT TO DENY LEAVE TO AMEND.

The Fifth Circuit has articulated five considerations in determining whether to grant a party leave to amend a complaint: 1) undue delay; 2) bad faith or dilatory motive; 3) repeated failure to cure deficiencies by previous amendments; 4) undue prejudice to the opposing party; and 5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (internal citation omitted)). None of those grounds are present here.

Cellular South has sought to amend its Complaint relating to AT&T, Inc. in a timely manner. Although Cellular South amended its complaint once as a matter of right to correct some technical defects in its original complaint, this is the first time that Cellular South has sought leave to amend its complaint **relating to personal jurisdiction over AT&T, Inc.**, and the first opportunity to amend following the Court's Memorandum Opinion dated November 1, 2012 finding no jurisdiction over AT&T, Inc. At the time Cellular South filed its prior motion to amend, the Court had not yet ruled upon personal jurisdiction over AT&T, Inc., and, consequently, Cellular South did not know, and could not have foreseen, the purported factual deficiencies raised by the Court in its November 1, 2012 order. Amendment is not sought for

improper purpose, or for delay. Rather, amendment is sought so that this Court can reach and resolve this case on the merits against all responsible parties.

For all these reasons, this proposed amendment is timely, and not repetitive. Nor has there been any bad faith or undue prejudice.

### III. THE TASC SETS FORTH AMPLE FACTS TO DEMONSTRATE THAT AT&T, INC. IS SUBJECT TO JURISDICTION PURSUANT TO THE CONSPIRACY THEORY OF PERSONAL JURISDICTION.

Cellular South contended, and still believes, that the jurisdictional allegations contained in its First Amended and Supplemental Complaint ("FASC") [Dkt. #75] were sufficient as a matter of law to impose personal jurisdiction over AT&T, Inc. However, the Court has disagreed with that contention. Thus, Cellular South now seeks permission to amend its complaint to allege and clarify the facts relating to AT&T, Inc. to demonstrate that AT&T, Inc. is subject to the jurisdiction of this Court under the "conspiracy theory" of personal jurisdiction.

Many courts have adopted and articulated the "conspiracy theory" of personal jurisdiction. It is clearly summarized in an early opinion on this issue that set forth "a simplified articulation of the conspiracy theory of jurisdiction:"

> [U]nder that doctrine, when (1) two or more individuals conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Cawley v. Bloch*, 544 F. Supp. 133, 135 (D. Md. 1982). The rationale for such a theory is clear cut.

> '[T]he theory is rooted in policies that make conspirators liable for the acts of their coconspirators in furtherance of a conspiracy.' It is a 'shorthand reference to an analytical framework where a defendant's conduct that either occurred or had a

4

> substantial effect in Delaware is attributed to a defendant who would not otherwise be amendable to jurisdiction in Delaware,' but is not an independent jurisdictional basis. . . However, subjecting nonresident defendants to jurisdiction based on the conspiracy theory comports with due process because, "when a defendant voluntarily participates in a conspiracy with knowledge of its acts in or effects in the forum state, he 'can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws.'"

*G & G LLC v. White*, 535 F. Supp. 2d 452, 464-65 (D. Del. 2008) (internal quotations omitted).

In recent years, numerous courts all over the country have recognized and applied this doctrine. For example, it was recently discussed by the Eleventh Circuit in *J&M Assocs., Inc. v. Romero*, 2012 WL 3601633. * 1 (11th Cir. Aug. 22, 2012) (recognizing that "Alabama courts have adopted the conspiracy theory of personal jurisdiction" and setting out the requirements for establishing personal jurisdiction under the theory).

Numerous other cases can be cited for the proposition. *See, e.g., Textor v. Board of Regents*, 711 F.2d 1387, 1392-1393 (7th Cir. 1983) ("Conspiracy theory" of personal jurisdiction is based on the 'time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy.'"); *VIST Fin. Corp. v. Tartaglia*, 2010 WL 2776832 (D.N.J. July 14, 2010) (theory applied); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 564 (M.D.N.C. 1979) (adopting the conspiracy theory of jurisdiction and recognizing that it is based on the "time honored notion that the acts of conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy"); *Ky. Speedway, LLC v. NASCAR*, 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006) ("Under the 'conspiracy' theory of long-arm jurisdiction, acts undertaken within the forum by one co-conspirator in furtherance of an

5

alleged conspiracy may subject a non-resident co-conspirator to personal jurisdiction under the long-arm statute.").

Thus far, neither the Mississippi Supreme Court nor the Fifth Circuit applying Mississippi law has spoken directly as to the conspiracy theory of jurisdiction. However, the principle of making each co-conspirator responsible for the actions of other conspirators is firmly anchored in Mississippi law. See *Southern Bus Lines, Inc. v. Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees Of America*, 38 So.2d 765, 769 (Miss.1949) ("Private persons cannot conspire to illegally destroy the business of another, and where two or more persons conspire together, the conspiracy makes the wrongful acts of each the joint acts of them all.")(citations omitted); see also, *Abney v. State Farm Fire and Casualty Co.*, 2008 WL 2331098, No. 1:07CV711 LTS-RHW, *4 (S.D. Miss. June 4, 2008) ("In a civil conspiracy...all the participants may be held liable for any damage attributable to the conspiracy."). Thus, there is no reason to believe it would not be accepted in federal or state law for the purposes of jurisdiction.

