**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**CORR WIRELESS**
**COMMUNICATIONS, L.L.C.,**
**CELLULAR SOUTH, INC., and**
**CELLULAR SOUTH LICENSES, LLC**         **PLAINTIFFS**

**VS.**         **CIVIL ACTION NO. 3:12-cv-036-SA-SAA**

**AT&T, INC., AT&T MOBILITY LLC,**
**MOTOROLA SOLUTIONS, INC.,**
**MOTOROLA MOBILITY, INC.,**
**QUALCOMM INCORPORATED, and**
**JOHN DOES 1-10**         **DEFENDANTS**

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO AMEND COMPLAINT OR, ALTERNATIVELY,**
**MOTION TO ALTER OR AMEND ORDER TO PERMIT AMENDMENT TO**
**COMPLAINT**

Plaintiffs Corr Wireless Communications, L.L.C., Cellular South, Inc. and Cellular South

Licenses, LLC (collectively, Cellular South) submit this Reply Memorandum in Support of

Motion to Amend Complaint pursuant to Fed. R. Civ. P. 15(a) or, alternatively, Motion to Alter

or Amend Order dated November 1, 2012 pursuant to Fed. R. Civ. P. 59(e) to permit amendment

of the complaint.

**I.**   **THE REASON FOR THE THIRD AMENDMENT.**

This additional proposed amendment (the Third Amended and Supplemental Complaint,

or "TASC") was made necessary by the timing of the Court's orders.

The Court entered its first Memorandum Opinion on August 31, 2012. That order dealt

only with the claims against AT&T Mobility, Qualcomm, and Motorola and those defendants'

motions to dismiss for failure to state a claim. In response to the pleading deficiencies

referenced by the Court's order, Plaintiffs submitted the proposed Second Amended and

1

Supplemental Complaint (SASC) to plead additional facts with respect to those other

Defendants.

However, since the proposed SASC was filed long after the jurisdictional motion of

AT&T, Inc. had been briefed and argued, the Court's recent Memorandum Order dated

November 1, 2012 dealing with personal jurisdiction over AT&T, Inc. did not consider the

additional facts alleged in the proposed SASC in its consideration of AT&T, Inc.'s jurisdictional

motion.

This TASC recites all of what is contained in the SASC. It differs from the proposed

SASC only insofar as the allegations that relate to AT&T, Inc., and those different allegations are

contained in two paragraphs, ¶¶45 and 52. The TASC is identical to the SASC in all other

respects, and insofar as the other three Defendants are concerned.

If the Motion to file the TASC is granted, the Motion to file the SASC will be mooted.

Thus, in light of the Court's decision on jurisdiction -- which did not take into account

the facts set forth in the SASC which are in fact relevant to the jurisdictional issues raised by

AT&T, Inc. – Plaintiffs now submit the proposed TASC which contains the new allegations

originally set out in the SASC along with other allegations relevant to jurisdiction over AT&T,

Inc.

The briefing submitted in support of this TASC does not repeat all of the briefing

contained with respect to the SASC to avoid burdening the Court with reading the same material

twice. It is incorporated here by reference and is critical to the TASC.

## II.     CELLULAR SOUTH'S PROPOSED AMENDED COMPLAINT IS TIMELY, AND NOT REPETITIVE.

AT&T, Inc. submits that this motion is both "unduly delayed" and "follows repeated

failures," neither of which is true. AT&T Response, at 6. [Doc. #122]. Cellular South filed this

motion less than three weeks after the Court's Memorandum Opinion dated November 1, 2012. Prior to the Court's order, Cellular South did not know, and could not have known, the basis for the Court's ruling, or the factual allegations required to cure those perceived defects. Cellular South promptly filed this motion to correct those defects.

