# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

|  |  |  |
|---|---|---|
| CORR WIRELESS COMMUNICATIONS, L.L.C., CELLULAR SOUTH, INC., AND CELLULAR SOUTH LICENSES, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:12-cv-036-SA-SAA |
| AT&T INC., AT&T MOBILITY LLC, MOTOROLA SOLUTIONS, INC., AND QUALCOMM INCORPORATED, | ) ) ) ) | |
| Defendants. | ) ) | |

## AT&T INC.'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1

I.     THE COURT LACKS JURISDICTION OVER AT&T INC. ON THE THEORY
       THAT AT&T INC. CONSPIRED WITH DEFENDANTS WHO TOOK
       ACTIONS IN MISSISSIPPI ............................................................................................ 2

       A.     The Court Lacks Jurisdiction Over AT&T Inc. Because Neither
              Mississippi Nor the Fifth Circuit Recognizes the Conspiracy Theory of
              Personal Jurisdiction ........................................................................................... 3

       B.     Plaintiffs Fail To Allege the Existence of a Conspiracy Between AT&T
              Inc. and Any Other Defendant ............................................................................. 6

       C.     Plaintiffs Fail To Allege That Either Tortious Conduct or Actual Injury
              Took Place in Mississippi .................................................................................... 9

II.    PLAINTIFFS FAIL TO ALLEGE JURISDICTION UNDER THE CLAYTON
       ACT ................................................................................................................................ 12

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page**

*Allred v. Moore & Peterson,*
  117 F.3d 278 (5th Cir. 1997) ............................................................................10

*Bamford v. Hobbs,*
  569 F. Supp. 160 (S.D. Tex. 1983) ....................................................................4

*Bullion v. Gillespie,*
  895 F.2d 213 (5th Cir. 1990) ...............................................................................8

*Calder v. Jones,*
  465 U.S. 783 (1984) ............................................................................................6

*Conwill v. Greenberg Traurig, L.L.P.,*
  Civ. A. No. 09-4365, 2009 WL 5178310 (E.D. La. Dec. 22, 2009) ....................4

*Davis v. A & J Elecs.,*
  792 F.2d 74 (7th Cir. 1986) .................................................................................6

*DeMelo v. Toche Marine, Inc.,*
  711 F.2d 1260 (5th Cir. 1983) .............................................................................8

*Dickson Marine Inc. v. Panalpina, Inc.,*
  179 F.3d 331 (5th Cir. 1999) ...............................................................................2

*Dontos v. Vendomation NZ Ltd.,*
  Civ. A. No. 3:11-CV-0553-K, 2012 WL 3702044 (N.D. Tex. Aug. 27, 2012)........6

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,*
  514 F.3d 1063 (10th Cir. 2008) ...........................................................................8

*FC Inv. Grp. LC v. IFX Mkts., Ltd.,*
  529 F.3d 1087 (D.C. Cir. 2008) ...........................................................................8

*Fiore v. Walden,*
  688 F.3d 558 (9th Cir. 2012) ...............................................................................8

*Golf City, Inc. v. Wilson Sporting Goods, Co.,*
  555 F.2d 426 (5th Cir. 1977) ...............................................................................5

*Guidry v. U.S. Tobacco Co.,*
  188 F.3d 619 (5th Cir. 1999) .............................................................................11

*Gutierrez v. Givens*,
    1 F. Supp. 2d 1077 (S.D. Cal. 1998)...................................................................6

*Hawkins v. Upjohn Co.*,
    890 F. Supp. 601 (E.D. Tex. 1994)...............................................................4, 6

*Hollar v. Philip Morris Inc.*,
    43 F. Supp. 2d 794 (N.D. Ohio 1998)..............................................................6

*Jobe v. ATR Mktg., Inc.*,
    87 F.3d 751 (5th Cir. 1996) ...............................................................10, 11, 12

*Jung v. Association of Am. Med. Colls.*,
    300 F. Supp. 2d 119 (D.D.C. 2004)..................................................................5

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
    115 F.3d 1020 (D.C. Cir. 1997)......................................................................10

*Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*,
    410 F. Supp. 2d 592 (E.D. Ky. 2006)...............................................................5

*Lasala v. Marfin Popular Bank Pub. Co.*,
    Civ. A. No. 09-968 (JAP), 2010 WL 715482 (D.N.J. Mar. 1, 2010) ................3

*Lifeline Ambulance Servs., Inc. v. Laidlaw, Inc.*,
    16 F. Supp. 2d 686 (S.D. Miss. 1998)..............................................................7

