**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**CORR WIRELESS
COMMUNICATIONS, L.L.C.,
CELLULAR SOUTH, INC., and
CELLULAR SOUTH LICENSES, LLC**                                        **PLAINTIFFS**

**vs.**                                        **CIVIL ACTION NO. 3:12-cv-036-SA-SAA**

**AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC.,
QUALCOMM INCORPORATED, and**                                        **DEFENDANTS**
**JOHN DOES 1-10**

**MOTOROLA'S REBUTTAL MEMORANDUM BRIEF IN SUPPORT OF
MOTION TO DISMISS THIRD AMENDED AND SUPPLEMENTAL COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   PLAINTIFFS IMPROPERLY UNDERESTIMATE THEIR PLEADING
     BURDEN ............................................................................................................... 3

II.  THE TAC ALLEGES ONLY CIRCUMSTANTIAL EVIDENCE THAT FAILS
     TO PLAUSIBLY SUGGEST AN ANTICOMPETITIVE AGREEMENT ...................... 4

     A.   Allegations That Each Defendant Supported Band 17 Show Only Lawful
          Parallel Conduct ............................................................................................ 5

     B.   Conclusory Allegations Of "Pretext" Fail To Plead A Plausible
          Anticompetitive Agreement ............................................................................ 7

          1.   Adoption Of Band 17 Was Consistent With Motorola's Economic
               Self-interest ............................................................................................ 7

          2.   The Allegations Of Pretext Could Show, At Most, Only Motive............ 11

     C.   The TAC Fails To Allege Subversion Of 3GPP's Standard-Setting Process ...... 11

          1.   Plaintiffs Admit That Defendants Followed 3GPP Procedures To
               The Letter, And They Fail To Allege That Defendants Violated
               The Spirit Of The Procedures ................................................................. 11

          2.   The TAC's Description Of Certain 3GPP Procedures Fails To
               Show That They "Lack Meaningful Safeguards".................................... 14

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988)......................................................................................................16, 17

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
  456 U.S. 556 (1982)....................................................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................ *passim*

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)....................................................................................................7

*Consolidated Metal Prods., Inc. v. Am. Petroleum Inst.*,
  846 F.2d 284 (5th Cir. 1988) ................................................................................................15

*Gentilello v. Rege*,
  627 F.3d 540 (5th Cir. 2010) ................................................................................................13

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
  547 F.3d 266 (5th Cir. 2008) ................................................................................5, 6, 15, 16

*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) ..............................................................................................3, 4

*In re Late Fee and Over-Limit Fee Litig.*,
  528 F. Supp. 2d 953 (N.D. Cal. 2007) ................................................................................11

*Jacobson v. Peat, Marwick, Mitchell & Co.*,
  445 F. Supp. 518 (S.D.N.Y. 1977) ......................................................................................12

*Johnson v. Hosp. Corp. of Am.*,
  95 F.3d 383 (5th Cir. 1996) ..................................................................................................17

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ................................................................................................2

*Lazaro v. Good Samaritan Hosp.*,
  54 F. Supp. 2d 180 (S.D.N.Y. 1999)....................................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................................2

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) .............................................................................................13

*Salts v. Moore*,
  107 F. Supp. 2d 732 (N.D. Miss. 2000)..............................................................................5

*TruePosition, Inc. v. LM Ericsson Telephone Co.*,
  No. 11–4574, 2012 WL 3584626 (E.D. Pa. Aug. 21, 2012)...................................................14

**OTHER AUTHORITIES**

Philip E. Areeda & Herbert Hovenkamp, Antitrust Law (3d ed. 2012) .......................................11

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................3

## INTRODUCTION

The TAC utterly fails to state a claim for relief against Motorola.  And Plaintiffs' Opposition cannot save the TAC through its empty repetition of the words "pretext" and "pretextual" (more than 100 times) or its excessive use of boldfaced font to shout its implausible arguments at higher volume.  In the TAC, Plaintiffs have still failed to cure the central deficiency that the Court identified in dismissing the FAC.  Plaintiffs "have not alleged plausible facts demonstrating that . . . [Motorola and the other Defendants] engaged in any type of conspiracy or concerted action as it relates to the creation [of] Band Class 17."  (Op. at 22.)

Further, because Plaintiffs base their conspiracy theory on standard-setting conduct—but fail to allege facts plausibly showing that Defendants biased or subverted 3GPP's normal standard-setting process—Plaintiffs allege only conduct that is fully consistent with *lawful* independent action.  Such allegations fall far short of clearing the pleading hurdle and must be dismissed as a matter of law.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In fact Defendants' standard-setting conduct here was procompetitive and important to consumers.  Defendants' work in the 3GPP Working Group helped set a technical standard for next-generation mobile devices and networks that avoided potential interference effects, greater capital cost, and a longer launch horizon.  In so doing, the Working Group helped increase quality—and decrease prices—for consumers of mobile devices and 4G-LTE connectivity.  Such a procompetitive result is exactly what private standard setting, robust competition, and the antitrust laws are designed to accomplish.