The TASC clarifies and expands the fact outlined in the FASC and proposed SASC in order to make it more apparent that AT&T, Inc. is subject to jurisdiction in Mississippi under this theory. Cellular South has alleged the existence of a conspiracy by and between AT&T, Inc. and AT&T Mobility, LLC and the other Defendants to violate the antitrust laws (particularly Sections 1 and 2 of the Sherman Act) and to cause injury to competition in this district. TASC, ¶45.

Cellular South recognizes, of course, that an agreement between a parent and a subsidiary itself is not an actionable agreement that would fall within the scope of Section 1 of the Sherman Act. No Section 1 claim based on a conspiracy solely between AT&T,

6

Inc. and AT&T Mobility LLC is being alleged. The Section 1 claim here arises because both AT&T, Inc. and AT&T Mobility LLC have entered into concerted action with the other two Defendants. The Section 2 claim here arises because both AT&T, Inc. and AT&T Mobility LLC have taken action which violates Section 2 of the Sherman Act.

The TASC more clearly alleges that such a conspiracy makes both AT&T, Inc. and AT&T Mobility LLC subject to the jurisdiction of this Court under the "conspiracy theory" of jurisdiction. While all of the versions of the complaint describe the acts of AT&T, Inc. in that process (see FASC, ¶¶42, 164-320; SASC, ¶¶47, 172-389) the TASC makes additional allegations regarding the participation of AT&T, Inc. taken in furtherance of that conspiracy with AT&T Mobility LLC, particularly its role at 3GPP to create Band 17, etc.). TASC, ¶45.

Moreover, the TASC makes the undeniable point that creation of Band 17, and the decision of AT&T Mobility, LLC to operate on that spectrum, could not have occurred without the consent and participation of both AT&T, Inc. and AT&T Mobility LLC, as well as the consent and participation of other AT&T entities that actually owned the spectrum affected by that action at 3GPP. Moreover, as the quoted remarks from the CEO of AT&T, Inc. make clear, spectrum is so critical to AT&T that it is absurd to suggest that actions such as the creation of Band 17 – which dramatically affect that spectrum – are taken without the approval of AT&T, Inc. FASC, ¶349; SASC, ¶420.

In short, there is simply no way that such coordinated action – creation of Band 17 at 3GPP by AT&T, Inc. and then a deployment of a Band 17 network by AT&T Mobility, LLC, using spectrum owned by still other AT&T subsidiaries – could have occurred at different levels within the AT&T system without joint and concerted action

7

by both AT&T Mobility LLC and AT&T, Inc. The actual details of the concerted action of AT&T, Inc. and AT&T Mobility, LLC together to create Band 17 and then the decision to use and implement Band 17 network in Mississippi and in this District are known only to AT&T, Inc., but the fact that such concerted action occurred is beyond legitimate dispute. Given such concerted action and the participation of AT&T, Inc. at 3GPP, and given that AT&T Mobility LLC has committed an act in furtherance of the conspiracy here in Mississippi, the Court has personal jurisdiction over AT&T, Inc. based upon the "conspiracy theory" of personal jurisdiction.

November 20, 2012.

Respectfully submitted,

/s/ Walter H. Boone
Alan W. Perry, MSB #4127
Daniel J. Mulholland, MSB #3643
Walter H. Boone, MSB #8651
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
City Centre, Suite 200
200 South Lamar Street
Jackson, Mississippi 39201
Tel.: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Jr., MSB #8995
M. Patrick McDowell, MSB # 9746
Joseph A. Sclafani, MSB #99670
Brian C. Kimball, MSB #100787
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Tel.: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, MSB#8712
WATKINS & EAGER PLLC

8

        400 East Capitol Street, Suite 300 (39201)
        P. O. Box 650
        Jackson, MS 39205
        Phone: 601-965-1900
        Fax: 601- 965-1901
        wjohnson@watkinseager.com

        *Counsel for Plaintiffs Cellular South, Inc.,*
        *Corr Wireless Communications, L.L.C. and*
        *Cellular South Licenses, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2012, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**_Attorneys for Defendants AT&T Mobility LLC, and AT&T, Inc._**

David W. Upchurch
Holland Ray Upchurch and Hillen
P.O. Drawer 409
Tupelo, MS 38802-0409
dwu@hruhpa.com

Michael K. Kellogg (PHV)
William J. Rinner (PHV)
Kenneth M. Fetterman (PHV)
Aaron M. Panner (PHV)
Kellogg, Huber, Hansen, Todd, Evans & Figel P.L.L.C.
1615 M. Street NW, Suite 400
Washington, D.C. 20036
mkellogg@khhte.com
wrinner@khhte.com
kfetterman@khhte.com
apanner@khhte.com

**_Attorneys for Defendant Qualcomm Incorporated_**

L.F. Sams, Jr.
Margaret Sams Gratz
Otis R. Tims
Mitchell McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802

ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com

Yonatan Even (PHV)
Roger G. Brooks (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com

***Attorneys for Defendant Motorola Solutions, Inc.***

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
jmurray@crowell.com


THIS, the 20th day of November, 2012.

/s/ Walter H. Boone

ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com

Yonatan Even (PHV)
Roger G. Brooks (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com

***Attorneys for Defendant Motorola Solutions, Inc.***

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
jmurray@crowell.com


THIS, the 20th day of November, 2012.

/s/ Walter H. Boone