It should be noted that, to date, the complaint in this action has only been amended once and only slightly – and even then the amendments were mostly technical. That amended complaint [Doc. # 75] was filed as a matter of course and was made primarily to add a new party to satisfy issues expressed by one of the Defendants. At the same time, that amended complaint corrected minor technical defects in the original complaint and alleged a very limited amount of newly discovered evidence. As set forth in the introductory paragraph of the First Amended and Supplemented Complaint ("FASC"), the amendment affected only four paragraphs in the detailed complaint and did not even change the numbers of the remaining paragraphs. In sum, the amendment was minor.

Cellular South sought to file the SASC following the Court's ruling on Defendants' motions to dismiss, but the Court has not ruled upon that motion.

Cellular South has now filed the current motion – which incorporates all of the new material from the SASC and adds allegations which related to AT&T, Inc. – so that the Court can decide whether to permit amendment once and for all based on the allegations in the TASC. That is the most efficient manner to resolve all of these issues.

Certainly, these facts cannot be construed as constituting "repeated" amendments.

Of course, AT&T, Inc. does not argue that it has suffered, or will suffer, any prejudice simply because it has not and will not.

III.    **THE TASC ASSERTS MATERIAL NEW FACTS AND LEAVE TO AMEND SHOULD BE FREELY GIVEN.**

By erroneously claiming there are no new facts – and thus simply ignoring the new facts summarized below -- AT&T, Inc. seeks to mischaracterize Cellular South's motion as an attempt to reconsider the Court's ruling on personal jurisdiction over AT&T, Inc.   Presumably, AT&T's goal is to suggest that the Court should apply the more stringent standard under Rule 59(e) rather than the more liberal standard for amendment under Rule 15(a).

Out of an abundance of caution, the motion was styled, **in the alternative,** as a Motion to Alter or Amend under Rule 59(e).[1]  While Cellular South of course disagrees with the Court's conclusion reached in the Memorandum Opinion dated November 1, 2012, the point of the Motion is to request that the Court consider the new facts contained in the TASC (including those originally set out in the SASC).

Thus, since the motion's purpose is to seek amendment to the complaint, the proper standard is that provided under Rule 15(a), which provides that the Court should "freely give leave when justice so requires."[2]  The standards governing motions to amend, and the case law

---

[1]     Cellular South sought relief alternatively under Rule 59(e) to eliminate the need for any argument as to whether the Court's Memorandum Order dated November 1, 2012 somehow constituted a "judgment or order" under F.R.A.P. 4(a)(1)(A), from which Cellular South must file a notice of appeal.  A Rule 59 motion tolls the time for appeal until that motion is resolved.  F.R.A.P. 4(a)(4)(A)(iv).  To avoid any useless argument as to whether Cellular South's time to appeal had run, Cellular South included the alternative reference to Rule 59(e) to clarify beyond dispute that Cellular South's time for appeal had not started.

[2]     Even if technically treated as a Rule 59(e) motion, there is Fifth Circuit authority that the same standard applies.  *See Conry v. Daugherty*, 2011 WL 4807892, at *5 (E.D. La. 2011) ("Although plaintiff's post-dismissal motion to amend must be treated as a motion under Rule 59(e), not Rule 15(a), the Fifth Circuit has held that when 'judgment has been entered on the pleadings ... the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a).'" quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n. 1 (5th Cir. 1981)).  Thus, under these circumstances, a Rule 59(e) motion to amend will be governed by Rule 15(a) standards.

interpreting those standards, have been fully briefed to the Court in Cellular South's first motion

to amend. *See* [Doc. #105].

IV.    **CELLULAR SOUTH'S PROPOSED AMENDED COMPLAINT ALLEGES NEW FACTS WHICH SUPPORT A STATEMENT OF THE CLAIM ON THE MERITS AND ALSO THE EXERCISE OF PERSONAL JURISDICTION OVER AT&T, INC.**

In spite of AT&T, Inc.'s arguments that the TASC states no new facts or allegations

which support personal jurisdiction over it, the TASC contains a substantial number of new

allegations that go to the merits and substantiate personal jurisdiction.[3] Those new facts are

succinctly summarized below.