*Lisa McConnell, Inc. v. Idearc, Inc.*,
    No. 09-CV-00061-IEG (AJB), 2010 WL 364172 (S.D. Cal. Jan. 22, 2010).....4

*Mansour v. Super. Ct. of Orange Cnty.*,
    46 Cal. Rptr. 2d 191 (Cal. Ct. App. 1995).......................................................4

*Matthews v. Brookstone Stores, Inc.*,
    469 F. Supp. 2d 1056 (S.D. Ala. 2007).............................................................3

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004)................................................................................3

*Norris v. Krystaltech Int'l, Inc.*,
    133 F. Supp. 2d 465 (S.D. Miss. 2000).............................................................7

*Rapaglia v. Lugo*,
    372 S.W.3d 286 (Tex. Ct. App. 2012) ..............................................................4

*Roy v. Brahmbhatt,*
    Civ. A. No. 07-5082 (PGS), 2008 WL 5054096 (D.N.J. Nov. 26, 2008)...........................6

*Rush v. Savchuk,*
    444 U.S. 320 (1980)...............................................................................................6

*Rusheen v. Cohen,*
    128 P.3d 713 (Cal. 2006) .......................................................................................4

*Southmark Corp. v. Life Investors, Inc.,*
    851 F.2d 763 (5th Cir. 1988) .................................................................................2

*Stauffacher v. Bennett,*
    969 F.2d 455 (7th Cir. 1992) .................................................................................3

*Stripling v. Jordan Prod. Co.,*
    234 F.3d 863 (5th Cir. 2000) ..............................................................................5, 8

*Stroman Realty, Inc. v. Wercinski,*
    513 F.3d 476 (5th Cir. 2008) ...............................................................................10

*Textor v. Board of Regents of N. Ill. Univ.,*
    711 F.2d 1387 (7th Cir. 1983) ...............................................................................6

*Thompson v. Chrysler Motors Corp.,*
    755 F.2d 1162 (5th Cir. 1985) ...............................................................................8

*Tri v. J.T.T.,*
    162 S.W.3d 552 (Tex. 2005)...............................................................................3, 4

*Vist Fin. Corp. v. Tartaglia,*
    Civ. No. 08-CV-4116 (DMC)(JAD),  2010 WL 2776832 (D.N.J. July 14, 2010)..............3

*Waffenschmidt v. MacKay,*
    763 F.2d 711 (5th Cir. 1985) .................................................................................5

## RULES

Fed. R. Civ. P. 4(f)....................................................................................................3

## STATUTES

15 U.S.C. § 22...........................................................................................................5

Miss. Code Ann. § 13-3-57.............................................................................................................9


**OTHER AUTHORITIES**

Acquisition of T-Mobile USA, Inc. by AT&T Inc., Description of Transaction, Public
    Interest Showing and Related Demonstrations (FCC filed Apr. 21, 2011),
    http://apps.fcc.gov/ecfs/document/view?id=7021240421 ................................................12

AT&T Inc. has no place of business in Mississippi, employs no one, provides no services, sells nothing, makes nothing, and pays no taxes. *See* Threkeld Aff. ¶¶ 9-12 (ECF No. 62-1, May 23, 2012). It maintains a separate corporate identity and structure from its subsidiaries that do these things. *See id.* ¶ 8. Plaintiffs concede (at 3, 16) that they have not and cannot allege facts that would allow this Court to "pierce AT&T Mobility's corporate veil." Instead, they argue (at 3) that the Court can assert jurisdiction over AT&T Inc. under both the "transacts business" prong of the Clayton Act and the "tort" prong of the Mississippi long-arm statute because "the Mississippi conduct of AT&T Inc.'s co-conspirator AT&T Mobility is properly attributable to AT&T Inc. for jurisdictional purposes."

There are at least three things wrong with this argument. First, there is no support under Mississippi or Fifth Circuit law for any so-called "co-conspirator" theory of personal jurisdiction which, in any event, could not apply to supposed "conspiracies" among members of the same corporate family without effectively disregarding corporate separation. Second, for the reasons noted in AT&T Mobility's motion to dismiss the Third Amended and Supplemental Complaint ("TASC"), Plaintiffs have failed even to allege a conspiracy that AT&T Mobility joined with Motorola or Qualcomm, much less that AT&T Inc. itself joined such a conspiracy. Third, Plaintiffs have failed to allege that AT&T Inc. or any co-conspirator committed a substantial act in furtherance of the conspiracy, or caused any sufficiently direct injury, in Mississippi.