And Plaintiffs unwittingly allege facts showing that Motorola—unlike an antitrust conspirator—acted *consistent* with its economic self-interest.  *First*, the TAC alleges that Motorola's engineer on the Working Group did exactly the *opposite* of what an antitrust conspirator would have done.  That is, Plaintiffs allege that publicly-available minutes of a

meeting show that the Motorola engineer said the Working Group needed input from Lower A Block operators, such as Plaintiffs, before the vote on the Band-17 standard. By publishing such minutes before the vote, Motorola and the Working Group promoted transparency and inclusion in the standard-setting process. An antitrust conspirator would have promoted secrecy and exclusion instead.

*Second*, the TAC alleges that, beyond Motorola, other mobile-device makers that are not alleged to be conspirators participated in the standard-setting process and voted in favor of creating Band 17. Absent a showing that Motorola's interest differs somehow from that of its competitors, such a factual allegation illustrates that supporting Band 17 was in the economic self-interest of each mobile-device maker, including Motorola. And Plaintiffs do not even try to articulate any difference in economic interest between Motorola and its competitors.

Therefore, the mistaken inferences of "antitrust conspiracy" that Plaintiffs urge the Court to draw from such procompetitive conduct would be especially costly. They would improperly "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). And they would "chill the very [procompetitive] conduct the antitrust laws are designed to protect." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).

Fortunately, the district court is the gatekeeper empowered to prevent Plaintiffs from using such insufficient allegations to generate expensive antitrust discovery, *Twombly*, 550 U.S. at 557-58, and "extort large settlements." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Therefore, the Court should dismiss the TAC—without leave to amend.

**ARGUMENT**

## I.  PLAINTIFFS IMPROPERLY UNDERESTIMATE THEIR PLEADING BURDEN

Plaintiffs misconstrue the pleading standard—and thereby improperly underestimate their pleading burden—in two ways.

*First*, Plaintiffs contend that the Court "must assume the veracity of" and "may not set aside any allegation" in the Third Amended and Supplemental Complaint [Dkt. 125] (the "TAC"), except an "allegation [that] is a bare assertion of formulaic recitation of the elements [of a claim for relief]."  (Opp'n at 7 (internal quotation marks omitted).)  But that is *not* the standard. In considering a motion to dismiss, the Court need only assume the veracity of "well-pleaded factual allegations."  *Iqbal*, 556 U.S. at 679.  And the Supreme Court calls the district courts to identify and reject allegations that "are no more than conclusions" and thus "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  (*Accord* Memorandum Opinion [Dkt. 100] ("Op.") at 13-14, Aug. 31, 2012 ("a court need not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions,' which will not defeat a Rule 12(b)(6) motion to dismiss.") (citations omitted).)  The Court will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

*Second*, Plaintiffs argue (erroneously) that "deciding between competing inferences at the pleading stage is simply not permitted."  (Opp'n at 49.)  But *Twombly* in fact requires the Court to make just such a decision where, as here, the inferences of unlawful conspiracy from Plaintiffs' allegations are not *plausible*.  *See Twombly*, 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 679.  To cross the plausibility threshold, factual allegations "must permit the court 'to infer *more* than the mere possibility of misconduct.'"  *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679) (emphasis added).  Put another way, factual allegations that are

"'merely consistent with'" misconduct do not raise a plausible inference of antitrust conspiracy. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In other words—contrary to Plaintiffs' argument (Opp'n at 9)—even a "tie" results in dismissal. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 557; *Hale*, 642 F.3d at 499.

Indeed, the allegations here fall well short of a tie. They are more consistent with Defendants' procompetitive conduct. The creation of Band 17 provided consumers with an additional choice of purchasing non-interference-plagued, next-generation mobile devices. To avoid mistakenly chilling such procompetitive conduct—and the resulting benefits to consumers—the antitrust laws require that Plaintiffs' insufficient allegations be dismissed.