A.    **The Additional Facts Originally Set Out In the SASC And Now Embodied In The TASC Require Acceptance Of The Factual Allegation That The Interference Claims Relied Upon To Justify The Creation Of Band 17 Were Pretextual.**

The Court's Memorandum Opinion dated August 31, 2012 [Doc. # 100] dismissed the

claims asserted against AT&T Mobility, Qualcomm, and Motorola by rejecting the primary

allegation upon which this entire claim is predicated -- the allegation that the claims of

interference advanced as justification for the creation of Band 17 were pretextual and false. As

noted in the Memorandum filed in support of the SASC seeking to amend the complaint as to the

defendants other than AT&T, Inc.:

> The heart of this antitrust claim is and was the allegation that the interference justifications offered by the Defendants to explain the creation of Band 17 were simply not true. The Complaint alleges that the claims of interference were false as a matter of science and engineering. That is a fact that Cellular South contends must be accepted for purposes of this litigation. Cellular South would never have filed this litigation if there really had been genuine interference that

---

[3]    The facts contained in the SASC and now carried forward into the TASC are "new" compared to the operative complaint in this case, the FASC [Doc. # 75], because the Court has not yet ruled upon Cellular South's motion to amend and file the SASC. [Doc. # 105]. Thus, the appropriate inquiry of whether Cellular South has alleged "new" allegations must be judged against the operative complaint, the FASC.

would have actually interfered with the utilization of Band 12 by carriers such as AT&T.

Memorandum Brief, at 6-7 [Doc. # 106].

Cellular South has moved to add more facts in the SASC (which are now incorporated into the TASC) demonstrating that the claims of interference were pretextual. Those facts are outlined and discussed at length in the Memorandum in support of the Motion to file the SASC. Memorandum Brief, at 7 [Doc. # 106].

In order to avoid redundancy, that entire argument is not restated at length here, and instead is incorporated by reference. It can be briefly restated in summary form as follows:

- Cellular Sought has set out additional and more detailed facts delineating the allegation that there was no actual interference that required the creation of Band 17. Those allegations, which were first set out in the SASC, are found at the SASC and TASC at ¶¶254-273.

- The pretextual nature of the arguments used by Defendants to create Band 17 have been revealed by subsequent events, such as Qualcomm's actual production of a Band 12 chip, U.S. Cellular's actual deployment of a Band 12 network, and the FCC's rejection of most of Defendants' claims of interference. Those allegations are found in the SASC and TASC at ¶¶266-69.

- The 3GPP process did not involve some neutral group of experts that undertook any meaningful analysis of the proffered interference concerns, but rather a "rump group" of competitors dominated by Defendants who made these anticompetitive decisions without any smaller competitors present, or any notice to them. Those allegations are contained in the SASC and TASC, at ¶¶209-237. Thus, the fact

6

that 3GPP created Band 17 provides no basis upon which this Court can reject the allegation that there was no actual interference that required creation of Band 17.

- The proposed amended Complaint alleging anticompetitive conduct is therefore based on a plausible inference. Indeed, because the Defendants have asserted no reason for creating Band 17 other than interference and this Court must accept the allegation that "interference claims" advanced by the Defendants to justify the creation of Band 17 are demonstrably false as a matter of science, the **only plausible reason** for the creation of Band 17 was to create a private ecosystem for AT&T, with all of the anticompetitive effects outlined in the original complaint.

**B.      The Additional Facts Set Out In The TASC (Along With The New Facts Restated From The SASC) Support A Finding That AT&T, Inc. Is Subject To Jurisdiction In Mississippi.**

If the Court accepts the factual allegations (as contained in the SASC and TASC) that the interference claims advanced to support the creation of Band 17 were pretextual, the Court must then conclude that the complaint states a claim on the merits – as to all defendants on the Section 1 claims and as to the AT&T defendants on the Section 2 claim.