## ARGUMENT

Plaintiffs' arguments for asserting personal jurisdiction over AT&T Inc. fail because neither the TASC nor any supplemental filings properly allege that AT&T Inc. either conducts

business in or committed a tort that caused injury in Mississippi.[1]  The May 21, 2012 affidavit

from Steven Threlkeld, Executive Director – Accounting, in the AT&T Services, Inc. Finance

Department, establishes that AT&T Inc. is a "legally and factually separate corporate entity,

distinct from its subsidiaries."  Threlkeld Aff. ¶ 8.  As the Court found, this affidavit triggered

the "long presum[ption of] institutional independence of related corporations, such as parent and

subsidiary, when determining if one corporation's contacts with a forum can be the basis of a

related corporation's contacts." Memorandum Opinion at 14 (ECF No. 116, Nov. 1, 2012)

(hereinafter "11/1/12 Mem. Op.") (quoting *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d

331, 338 (5th Cir. 1999)); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773-74 (5th Cir.

1988) ("[I]t is well-settled that where, as here, a wholly owned subsidiary is operated as a

distinct corporation, its contacts with the forum cannot be imputed to the parent.").

Indeed, Plaintiffs disavow (at 3, 16) the argument that AT&T Inc. is an alter ego of its

subsidiaries.  But their alternative arguments for jurisdiction are legally incorrect and without

support in the TASC's allegations.

## I.    THE COURT LACKS JURISDICTION OVER AT&T INC. ON THE THEORY THAT AT&T INC. CONSPIRED WITH DEFENDANTS WHO TOOK ACTIONS IN MISSISSIPPI

Plaintiffs' principal argument (at 3-13) that jurisdiction exists on a theory that AT&T Inc.

"conspired" with AT&T Mobility fails because the conspiracy theory of jurisdiction is not viable

under Mississippi or Fifth Circuit law, because Plaintiffs fail properly to allege the existence of a

conspiracy or that AT&T Inc. took part in it, or that any actions of the conspiracy were

committed in or caused sufficiently direct injury in Mississippi.

---

[1]  Plaintiffs no longer press the argument that the Clayton Act authorizes jurisdiction over defendants that lack minimum contacts with the forum state.  *See* Mem. in Opp'n to AT&T Inc.'s Mot. to Dismiss Third Am. and Supplemental Compl. at 2 n.2 (ECF No. 145, Apr. 3, 2013) (hereinafter "Opp.").

A.    **The Court Lacks Jurisdiction Over AT&T Inc. Because Neither Mississippi Nor the Fifth Circuit Recognizes the Conspiracy Theory of Personal Jurisdiction**

1.    Plaintiffs cannot assert jurisdiction over AT&T Inc. on a conspiracy theory because, as Plaintiffs admit (at 5-6), Mississippi has not interpreted its long-arm statute to allow personal jurisdiction over a defendant "co-conspirator" that has no contacts with the forum state.  "Whether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale at all is a question of state law." *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992), *superseded on other grounds by* Fed. R. Civ. P. 4(f) (citations omitted); *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 102 n.8 (3d Cir. 2004) (Scirica, J., concurring in part and dissenting in part) (same); *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1066 n.14 (S.D. Ala. 2007) (same).  A federal court should not extend the reach of a state jurisdictional statute without guidance from courts of the forum state.  *See, e.g.*, *Lasala v. Marfin Popular Bank Pub. Co.*, Civ. A. No. 09-968 (JAP), 2010 WL 715482, at *3 (D.N.J. Mar. 1, 2010) ("Given that the New Jersey state courts have not decided whether the theory of conspiracy jurisdiction is applicable under the state's long arm statute, this Court declines to recognize the conspiracy theory of jurisdiction in this case.").[2]  No such guidance has been provided here by the Mississippi courts.

Plaintiffs contend (at 13) that conspiracy jurisdiction would comport with Mississippi law because Mississippi recognizes a cause of action for "civil conspiracy," but that argument is a non sequitur.  Several states that recognize a civil conspiracy cause of action under state law nevertheless have rejected the conspiracy theory of personal jurisdiction.  *Compare, e.g.*, *Tri v.*

---

[2]  Plaintiffs cite (at 5) *Vist Financial Corp. v. Tartaglia*, Civ. No. 08-CV-4116 (DMC)(JAD), 2010 WL 2776832 (D.N.J. July 14, 2010), as "appl[ying]" the conspiracy theory of jurisdiction, but while the court noted the *potential* applicability of the theory to the facts alleged, it did not premise its exercise of personal jurisdiction on a conspiracy theory.  *See id.* at *7-*9.