## II. THE TAC ALLEGES ONLY CIRCUMSTANTIAL EVIDENCE THAT FAILS TO PLAUSIBLY SUGGEST AN ANTICOMPETITIVE AGREEMENT

The threshold element of any antitrust conspiracy claim is "'whether the challenged anticompetitive conduct stems from independent decision or from an agreement.'" (Op. at 15) (quoting *Twombly*, 550 U.S. at 553). In their Opposition, Plaintiffs abandon their prior assertion that the TAC alleges direct evidence of an anticompetitive agreement. (*See* Opp'n at 47.) Plaintiffs now rely solely on allegations of circumstantial evidence—namely, allegations that: (1) each Defendant supported adoption of Band 17 (Opp'n at 42–43); (2) each Defendant cited "pretextual" interference justifications for adopting Band 17 (Opp'n at 2, 48); (3) Band 17 stemmed from a standard-setting process that lacked "meaningful safeguards to prevent Defendants from biasing the process" (Opp'n at 21, 25); and (4) Qualcomm and Motorola each made statements concerning delay of Band 12 standards (Opp'n at 49–50). These allegations are

not enough.  Both individually and collectively, they fail to provide "plausible grounds to infer an agreement."  *Twombly*, 550 U.S. at 556.[1]

A.    **Allegations That Each Defendant Supported Band 17 Show Only Lawful Parallel Conduct**

Plaintiffs' implausible tale of conspiracy opens with a Working Group meeting of the 3rd Generation Partnership Project ("3GPP").  (TAC ¶ 189.)  According to the TAC, at this meeting, Motorola submitted a paper proposing Band 17.  (*Id*. ¶ 189.)  In a subsequent Working Group meeting, AT&T submitted its own paper supporting Band 17.  (*Id*. ¶ 193.)  And Qualcomm voiced its support for Band 17.  (*Id.* ¶ 195.)  As the Court has already held, such alleged conduct of each Defendant, taken together, suggests nothing more than parallel conduct in the 3GPP standard-setting process.  (Op. at 18.)

*Golden Bridge Technology, Inc. v. Motorola, Inc.*, 547 F.3d 266 (5th Cir. 2008) is instructive here.  Plaintiff there alleged that defendants conspired to remove plaintiff's product from the 3GPP standard, "resulting in the unlawful exclusion of [plaintiff] from the market." *Golden Bridge*, 547 F.3d at 270.  In particular, at a 3GPP Working Group meeting, 3GPP members allegedly presented a proposal to remove technologies from the 3GPP standard.  *Id.* Plaintiff did not attend this meeting.  *Id.*  3GPP members thereafter continued discussions on the proposal in e-mail communications, which "reveal[ed] a common dislike for [plaintiff's product] among some of [defendants]."  *Id.* at 270, 272.  3GPP members did not include plaintiff in these e-mail communications.  *Id.* at 270.

---

[1] Accordingly, the Court should dismiss Plaintiffs' claims against Motorola under both Sections 1 and 2 of the Sherman Act.  *See Salts v. Moore*, 107 F. Supp. 2d 732, 743 (N.D. Miss. 2000) (dismissing both a Section 1 claim and a Section 2 claim of conspiracy to monopolize where the complaint failed to sufficiently allege the existence of any agreement or conspiracy among the defendants).

Ultimately, defendants and other companies "unanimously voted" to remove plaintiff's product from the 3GPP standard. *Golden Bridge*, 547 F.3d at 272. The Fifth Circuit observed that unanimously voting on a change to a standard-setting organization's standard constitutes parallel conduct among members of that organization. *Id.* And the court held that plaintiff "ha[d] not met the threshold requirement of demonstrating the existence of an agreement" from actions taken in adopting a change to the 3GPP standard. *Id.* at 273.

Similarly, the alleged conduct here—unanimously voting to adopt the Band-17 standard—constitutes only parallel conduct.[2] And Defendants are alleged to have taken one further procompetitive step that defendants in *Golden Bridge* failed to take. Instead of proceeding via email communications that excluded plaintiff from the discussion, Defendants here allegedly published on the 3GPP website minutes of a meeting in which the Working Group noted a desire for "feedback" from Lower A Block operators, including Plaintiffs, regarding adoption of Band 17. (TAC ¶¶ 190, 245.) *Golden Bridge* thus clarifies that the alleged 3GPP standard-setting conduct here was independent, parallel, and lawful.[3]

The Supreme Court has likewise recognized that while parallel behavior could be "consistent with conspiracy," such conduct is, in fact, "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 550 U.S. at 554. Factual allegations of parallel conduct "compatible with

---

[2] Defendants' alleged statements after Plaintiffs filed their Interoperability Petition with the FCC only "reveal a common dislike for [the plaintiff's product] among some of the [defendants]," which "is not the same as an explicit understanding to conspire."

[3] Plaintiffs' purported distinction of *Golden Bridge* on the ground that plaintiff there alleged "self-justifying" standard-setting conduct that sought technical compatibility (Opp'n at 27-29) is unavailing. Plaintiffs have never denied or rebutted the concern that the very interoperability of devices Plaintiffs seek here would *reduce* choice and quality while increasing cost and pricing—thus harming consumers and defying the goals of both competition and the antitrust laws. (*See* Section II.B.1 *infra*.)