In addition, accepting the factual allegation as to the pretextual nature of the interference justifications necessarily leads to the clear conclusion that AT&T, Inc. is subject to the jurisdiction of this Court.

As the cases cited in the Memorandum in support of the motion to file the TASC [Doc. # 121] point out, AT&T, Inc. will be subject to personal jurisdiction in Mississippi even if it did not take any action in Mississippi, as long as AT&T, Inc. conspired with an entity that did commit overt acts in Mississippi. *See* Memorandum Brief, at 4-5 [Doc. # 121].

1.    The Conspiracy Of AT&T, Inc. With AT&T Mobility.

If the Court accepts the factual allegation that the interference claims advanced to support

the creation of Band 17 were pretextual, it necessarily follows that AT&T Mobility has engaged

in conduct that violates Section 2 of the Sherman Act regardless of whether AT&T Mobility

conspired with anyone else.[4]  If AT&T Mobility acted unilaterally in creating and using Band 17

even though its creation was not required by genuine interference concerns, that conduct of

AT&T Mobility constituted monopolization and attempted monopolization as outlined at pages

82 et seq. of Plaintiffs' Combined Memorandum Brief In Response to Defendants' Motion to

Dismiss.  [Doc. # 84].  As reflected in that brief, AT&T Mobility has engaged in in exclusionary

conduct of the type known as "intentional incompatibility."  Use of Band 17 has had the effect of

making it impossible, or at least very difficult, for competitors such as Cellular South to timely

acquire acceptable Band 12 devices or access to Band 17 roaming.  In light of AT&T Mobility's

market power, such conduct, if not justified, is prohibited by Section 2.

Thus, if the Court accepts that the interference justification offered for the creation of

Band 17 was pretextual, it is clear that the complaint adequately alleges that AT&T Mobility

itself has taken actions that constitute a violation of Section 2.

AT&T, Inc. has objected to jurisdiction in this district by arguing AT&T, Inc. is not

subject to jurisdiction in this state because AT&T, Inc. "does it all through subsidiaries."  **Here,**

**however, AT&T, Inc. conspired with its subsidiary AT&T Mobility to create and use Band**

---

[4]    Contrary to the implied suggestion of AT&T, Inc's most recent Memorandum, that jurisdiction over AT&T, Inc. can be predicated on conspiracy grounds that are completely independent of any findings as to the Section 1 conspiracy involving Motorola and Qualcomm.

**17.[5]  Such a conspiracy is enough by itself to provide jurisdiction over AT&T, Inc. in this state because that conduct has adversely affected commerce throughout this district and this state.**

This jurisdictional basis – based on the actions of one conspirator within a jurisdiction – is discussed at length in the Memorandum filed in support of the motion to amend.  That argument need not be repeated here, but the point may be easily illustrated by a simple example. Suppose a businessman in Texas (who has never been to Mississippi and has never previously taken any action that would subject him to jurisdiction in this state) decides to injure a competitor in Mississippi by using a more old-fashioned technique – arson.  Suppose that the Texas business man meets in Texas with a person willing to serve as an arsonist in Mississippi, provides him with an incendiary device, and agrees to pay the arsonist a substantial sum of money to firebomb the place of business of the Mississippi competitor.  The arsonist carries out that plan in Mississippi.   If the Mississippi competitor later sues the arsonist and the Texas competitor in Mississippi for the damages caused by the fire, both should be subject to jurisdiction in this state.  The arsonist would be subject to jurisdiction because he committed a tort in this state.   The Texas competitor should be subject to jurisdiction because he conspired with a person who committed a tort in this state and caused injury in this state and thus is responsible for the acts taken by that person as his agent within this state.   The Texas businessman has no legitimate objection to being required to defend an action in Mississippi based on actions committed by his co-conspirator agent within Mississippi.