*J.T.T.*, 162 S.W.3d 552, 556-57 (Tex. 2005) (describing elements of Texas civil conspiracy cause of action); *Rusheen v. Cohen*, 128 P.3d 713, 722 (Cal. 2006) (describing elements of California action for civil conspiracy), *with Rapaglia v. Lugo*, 372 S.W.3d 286, 290 (Tex. Ct. App. 2012) (noting that Texas has rejected the conspiracy theory of jurisdiction); *Mansour v. Super. Ct. of Orange Cnty.*, 46 Cal. Rptr. 2d 191, 197 (Cal. Ct. App. 1995) ("California does not recognize conspiracy as a basis for acquiring personal jurisdiction over a party."). And courts in this circuit have refused to apply a conspiracy theory to assert personal jurisdiction over out-of-state defendants in the context of federal RICO conspiracy claims. *See, e.g.*, *Conwill v. Greenberg Traurig, L.L.P.*, Civ. A. No. 09-4365, 2009 WL 5178310, at *4-*5 (E.D. La. Dec. 22, 2009); *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608-09 (E.D. Tex. 1994).

Plaintiffs' analogy (at 6) to personal jurisdiction under an agency theory is equally unavailing. Agency principles of liability ensure that a principal is held liable when it exerts sufficient control over an agent and the agent is acting pursuant to the principal's direction, but this liability principle does not render co-conspirators agents for each others' actions, as cases rejecting the conspiracy theory of jurisdiction make clear. *See, e.g.*, *Bamford v. Hobbs*, 569 F. Supp. 160, 169 (S.D. Tex. 1983) (rejecting conspiracy jurisdiction and noting that some courts have found jurisdiction over a nonresident co-conspirator when an actual principal-agent relationship existed, rendering "reliance on the coconspirator doctrine" itself "unnecessary"). The distinction between conspiracy and agency is particularly important in the context of parent-subsidiary relationships, in which a subsidiary is treated as an agent of the parent only if the parent exerts so much control that there is no meaningful separation between the two corporate entities. *See Lisa McConnell, Inc. v. Idearc, Inc.*, No. 09-CV-00061-IEG (AJB), 2010 WL 364172, at *7 (S.D. Cal. Jan. 22, 2010) (explaining that in order to establish jurisdiction over a

nonresident parent company on an agency theory, the parent must "exert control that is so pervasive and continual that the subsidiary may be considered an agent or instrumentality of the parent") (citation and internal quotation marks omitted).[3]

      **2.**     Plaintiffs' conspiracy theory is also not a valid basis for exercising personal jurisdiction under the "transacts business" prong of the Clayton Act's jurisdictional provision. Federal courts have rejected attempts to rest such a theory on the Clayton Act's jurisdictional provision, *see Jung v. Association of American Medical Colleges*, 300 F. Supp. 2d 119, 141 n.13 (D.D.C. 2004),[4] and such a theory is inconsistent with the Fifth Circuit's requirement that the Clayton Act requires a defendant to "transact[] business" of a "substantial character" in the state for personal jurisdiction to lie. *Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 437 (5th Cir. 1977). Other courts have noted that "there is not . . . an

---

[3] Plaintiffs do not argue that the Court has personal jurisdiction over AT&T Inc. on an agency theory; in any event, the cases Plaintiffs cite applying such a theory are inapposite. *Stripling v. Jordan Production Co.*, 234 F.3d 863 (5th Cir. 2000), involved a contract between two unrelated defendants to perform work in Mississippi. *See id.* at 870. The plaintiff made a prima facie showing that an agency relationship existed between the two, and that the contract specified that the agent would conduct work pursuant to that relationship. *Id.* at 870-72. Here, on the other hand, Plaintiffs do not allege that such an agency relationship existed between AT&T Inc. and AT&T Mobility, or that the actions allegedly taken by AT&T Mobility occurred at AT&T Inc.'s specific direction. Moreover, *Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985), involved a scheme by which an agent aided and abetted the violation of a federal court injunction. *See id.* at 716-17. The court exercised personal jurisdiction over the nonresident agent because "[t]he nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders." *Id.* at 717. No such injunctive relief has been granted against any Defendant here.