. . . lawful, unchoreographed free-market behavior" thus do not plausibly suggest the existence of an agreement. *Iqbal*, 556 U.S. at 680 (construing *Twombly*). Here, allegations that Motorola engaged in parallel conduct in supporting Band 17 do not support a plausible inference of any agreement involving Motorola. And Plaintiffs' improper reliance on a variety of inapposite cases cannot help them allege an anticompetitive conspiracy based on standard-setting conduct.[4]

### B. Conclusory Allegations Of "Pretext" Fail To Plead A Plausible Anticompetitive Agreement

#### 1. Adoption Of Band 17 Was Consistent With Motorola's Economic Self-interest

A primary focus of the Opposition is the purported significance of allegations that interference did not justify the creation of Band 17 and that Defendants' statements to the contrary must, therefore, have been "pretextual." (Opp'n at 16.) In fact, Plaintiffs posit that whether "even one" interference scenario warranted creation of Band 17 is "critical to the analysis of this case," because absent such interference, Motorola's support of Band 17 was "against its own self-interest." (Opp'n at 11, 42–43.) But the TAC actually alleges facts showing that Motorola's purported conduct was *consistent with* its economic self-interest.

*First*, the TAC definitively affirms at least one interference scenario—interference emanating from Channel 51 broadcast stations. (TAC ¶ 255.) Plaintiffs dub as "intellectually

---

[4] For example, Plaintiffs rely on standard-setting cases that involved only alleged *individual* action under Section 2 of the Sherman Act—not alleged conspiratorial action. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007) (defendant allegedly made false promises during the standard-setting process to license its patents on fair, reasonable, and nondiscriminatory terms for purposes of having its patents included in the technical standard) (cited in Opp'n at 22-23, 26). Plaintiffs also rely on non-standard-setting cases where—unlike here—evidence of an agreement was clear. *See, e.g., Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (one conspirator's pre-litigation testimony under oath before the U.S. Senate was clear evidence) (cited in Opp'n at 15, 23-24, 26).

superficial" the notion that this "admitted interference" prompted creation of Band 17. They argue that (1) the admitted interference affects wireless carriers operating on the Lower A Block; (2) AT&T is a wireless carrier that does not operate on the Lower A Block; and (3) the interference therefore does not affect AT&T. (Opp'n at 11-13.)

Nothing in Plaintiffs' argument, however, undercuts the fact that the undisputed interference justified creation of Band 17 for manufacturers of mobile *devices*, like Motorola. Nowhere does the TAC (or even the Opposition) refute that the "admitted interference" would have affected mobile devices required to operate on the Lower A Block—and manufacturers of such devices, including Motorola. The nub of this litigation is not the inability of Plaintiffs—or any other wireless carrier—to operate a wireless network on the Lower A Block; it is the inability of Plaintiffs to obtain "devices[] and network equipment that would be interoperable, at a minimum, across the Lower A, B, and C Blocks." (TAC ¶¶ 18, 113.) Plaintiffs vilify Motorola for failing to manufacture such devices.

Yet, the obvious business justification flowing from allegations of "admitted interference" from Channel 51 broadcast stations in the Lower A Block is this: the admitted interference would have affected devices required to interoperate across the Lower A, B, and C Blocks. Plaintiffs have in fact never denied or rebutted mobile-device makers' concern that producing devices interoperable across the Lower A, B, and C Blocks "would necessarily increase the technical challenges and costs of designing handsets in these bands, and may ultimately lead to higher consumer prices." (Comments of Research In Motion Corporation at 3, Promoting Interoperability in the 700 MHz Commercial Spectrum, WT Docket No. 12-69 (Fed. Commc'ns Comm'n June 1, 2012), Ex. F to Solh Rebuttal Decl. [Dkt. 91-1].) Efforts to prevent such a scenario line up perfectly with Motorola's economic self-interest.

*Second*, contrary to Plaintiffs' argument that Motorola affirmatively excluded input from companies that Band 17 might adversely affect, and thus acted like a conspirator (*see* Opp'n at 38), the TAC alleges that Motorola acted consistent with its economic self-interest—and very unlike an antitrust conspirator. As noted in Motorola's Opening Brief in Support of Motion to Dismiss Third Amended and Supplemental Complaint [Dkt. 138] (the "Opening Brief" or "Motion") (Mot. at 12-13), the TAC alleges that the Working Group published on its website minutes of a meeting in which Motorola's representative stated the need for "feedback" from Lower A Block operators. (TAC ¶¶ 190, 245.) Publishing an opportunity for Lower A Block operators to comment before a vote on the Band 17 standard—thereby promoting transparency and inclusion—is the *last* thing that a conspirator acting without a technical justification for the Band-17 standard would have done. Rather, an antitrust conspirator seeks to avoid transparency and inclusion at all costs lest its conspiracy be exposed, and its ends defeated.