---

[5]      Cellular South does not contend that such a conspiracy between a parent corporation and its subsidiary falls within the ambit of conduct prohibited by Section 1 of the Sherman Act. However, it is a conspiracy for purposes of exercising jurisdiction over AT&T, Inc.

In particular, as made clear in the TASC, the critical fact is that it was AT&T, Inc. – and not AT&T Mobility – that acted at 3GPP to cause the creation of Band 17.   As described in the TASC, ¶45:

> **[A]s reflected in the Meeting Reports, attached to this Third Amended and Supplemental Complaint, AT&T, Inc. (referenced in those reports as "AT&T") directly participated in the 3GPP proceedings related to the creation of Band 17, an issue in which the holding company itself had an interest only because of the intended use of that spectrum by AT&T Mobility LLC.** The reference to AT&T in those reports must refer to AT&T, Inc., or some entity acting on its behalf, because licenses for the 700 MHz spectrum at issue are actually owned by a number of different direct or indirect subsidiaries of AT&T, Inc., and those licenses were to be used by yet another subsidiary of AT&T, Inc., AT&T Mobility LLC.  Consequently, only the parent, or an entity acting on its behalf, could or would have authority to undertake those actions.  AT&T, Inc. is thus deeply involved in those wireless operations and it took action at 3GPP as part of a concerted plan to create a private Band 17 ecosystem for the use of AT&T Mobility LLC; . . .

[Doc. # 120-1, emphasis added].

The relevance of this critical new fact is by itself more than enough to establish personal jurisdiction over AT&T, Inc.  It must be accepted as true for purposes of this motion to amend.

Thus, the TASC establishes that, by acting at 3GPP, AT&T, Inc. acted with AT&T Mobility (and probably with other AT&T entities) to design and carry out the overall plan to create and deploy the Band 17 network.  Even if AT&T, Inc. never undertook any direct action in Mississippi, the facts alleged in the TASC require a holding that AT&T, Inc. is subject to jurisdiction in this district because AT&T Mobility has certainly taken action here.  Those actions include the monopolization and attempted monopolization discussed above, the creation and use of Band 17 in Mississippi, and the other specific acts referenced in the complaint.  That joint action, or conspiracy, forms the basis for a determination that AT&T, Inc. is subject to the jurisdiction of the Court.

AT&T, Inc.'s Response attempts to challenge this new fact by going back, once more, to conclusory and questionable Threlkeld Affidavit. AT&T Response, at 8-9 [Doc. # 122]. However, one thing is clear: **The Threlkeld Affidavit simply does not address the actions of AT&T, Inc. at 3GPP. There is no showing that Affiant Threlkeld – an AT&T employee involved in accounting -- had any information whatsoever about what occurred at 3GPP or as to the actions taken by AT&T, Inc. during the course of the proceedings at 3GPP that led to the adoption of Band 17.[6]** Thus, the Threlkeld Affidavit is of no help to AT&T, Inc. in challenging the factual allegation that AT&T, Inc. acted at 3GPP to help create Band 17.[7]

If AT&T, Inc. wants to challenge the factual allegation that it took action at 3GPP to create Band 17, it should do so by filing a motion to dismiss the TASC for lack of jurisdiction once the TASC has been filed. At that time, jurisdictional discovery would be appropriate to challenge any affidavits denying involvement at 3GPP by AT&T, Inc.