[4] Plaintiffs cite (at 5) *Kentucky Speedway, LLC v. National Association of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592 (E.D. Ky. 2006), but that court found personal jurisdiction proper under the Clayton Act based on a reading of the nationwide service-of-process provision that this Court already has rejected. *Id.* at 600-01; *see* 11/1/12 Mem. Op. 9-10. Although the court in *Kentucky Speedway* also found jurisdiction applicable under a conspiracy theory, it did not rest that theory on the transacts-business prong of 15 U.S.C. § 22, and it quoted the analysis of *Jung*, a case which applied a conspiracy theory but noted that the Clayton Act itself does not support conspiracy jurisdiction. 410 F. Supp. 2d at 599 (quoting *Jung*, 300 F. Supp. 2d at 140-41 & n.13).

independent federal 'civil co-conspirator' theory of personal jurisdiction," *Davis v. A & J Electronics*, 792 F.2d 74, 76 (7th Cir. 1986), and accordingly, the Fifth Circuit has not adopted the conspiracy theory of jurisdiction under any provision of federal law. *See Dontos v. Vendomation NZ Ltd.*, Civ. A. No. 3:11-CV-0553-K, 2012 WL 3702044, at *4 (N.D. Tex. Aug. 27, 2012).[5]

### B. Plaintiffs Fail To Allege the Existence of a Conspiracy Between AT&T Inc. and Any Other Defendant

Even if the conspiracy theory of jurisdiction were viable, Plaintiffs fail adequately to allege an unlawful agreement between AT&T Inc. and any other Defendant in this action. In courts that apply the theory, a plaintiff must allege (1) the existence of an unlawful conspiracy, (2) that AT&T Inc., and not its subsidiaries, was a party to it, and (3) that a co-conspirator committed a substantial act in furtherance of the conspiracy in the forum state. *See Textor v. Board of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983). For the reasons AT&T Mobility argues in its motion to dismiss, Plaintiffs fail even to allege a conspiracy that AT&T Mobility joined with Motorola or Qualcomm. *See* Def. AT&T Mobility LLC's Mem. of Law in Supp. of its Mot. to Dismiss the Third Am. and Supplemental Compl. at 10-19 (ECF No. 137,

---

[5] Moreover, as several courts have recognized, the conspiracy theory of jurisdiction fails to comport with due process. *See, e.g.*, *Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1083 n.1 (S.D. Cal. 1998); *Hollar v. Philip Morris Inc.*, 43 F. Supp. 2d 794, 802 n.7 (N.D. Ohio 1998); *Hawkins*, 890 F. Supp. at 608-09. That is because "[t]he requirements of *International Shoe*," which require the defendant to have minimum contacts with the forum, "must be met as to *each defendant* over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added); *see Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). Thus, to the extent that Plaintiffs assert jurisdiction over AT&T Inc. upon actions supposedly taken by the *conspiracy* within the forum, rather than by each alleged *conspirator*, such an exercise of personal jurisdiction would be unconstitutional. *But cf. Roy v. Brahmbhatt*, Civ. A. No. 07-5082 (PGS), 2008 WL 5054096, at *7-*8 (D.N.J. Nov. 26, 2008) (finding that "the central tenets of the theory, at bottom, do not comport with *Int'l Shoe*" but citing examples of "[o]ther federal courts [that] have found the test to be constitutionally sound").

Feb. 27, 2013) (hereinafter "AT&T Mobility Mtn. to Dismiss"); AT&T Mobility Reply at 10-15. The failure adequately to plead the existence of a conspiracy is enough to defeat jurisdiction. And Plaintiffs certainly provide no factual basis for asserting that AT&T Inc. itself joined such a conspiracy.

      **1.**      The TASC fails to allege facts supporting the assertion that AT&T Inc. played any role in a conspiracy to adopt Band 17 to the detriment of its competitors. The complaint alleges only in general terms that AT&T Inc. "join[ed] a conspiracy," TASC ¶ 45, and in describing the alleged conspiracy with Motorola and Qualcomm it continues to "lump all AT&T entities together and collectively refer to them as 'AT&T.'" 11/1/12 Mem. Op. 2. Such bald statements "are not a sufficient predicate for an exercise of jurisdiction." *Norris v. Krystaltech Int'l, Inc.*, 133 F. Supp. 2d 465, 469 (S.D. Miss. 2000); *Lifeline Ambulance Servs., Inc. v. Laidlaw, Inc.*, 16 F. Supp. 2d 686, 689 (S.D. Miss. 1998) ("[B]ald allegations without more are insufficient to overcome a Rule 12(b)(2) motion.").

      Plaintiffs cite (at 7) minutes of the 3GPP meeting at which Band 17 was adopted. But the alleged statements in those notes do not even mention AT&T Inc. They refer only to AT&T generically. Plaintiffs argue (at 7) that these minutes naming "AT&T . . . must refer to AT&T Inc." because "only the parent, or an entity acting on its behalf, could or would have authority to undertake those actions." But this carefully hedged allegation does not plausibly support the inference that AT&T Inc. actually participated in 3GPP, much less that it conspired with others to take any improper action in 3GPP. That is particularly true because, as Plaintiffs concede, AT&T Inc. does not own its own spectrum or operate its own wireless network. *See* TASC ¶ 45.