*Third*, the TAC's allegations that other mobile-device makers—Motorola's competitors—such as Ericsson, were involved in the standard-setting process and ultimately did not vote against the adoption of Band 17 illustrates that Motorola acted in its own economic self-interest. The TAC does not allege either that the other device makers had any different economic interest than did Motorola or that the others were conspirators. The TAC thus assumes that the other device makers acted consistent with their own economic self-interest in adopting Band 17. If they did, and Motorola had the same economic self-interest as its competitors, it follows that Motorola also acted consisted with its own economic self-interest in supporting Band 17.

*Fourth*, Plaintiffs exhibit the same willful blindness in attempting to buttress their claim of pretext with allegations that "subsequent events" show that Defendants' interference concerns

were false.  (Opp'n at 13.)  In particular, the TAC alleges that three events belie Motorola's interference concerns:  (1) Qualcomm has since developed chips for devices operable on Band 12; (2) U.S. Cellular has since deployed a network on Band 12; and (3) the Federal Communications Commission (the "FCC") has since "rejected" some of Motorola's interference concerns.  (*See* TAC ¶¶ 266–69.)

As explained in Motorola's Opening Brief, however, the TAC further alleges that in proposing Band 17, Motorola's concern was "that Band 12 devices could be susceptible to . . . interference."  (TAC ¶ 258.)  (*See* Mot. at 15–17.)  That is, Motorola's concern was whether it would be possible to expediently and cost-effectively develop Band 12 devices not susceptible to interference and capable of performance at Motorola's standards.  The development of Band 12 chips or the deployment of a Band 12 network—operating only on Lower A Block—does not contradict that concern.  Plaintiffs fail to allege that those chips or network could have been launched as expediently, cost-effectively, and as unaffected by interference as those launched on Band 17 (operating only on Lower B and C Blocks).  And Plaintiffs make no such assertion in their Opposition.[5]

Ultimately, under Plaintiffs' own theory of analysis—crediting "even one" interference scenario supporting adoption of Band 17—and Plaintiffs' own concessions of "admitted interference," the TAC fails to allege plausibly that Channel 51 interference was not a technical justification for the creation of Band 17—for Motorola, as a manufacturer of mobile devices—or that Defendants' reliance on such was "pretextual."

---

[5] Plaintiffs argue that Motorola's Opening Brief did not address the allegation that U.S. Cellular has since launched a Band 12 network.  (Opp'n at 14.)  But Motorola most certainly did address and dispatch that allegation.  (*See* Mot. at 16.)

## 2. The Allegations Of Pretext Could Show, At Most, Only Motive

Even if the Court somehow construes the TAC as adequately alleging that Defendants' interference concerns afforded no rationale for creating Band 17, Plaintiffs confess that the function of these allegations is "not . . . to prove agreement" among Defendants, but rather to demonstrate the "true anticompetitive motive" of Defendants. (Opp'n at 14, 42.)[6] As the Court has recognized, however, "accusations of a motive do not establish a Sherman Act violation." (Op. at 18.) *See also In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 964 (N.D. Cal. 2007) ("[M]otivation to enter a conspiracy is never enough to show an agreement." (internal quotation marks and citation omitted)); VI Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1412a. (3d ed. 2012) (The "presence of a motivation to conspire does not mean that a conspiracy has occurred" and is thus an "insufficient ground for finding a conspiracy."). Accordingly, allegations of pretext, which could show only motive, do not support a plausible inference of any agreement involving Motorola.

### C. The TAC Fails To Allege Subversion Of 3GPP's Standard-Setting Process

#### 1. Plaintiffs Admit That Defendants Followed 3GPP Procedures To The Letter, And They Fail To Allege That Defendants Violated The Spirit Of The Procedures

As the Court highlighted in its Memorandum Opinion, a chief failing of Plaintiffs' SAC was its deficit of "plausible facts demonstrating that the 3GPP standard-setting process was biased or otherwise subverted." (Op. at 22.) The TAC does nothing to fill or even narrow this gap. Far from alleging such subversion, Plaintiffs admit the standard-setting process followed

---

[6] (*See also* Opp'n at 13 (Defendants' "statements that the interference concern[s] justified the creation of Band 17 were pretextual" and "operated as a ruse to conceal Defendants' real object and motive"); Opp'n at 16 ("interference did not justify the creation of Band 17, and that Defendants' statements to the contrary were false, pretextual, and a ruse to cover their true motive").)

3GPP's rules to the letter. (Pls.' Mem. in Supp. of Mot. to Amend Compl. [Dkt. 106] at 8.) According to the Opposition, the TAC pleads that Defendants presented or perpetuated "false statements" of rationales for adopting Band 17. (Opp'n at 44 n.17.)[7] And this purported perpetuation of false statements presumably biased the standard-setting process. But the multiplicity of implausible, inferential leaps taken to arrive at this conclusion is harrowing.

*First*, Plaintiffs ask the Court to accept that all the interference concerns that Defendants presented as reasons to adopt Band 17 were false (Opp'n at 13–16)—despite the fact that Plaintiffs have *admitted* that interference from Channel 51 broadcast stations affects the Lower A Block (TAC ¶ 255).