---

[6]     The Threlkeld Affidavit has many other problems, since it is clearly inconsistent with other AT&T, Inc. submissions and statements. Among other things, the Threlkeld Affidavit stated that AT&T, Inc. and its predecessors "do not own or maintain a telecommunications network, and do not provide telecommunications services . . . of any kind to the public." Threlkeld Affidavit, ¶9 [Doc. 62-1]. That claim is simply not credible in light of the many statements of AT&T, Inc. CEO, including the clear statements such as "[w]hen people say AT&T, I want them to think mobility, wireless." *See* Transcript of Milken Institute 2012 Global Conference, April 29-May 2, 2012, Los Angeles, A Conversation With AT&T's Randall Stephenson (11:00 AM-Wednesday May 2, 2012), at p. 2. Moreover AT&T, Inc. has admitted the allegation that "AT&T [Inc.] provides mobile wireless telecommunications services in 50 states. . ." and further admitted that "AT&T [Inc.] provided approximately 98.6 million connections to mobile wireless devices as of the second quarter of 2011." AT&T, Inc. Answer, at ¶7 [Doc. # 78].
        However, those problems need not be further addressed here, since the Affidavit does not even discuss the relevant factual allegation.
[7]     It should be noted that even if AT&T, Inc. were to attempt to show that some subsidiary acted on behalf of AT&T, Inc. at 3GPP, AT&T, Inc. will still be subject to jurisdiction in this state if it participated in that plan by directing that other subsidiary to take the action at 3GPP. Thus, if AT&T, Inc. seeks in the future to make arguments that some other as yet unidentified entity acted at 3GPP, jurisdictional discovery will be necessary.

**Thus, AT&T's assertion that all business in Mississippi is done through subsidiaries is not sufficient to avoid jurisdiction in this state. Even if it is true, as Threlkeld's Affidavit represents, that AT&T, Inc. provides communications services in Mississippi only through its subsidiaries, AT&T, Inc. still conspired with its subsidiary, AT&T Mobility, to create and use Band 17. That conspiracy is enough to provide jurisdiction over AT&T, Inc., in Mississippi.**

In addition to the factual allegation that AT&T, Inc. was involved at 3GPP in the creation of Band 17, the TASC contains a number of other allegations that reinforce the allegation that AT&T, Inc. was involved in the process of creating and utilizing Band 17. AT&T, Inc. CEO Randall Stephens often and publicly emphasizes his role in providing the general motives and directions for acquisition and utilization of spectrum (which is actually owned by entities other than AT&T Mobility, which actually uses the spectrum). Thus, AT&T, Inc. is directly involved in matters involving the wireless spectrum the licenses for which are owned by some direct or indirect subsidiaries of AT&T, Inc. but made available to AT&T Mobility LLC for its use in operation of its wireless operations. TASC, ¶¶45, 420-21. Indeed, in a corporate system where spectrum is owned by one set of subsidiary entities of AT&T, Inc. and that spectrum is actually used by a separate subsidiary of AT&T, Inc., the actions of AT&T, Inc. to create Band 17 at 3GPP, to preserve Band 17 by filings at the FCC, and to provide public statements on the use and acquisition of spectrum by the AT&T system can only be interpreted as facts demonstrating that AT&T, Inc. actively participated in the creation and use of Band 17.

In sum, the TASC alleges that AT&T, Inc. conspired with its subsidiary, AT&T Mobility, LLC, to cause the creation of Band 17 which enabled AT&T Mobility, LLC to monopolize and attempt to monopolize certain markets in this judicial district (TASC, ¶52). Thus, the conspiracy

that led to those anticompetitive acts in this district is sufficient to subject AT&T, Inc. to jurisdiction here. The TASC alleges that the acts to monopolize and to attempt to monopolize the relevant markets in violation of Section 2 occurred here in Mississippi. Indeed, the TASC provides that "a substantial part of the events or omissions giving rise to this action occurred in this District, included but not limited to the violation of Section 2 of the Sherman Action as to Cellular South's Existing Service Area and the Northeast Mississippi Geographic Submarket . . ." TASC, ¶52.

Thus, jurisdiction over AT&T, Inc. is founded on the same rule that was enunciated by a case cited by both by Cellular South in its original motion and AT&T, Inc. in its response, *Textor v. Bd. of Regents of Northern Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983). That case held that "illegal actions of NIU in Illinois are enough to provide the requisite minimum contacts between the remaining members of the conspiracy and the State of Illinois." *Textor*, 711 F.2d at 1393.