      **2.**      Plaintiffs rely (at 8-9) on another set of allegations in the TASC that AT&T Inc. is "actively engaged" in its subsidiaries' operations, that it "does not act simply as a

holding company," and that it is "directly involved in matters involving wireless spectrum." These allegations are also conclusory, but even if taken as true – as Plaintiffs wrongly insist (at 7) the Court must do[6] – they do not establish that AT&T Inc. participated in a conspiracy with other Defendants to manipulate 3GPP into adopting Band 17 to the detriment of Cellular South. Allegations that set forth "only the existence of an on-going business relationship" between alleged conspirators, rather than specific "agreements and/or understandings" to commit illegal acts within the forum state, are insufficient to establish personal jurisdiction even under a conspiracy theory. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1098 (D.C. Cir. 2008) (internal quotation marks omitted).

    Because Plaintiffs' claim that AT&T Inc. is involved in the business of its subsidiaries fails to establish the existence of a conspiracy to adopt Band 17, Plaintiffs' factual allegations in support of that claim are equally unavailing. Plaintiffs rely largely on the same submissions that the Court already has considered – statements by AT&T Inc. CEO Randall Stephenson, as well as AT&T Inc.'s legal and regulatory filings – but none of these statements relates to actions

---

[6] The Court need not credit Plaintiffs' conclusory allegations as true for purposes of determining personal jurisdiction. *See Fiore v. Walden*, 688 F.3d 558, 575-76 (9th Cir. 2012) (applying *Iqbal* standard to motion to dismiss for lack of personal jurisdiction); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (applying *Twombly* to motion to dismiss for lack of personal jurisdiction). The pre-*Twombly* and pre-*Iqbal* case law on which Plaintiffs rely merely supports the notion that "*uncontroverted* allegations" must be accepted as true. *Stripling*, 234 F.3d at 869 (emphasis added); *see Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) ("The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true."). Here, the conclusory allegations that AT&T Inc. is actively involved in its subsidiaries' operations are directly rebutted by the Threlkeld Affidavit. Plaintiffs make no factual showing that undermines this sworn testimony that AT&T Inc. "do[es] not own or maintain a telecommunications network, and do[es] not provide telecommunications services . . . of any kind to the public." Threlkeld Aff. ¶ 9. *Cf. Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (finding that plaintiff presented prima facie case on basis of affidavit evidence that contradicted defendants' factual showings); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 (5th Cir. 1983) (relying on affidavit evidence to conclude that plaintiff had made prima facie case that defendant "purposely availed" itself of Mississippi courts' jurisdiction by shipping goods into state's stream of commerce).

taken at 3GPP to adopt Band 17.  For example, Plaintiffs cite (at 8) Mr. Stephenson's recent

statement that "[t]he technological standards on LTE have been driven by … AT&T and

Verizon," but a general reference to the actions of the corporate family does not show that

AT&T Inc. participated in the 3GPP process itself, much less that AT&T Inc. entered into an

anticompetitive conspiracy with Motorola and Qualcomm.  Indeed, in the interview Plaintiffs

cite, Mr. Stephenson refers specifically to "the brand AT&T."[7]  As the Threlkeld Affidavit

explains, "AT&T" standing alone is a "brand and logo . . . owned and licensed by AT&T

Intellectual Property, Inc.," which "charges the applicable operating company a license fee" for

use of that name.  Threlkeld Aff. ¶ 16.  "Use of the AT&T brand . . . by a particular operating

company does not signify that products or services are being offered or provided by AT&T Inc.,

a holding company, or the licensor." *Id.*  AT&T Inc.'s FCC filings regarding device

interoperability make clear that they are submitted "on behalf of" AT&T Inc.'s subsidiaries[8];

they do nothing to establish that AT&T Inc. itself played any role in the conspiracy.

### C.  Plaintiffs Fail To Allege That Either Tortious Conduct or Actual Injury Took Place in Mississippi

This Court lacks personal jurisdiction over AT&T Inc. under the tort prong of Miss. Code

Ann. § 13-3-57 because, as the Court found, neither tortious conduct nor actual injury took place

in Mississippi.  *See* 11/1/12 Mem. Op. 13.  Rather, Plaintiffs allege only that the "effects" and

---

[7] Ex. A to Pls.' Resp. in Opp'n to AT&T Inc.'s Mot. to Dismiss Third Am. and Supplemental Compl. at 6-7 (ECF No. 144-2).