*Second*, Plaintiffs ask the Court to accept that the entire telecommunications industry, sophisticated as it is, allowed these false premises to persist and to corrupt the process for setting the standards that govern it. In particular, Plaintiffs ask the Court to accept that the vast majority of the industry blindly embraced these false premises—despite the fact that an industry player, Ericsson, "rejected" them (Opp'n at 34).

*Third*, Plaintiffs ask the Court to accept that Ericsson abandoned its position and silenced itself to avoid the ire of AT&T (Opp'n at 34)—despite the fact that the TAC nowhere alleges that AT&T compelled Ericsson to do so or even vocalized any discontent with Ericsson. And Plaintiffs ask the Court to accept that Ericsson abandoned its position and silenced itself because it "did not really care about" Band 17 (Opp'n at 34)—despite the fact that Ericsson evidently

---

[7] Of course, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)). And "a party is not entitled to amend his pleading through statements in his brief." *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

cared enough to conduct a "simulation" and to otherwise research, prepare, and present a paper on Band 17 (TAC ¶¶ 194, 195, 225).

*Fourth*, Plaintiffs ask the Court to accept that another industry player, Verizon, remained silent all along because it too "had no interest in . . . Band 17" (Opp'n at 35)—despite the fact that Verizon had "purchased a substantial number of licenses in a . . . Lower A Block." (TAC ¶ 108).

None of these far-fetched, conclusory allegations allows the Court to draw a reasonable inference of conspiracy. Yet, Plaintiffs ask the Court to accept *all* of them to reach the conclusion that Defendants voiced interference concerns that were all false and thereby biased the standard-setting process.

At bottom, the TAC invites the Court to walk a path paved with inferences so unreasonable that they belie the plausibility of the end point. Contrary to Plaintiffs' suggestion, on a motion to dismiss, the Court need not draw all inferences in favor of the non-moving party. The Court need only "draw all *reasonable* inferences in favor of the nonmoving party." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (emphasis added). Nor need the Court accept as true "unwarranted" inferences. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal quotation marks and citation omitted). Indeed, the Supreme Court's interpretation of operative pleading standards affirms these canons: where a complaint contains factual allegations that "allow[] the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged," the complaint states a claim to relief that is plausible. *Iqbal*, 556 U.S. at 678 (emphasis added).

In fact, Plaintiffs misconstrue Motorola's position at its most fundamental level. Motorola maintains that the Court should dismiss the TAC not because "plausible alternatives to

[Plaintiffs'] theory" exist.  (Opp'n at 8.)  Rather, Motorola maintains that the Court should

dismiss the TAC because Plaintiffs' theory itself is *implausible*.  (So of course there are plausible

alternatives.)  That is, the TAC's factual allegations "stop[] short of the line between possibility

and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal quotation marks and

citation omitted).

> **2.      The TAC's Description Of Certain 3GPP Procedures Fails To Show That They "Lack Meaningful Safeguards"**

Unable to properly plead plausible facts demonstrating that Defendants biased or

otherwise subverted the standard-setting process, Plaintiffs try a different tactic.  They argue that

the "applicable standard" for "evaluating the effect" of a standard-setting organization's decision

is not whether the organization's members adhered to the organization's procedures—or whether

members biased or subverted the standard-setting process using improper and unfair practices

and procedures—but instead whether the standard-setting process lacked meaningful safeguards

to prevent members from biasing the process.  (Opp'n at 21-22.)

To support this contention, Plaintiffs rely on *TruePosition, Inc. v. LM Ericsson Telephone

Co.*, No. 11–4574, 2012 WL 3584626 (E.D. Pa. Aug. 21, 2012).  In *TruePosition*, however,

plaintiff alleged that defendants violated the standard-setting organization's rules and

procedures.  *See TruePosition*, 2012 WL 3584626, at *6 (noting that plaintiff asserted that

defendants "coordinat[ed] their violations of 3GPP rules and procedures at key points in the

standardization process and permitt[ed] those violations through their authority as Chairmen [of

key committees and working groups]" (internal quotation marks and citation omitted)).

Therefore, if anything, *TruePosition* supports the Court's holding in the Memorandum Opinion

that the relevant inquiry is whether members adhered to the standard-setting organization's rules and procedures or instead biased or subverted the standard-setting process.[8]

Even if their articulation of the applicable standard were accurate, Plaintiffs fail to satisfy such a hypothetical standard. As explained in the Opening Brief, allegations purporting to plead a lack of meaningful safeguards in the standard-setting process that culminated in the adoption of Band 17 essentially plead only perceived flaws in 3GPP's "general practice." (*See* Mot. at 9–10.) Plaintiffs' response to this point is to merely parrot the TAC's allegations describing certain 3GPP procedures. (*See* Opp'n at 31–32.)