In sum, while the Court reached an opinion on the Section 2 claim based on the FASC and its decision not to credit the allegation that the interference claims outlined in the FASC were pretextual, this Court should permit amendment of the complaint to re-examine that issue in light of these additional facts set forth in the TASC – which affect both the merits and jurisdiction over AT&T, Inc. For these reasons, the TASC establishes personal jurisdiction over AT&T, Inc., and permitting the filing of the TASC is not futile.

> 2. The Broader Conspiracy By and Between AT&T, Inc., AT&T Mobility, LLC and the Other Defendants.

The Court dismissed Cellular South's Section 1 claim based in large part on its rejection of the allegation that the interference claims were pretextual. Cellular South has moved to amend the complaint to allege facts that more clearly establish the pretextual nature of the

Defendants' interference claims.  If that fact is accepted, there is only one plausible explanation for the actions taken by all of the Defendants.  If interference was not the reason for creating Band 17, then creating a private ecosystem for AT&T is the only plausible explanation.   That issue has been fully discussed and briefed in connection with Cellular South's motion to amend and file the SASC, and those arguments are incorporated here rather than repeated.

As discussed above, Cellular South has alleged sufficient facts to demonstrate that AT&T, Inc. itself participated in decision to create and use Band 17.  After all, it was the AT&T entity that participated in 3GPP.  And as noted above, it acted jointly with AT&T Mobility.  Thus, AT&T, Inc. is subject to jurisdiction because at least one of its conspirators (AT&T Mobility) committed overt acts here.  Thus, for the reasons discussed above, AT&T, Inc.  is subject to personal jurisdiction here in Mississippi.

## CONCLUSION

For all of the reasons set forth above, Cellular South seeks permission to amend its complaint and file the TASC.

Dated:  December 14, 2012.

Respectfully submitted,

 s/ Walter H. Boone
Alan W. Perry, MSB #4127
Daniel J. Mulholland, MSB #3643
Walter H. Boone, MSB #8651
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
City Centre, Suite 200
200 South Lamar Street
Jackson, Mississippi 39201
Tel.: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Jr., MSB #8995
M. Patrick McDowell, MSB # 9746
Joseph A. Sclafani, MSB #99670
Brian C. Kimball, MSB #100787
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Tel.: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, MSB#8712
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
P. O. Box 650
Jackson, MS 39205
Phone: 601-965-1900
Fax: 601- 965-1901
wjohnson@watkinseager.com

*Counsel for Plaintiffs Corr Wireless
Communications, L.L.C., Cellular South, Inc., and
Cellular South Licenses, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2012, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the following:

***Attorneys for Defendants AT&T Mobility LLC, and
AT&T, Inc.***

David W. Upchurch
Holland Ray Upchurch and Hillen
P.O. Drawer 409
Tupelo, MS 38802-0409
dwu@hruhpa.com

Michael K. Kellogg (PHV)
William J. Rinner (PHV)
Kenneth M. Fetterman (PHV)
Aaron M. Panner (PHV)
Kellogg, Huber, Hansen, Todd, Evans & Figel P.L.L.C.
1615 M. Street NW, Suite 400
Washington, D.C. 20036

mkellogg@khhte.com
wrinner@khhte.com
kfetterman@khhte.com
apanner@khhte.com

***Attorneys for Defendant Qualcomm Incorporated***

L.F. Sams, Jr.
Margaret Sams Gratz
Otis R. Tims
Mitchell McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802
ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com


Yonatan Even (PHV)
Roger G. Brooks (PHV)
Carrie R. Bierman (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com
cbierman@cravath.com

***Attorneys for Defendant Motorola Mobility, Inc.***

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
jmurray@crowell.com


THIS, the 14th day of December, 2012.


   /s/ Walter H. Boone_____