[8]  Ex. B to Pls.' Resp. in Opp'n to Qualcomm Inc.'s Renewed Mot. to Dismiss at 1 (ECF No. 147-2); Ex. E to Pls.' Resp. in Opp'n to Qualcomm Inc.'s Renewed Mot. to Dismiss at 1 (ECF No. 147-5).  AT&T Inc. also submitted ex parte letters to the FCC that address responses to its formal comments, but they do not contain express language noting that they are on behalf of AT&T Inc.'s subsidiaries.  *See* Exs. F & G to Pls.' Resp. in Opp'n to Qualcomm Inc.'s Renewed Mot. to Dismiss at 1 (ECF Nos. 147-6 & 147-7).

"consequences" of AT&T Inc.'s and its alleged co-conspirators' actions occurred in Mississippi, and assert in conclusory terms that these results were "direct and foreseeable." TASC ¶ 45.

First, Plaintiffs fail to allege that any of the supposed conspiratorial conduct – that is, the "creation of Band 17" – took place in Mississippi. 11/1/12 Mem. Op. 13. Absent concrete allegations that a co-conspirator took "overt acts within the forum . . . in furtherance of the conspiracy," personal jurisdiction cannot be supported under this theory. *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (internal quotation marks omitted).

Second, Plaintiffs fail to allege any relevant injury in Mississippi. As the Fifth Circuit has explained, "[i]n determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as . . . economic effects or other collateral consequences that often stem from the actual injury." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). The Fifth Circuit has also noted that "'[e]ffects' jurisdiction" of the sort urged by Plaintiffs "is rare," and has suggested that the effects of actions taken by a nonresident defendant, standing alone, are insufficient to confer personal jurisdiction. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486-87 (5th Cir. 2008); *see id.* at 486 (noting that the "'effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum'," and that "[w]e have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to [an in-state] resident") (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997)).

In the context of commercial torts, "injury will usually be deemed to be the place where the critical events associated with the dispute took place." *Jobe*, 87 F.3d at 753 n.3. Not only did all of the actions taken to establish standards for Band 17 occur outside Mississippi; no

commercial "injury" occurred in the state. Plaintiffs argue (at 15) that the "injury to competition" within Mississippi resulting from AT&T Inc.'s actions is sufficient, but under *Jobe*, consequential harm allegedly resulting from conduct outside the forum state is insufficient to confer jurisdiction over a nonresident defendant. *See id.* at 753 n.2 (distinguishing "injury," defined as "the invasion of any legally protected interest of another" from "damage," understood to mean "the harm, detriment or loss sustained by reason of an injury") (citations omitted).

The Fifth Circuit's analysis in *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999), on which Plaintiffs rely (at 15-16), underscores the distinction between economic consequences and injury occurring within the forum state. The court in *Guidry* stressed that the out-of-state defendants in that case allegedly took actions such that they could "reasonably anticipate being haled into court" in Louisiana because their conduct "intentionally, knowingly and recklessly caused severe physical, emotional and economic injuries to the plaintiffs and others in Louisiana." *Id.* at 630 (internal quotation marks omitted). The court distinguished the "physical injuries and physically harmful effects" arising from the nonresident defendants' conduct expressly aimed at the forum state from "untargeted" actions that "endanger[] only economic or reputational interests." *Id.* at 628, 630. At most, Plaintiffs here allege that they, along with other Lower A Block operators, were commercially disadvantaged or hindered by the adoption of the Band 17 standard. TASC ¶¶ 436-468. None of the allegations in the TASC involves physical injury to Plaintiffs' businesses resulting from actions directly targeted at the forum state. For the same reason, Plaintiffs' analogy (at 15) to an out-of-state agreement to commit arson in Mississippi is inapt, because "firebomb[ing] the place of business of [a] competitor" is the sort of "physical injury" to a person or property recognized by *Guidry*, 188 F.3d at 629-30, but is

distinguishable from the "economic effects" that are *not* sufficient to confer jurisdiction over a nonresident defendant. *Jobe*, 87 F.3d at 753.

## II.     PLAINTIFFS FAIL TO ALLEGE JURISDICTION UNDER THE CLAYTON ACT

Finally, even apart from its "co-conspirator" theory of personal jurisdiction, Plaintiffs argue (at 13) that personal jurisdiction over AT&T Inc. is proper under the "transacts business" prong of the Clayton Act because AT&T Inc. supposedly "admitted" in its answer to the government's antitrust complaint challenging the T-Mobile merger that AT&T Inc. itself "has transacted business in Mississippi." That argument is a non-starter.