Particularly unavailing is the gravity Plaintiffs attribute to Motorola's alleged failure to seek input from companies that Band 17 might adversely affect. (*See* Opp'n at 38.) *First*, as noted in the Opening Brief, the Working Group actually *did* seek input. It published the meeting minutes noting that the Working Group was seeking feedback from Lower A Block operators, such as Plaintiffs. (Mot. at 12-13.) Publishing an opportunity for Lower A Block operators to comment before a vote on the Band-17 standard is the very antithesis of manipulation. Motorola's alleged conduct instead helped to promote transparency and inclusion in the standard-setting process. (*Id.*) Therefore, Plaintiffs' allegations fail to plausibly suggest that Motorola manipulated the standard-setting process.

*Second*, the Fifth Circuit has rejected the significance of the conduct alleged in any event. Plaintiff in *Golden Bridge* alleged a Section 1 violation based on 3GPP members (1) presenting a

---

[8] Moreover, Plaintiffs ignore *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 846 F.2d 284, 292 n.20, 294-295 (5th Cir. 1988), which Motorola cited in its Opening Brief for the proposition that Plaintiffs' "litany of alleged deficiencies in [the standard-setting body's] . . . process" is "irrelevant" because "[the standard-setting body] followed its normal procedure" and the "evidence in the written record suggests nothing more than a technical debate among engineers." (Mot. at 9-10.)

proposal adversely affecting plaintiff at a Working Group meeting that plaintiff did not attend, and (2) failing to include plaintiff in subsequent e-mail communications that continued discussions on that proposal. The district court held that the allegations failed to state an antitrust conspiracy claim. And the Fifth Circuit affirmed. *Golden Bridge*, 547 F.3d at 270, 273.

Even if the TAC's allegations somehow demonstrated a lack of meaningful safeguards in the standard-setting process establishing Band 17, the TAC still fails to provide plausible grounds to infer an agreement involving Motorola. As noted above, Plaintiffs have deserted their prior claims that the TAC alleges any direct evidence of an agreement. And any contention that adoption of Band 17 itself constitutes direct evidence of the agreement required to state a Section 1 claim against Motorola is untenable. Unanimously voting on a change to a standard-setting organization's standard constitutes only parallel conduct among members of that organization— and *not* a *de facto* agreement among them that satisfies the threshold element of a Section 1 claim. *See Golden Bridge*, 547 F.3d at 272. In fact, the Fifth Circuit's holding in *Golden Bridge*—that plaintiff "ha[d] not met the threshold requirement of demonstrating the existence of an agreement" from actions taken in adopting a change to a standard-setting organization's standard—reinforces this tenet. *Id.* at 273.

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988), on which Plaintiffs rely heavily, does not suggest otherwise. There, the Supreme Court addressed application of the *Noerr-Pennington* doctrine to private standard-setting associations. *Allied Tube*, 486 U.S. at 499. And the Supreme Court expressly declined to consider "whether . . . [the defendant's] conduct violated the Sherman Act." *Id.* at 499 n.3. In fact, in *Allied Tube*, defendant absolved plaintiff of the obligation to establish an agreement, "*conced[ing]* that it had

conspired with the other steel interests to exclude [plaintiff's] product from the [product standard]." *Id.* at 497 (emphasis added).

As the Court has already opined, the facts alleged in the TAC are very different than those in *Allied Tube*. (Op. at 20-21.) There, the parties stipulated that defendant's efforts to prevent adoption of an electrical conduit standard friendly to plastics manufacturers—regardless of the technical merits—was the product of an *agreement*. Here, Plaintiffs do not make sufficient factual allegations of an *agreement* to prevent adoption of a Band-12 standard friendly to regional Block A carriers. And they admit—or fail to contest—facts that support a technical basis for the alleged conduct. *Allied Tube* is inapposite.[9]

## CONCLUSION

The TAC alleges conduct that is more consistent with Defendants' procompetitive conduct in bringing consumers greater quality and functionality at lower pricing than it is with an antitrust conspiracy. Therefore, the Court should avoid drawing the mistaken inferences of antitrust conspiracy urged by Plaintiffs. Doing so could inadvertently chill procompetitive conduct—and harm consumers. The Court—in its role as gatekeeper—should instead protect consumers and procompetitive innovation by granting Motorola's Motion and dismissing the TAC in its entirety—with prejudice and without leave to amend.

---

[9] Further, allegations that a standard-setting process lacked meaningful safeguards to prevent Defendants from biasing that process attempt to show only that Defendants had the opportunity to bias the process—not that they did so pursuant to an agreement among them. The mere opportunity to conspire is insufficient to support an inference of conspiracy. *See Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 392–93 (5th Cir. 1996) (affirming the district court's refusal to find an antitrust conspiracy where the plaintiffs "point[ed] to little more than the mere opportunity to conspire").