As a "holding company" that "owns the stock of its corporate subsidiaries" including AT&T Mobility, Threlkeld Aff. ¶¶ 5, 9, AT&T Inc. was the logical defendant in a suit challenging its bid to acquire T-Mobile's wireless business in order to merge it with AT&T Mobility. But AT&T Inc. made clear in filings to the federal government that its use of the name "AT&T" in its regulatory submissions concerning the proposed merger would refer to the activities of AT&T Mobility.[9] Consistent with this practice, the government's complaint referred to "AT&T" as a single enterprise for ease of exposition, and AT&T Inc.'s answer followed suit. The fact that AT&T Inc. did not distinguish its functions from its subsidiaries at the pleading stage – in which such distinctions were not at issue or relevant to a litigation in which AT&T Inc. was a proper defendant – provides no reason to discount the sworn affidavit evidence demonstrating their corporate separation.

---

[9] *See* Acquisition of T-Mobile USA, Inc. by AT&T Inc., Description of Transaction, Public Interest Showing and Related Demonstrations at 15 n.15 (FCC filed Apr. 21, 2011), http://apps.fcc.gov/ecfs/document/view?id=7021240421 ("AT&T Mobility LLC, which operates AT&T's wireless network, is . . . a wholly owned subsidiary of AT&T Inc. For ease of exposition for present purposes, the term 'AT&T' is generally used here to refer to AT&T Mobility LLC or other wholly-owned subsidiaries of AT&T Inc. Nonetheless, AT&T Inc. is the AT&T applicant in this proceeding and . . . is the corporate entity acquiring T-Mobile USA.").

## CONCLUSION

For the reasons set forth above and in AT&T Inc.'s motion to dismiss, AT&T Inc. respectfully requests that this Court dismiss this action against it with prejudice pursuant to Rule 12(b)(2).

Dated:  April 24, 2012                   Respectfully submitted,

AT&T Inc.

/s/ *David W. Upchurch*
DAVID W. UPCHURCH, MSB #10558
HOLLAND, RAY, UPCHURCH & HILLEN, P.A.
P.O. DRAWER 409
TUPELO, MS 38802-0409
TELEPHONE: 662-842-1721
FACSMILE: 662-844-613
dwu@hruhpa.com

Michael Kellogg (Admitted *Pro Hac Vice*)
Aaron Panner (Admitted *Pro Hac Vice*)
William J. Rinner (Admitted *Pro Hac Vice*)
Kellogg, Huber, Hansen, Todd,
  Evans & Figel, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7921
mkellogg@khhte.com
apanner@khhte.com
wrinner@khhte.com

13

## <u>CERTIFICATE OF SERVICE</u>

I, David W. Upchurch, hereby certify that I have this day filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following registered participants:

Alan W. Perry, Esq., MSB #4127
Daniel J. Mulholland, Esq., #3643
Walter H. Boone, Esq., #8651
Forman, Perry, Watkins, Krutz & Tardy, LLP
200 S. Lamar Street, Suite 100
Jackson, MS 39201-4099
Tel: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Esq., MSB #8995
M. Patrick McDowell, Esq., MSB #9746
Joseph A. Sclafani, Esq., MSB #99670
Brian C. Kimball, Esq., MSB #100787
Brunini, Grantham, Grower & Hewes, PLLC
190 E. Capitol Street, Suite 100
Jackson, MS 39201-2151
Tel: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, Esq., MSB #8712
Watkins & Eager PLLC
400 East Capitol Street, Suite 300 (39201)
P.O. Box 650
Jackson, MS 39205
Tel: 601-965-1900
Fax: 601-965-1901
wjohnson@watkineager.com

*Counsel for Plaintiffs Cellular South, Inc.*
*Corr Wireless Communications, L.L.C. and*
*CellularSouth Licenses, LLC*

L.F. Sams, Jr.
Otis R. Tims
Margaret Sams Gratz
Mitchell, McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802-7120
ssams@mitchellmcnutt.com
otims@mitchellmcnutt.com

Roger G. Brooks, Esq.
Yonatan Even, Esq.
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Counsel for Defendant Qualcomm Inc.*

Jim M. Greenlee, Esq.
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 South Lamar Blvd., Suite A
P.O. Drawer 707
Oxford, MS 39655
jgreenlee@holcombdunbar.com

John S. Gibson, Esq.
Chahira Solh, Esq.
Crowell & Moring, LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505

*Counsel for Defendant Motorola Solutions, Inc.*

DATED this the 24th day of April, 2013.

/s/ *David W. Upchurch*
DAVID W. UPCHURCH