Dated: April 24, 2013

Respectfully submitted,

_s/ Jim M. Greenlee_____
Jim M. Greenlee, MSB # 5001
James D. "J.D." Johnson, MSB # 102242
HOLCOMB, DUNBAR, WATTS, BEST,
MASTERS & GOLMON
400 South Lamar Blvd., Suite A
P.O. Drawer 707
Oxford, Mississippi 38655
Telephone:     (662) 234-8775
Facsimile:     (662) 238-7552
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (admitted _pro hac vice_)
Chahira Solh (admitted _pro hac vice_)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California  92614-8505
Telephone:     (949) 263 8400
Facsimile:     (949) 263 8414
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (admitted _pro hac vice_)
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California  90071
Telephone:     (213) 622-4750
Facsimile:     (213) 622-2690
jmurray@crowell.com

_COUNSEL FOR DEFENDANTS
MOTOROLA MOBILITY LLC (f/k/a Motorola
Mobility, Inc.) AND MOTOROLA
SOLUTIONS, INC._

## <u>CERTIFICATE OF SERVICE</u>

I, JIM M. GREENLEE, of the firm of HOLCOMB, DUNBAR, WATTS, BEST, MASTERS & GOLMON, do hereby certify, that on **April 24, 2013**, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Alan Walter Perry
FORMAN, PERRY, WATKINS, KRUTZ &
TARDY, PLLC
P.O. Box 22608
Jackson, MS 39225-2608
Email: aperry@fpwk.com

Martin Patrick McDowell
BRUNINI, GRANTHAM, GROWER &
HEWES
P. O. Drawer 119
Jackson, MS 39205-0119
Email: pmcdowell@brunini.com

Brian Craig Kimball
BRUNINI, GRANTHAM, GROWER &
HEWES
P. O. Drawer 119
Jackson, MS 39205-0119
Email: bkimball@brunini.com

Walter H. Boone
FORMAN, PERRY, WATKINS, KRUTZ &
TARDY, PLLC
P.O. Box 22608
Jackson, MS 39225-2608
Email: whboone@fpwk.com

Charles Louis McBride , Jr.
BRUNINI, GRANTHAM, GROWER &
HEWES
P. O. Drawer 119
Jackson, MS 39205-0119
Email: cmcbride@brunini.com

Walter T. Johnson
WATKINS & EAGER
P. O. Box 650
Jackson, MS 39205-0650
Email: wjohnson@watkinseager.com

Daniel J. Mulholland
FORMAN, PERRY, WATKINS, KRUTZ &
TARDY, PLLC
P.O. Box 22608
Jackson, MS 39225-2608
Email: mulhollanddj@fpwk.com

David W. Upchurch
HOLLAND RAY UPCHURCH AND
HILLEN
P.O. Drawer 409
Tupelo, MS 38802-0409
Email: dwu@hruhpa.com

Joseph Anthony Sclafani
BRUNINI, GRANTHAM,
P. O. Drawer 119
Jackson, MS 39205-0119
Email: jsclafani@brunini.com

Margaret Sams Gratz
MITCHELL, MCNUTT & SAMS - Tupelo
P. O. Box 7120
Tupelo, MS 38802-7120
Email: mgratz@mitchellmcnutt.com

Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Email: yeven@cravath.com

Aaron M. Panner
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL PLLC
1615 M Street NW, Suite 400
Washington State, DC 20036
Email: apanner@khhte.com

Michael K. Kellogg
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL PLLC
1615 M Street NW, Suite 400
Washington State, DC 20036
Email: mkellogg@khhte.com

Katie L. Wallace
BRUNINI, GRANTHAM, GROWER &
HEWES
P. O. Drawer 119
Jackson, MS 39205-0119
Email: kwallace@brunini.com

L. F. Sams, Jr.
MITCHELL, MCNUTT & SAMS
P. O. Box 7120
Tupelo, MS 38802-7120
Email: ssams@mitchellmcnutt.com

Roger G. Brooks
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Email: rgbrooks@cravath.com

Otis R. Tims
MITCHELL, MCNUTT & SAMS
P. O. Box 7120
Tupelo, MS 38802-7120
Email: otims@mitchellmcnutt.com

Kenneth M. Fetterman
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL PLLC
1615 M. Street NW, Suite 400
Washington State, DC 20036
Email: kfetterman@khhte.com

William J. Rinner
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL PLLC
1615 M. Street NW, Suite 400
Washington, DC 20036
Email: wrinner@khhte.com

Carrie R. Bierman
CRAVATH SWAINE & MOORE, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Email: cbierman@cravath.com

Dated this, the 24th day of April, 2013

*s/ Jim M. Greenlee*
JIM M. GREENLEE

IRACTIVE-5816021.14