**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**CORR WIRELESS
COMMUNICATIONS, L.L.C.,**                                                           **PLAINTIFFS**
**CELLULAR SOUTH, INC., and
CELLULAR SOUTH LICENSES, LLC**

**vs.**                                                **CIVIL ACTION NO. 3:12-cv-00036-SA-SAA**

**AT&T, INC., et al.**                                                                           **DEFENDANTS**

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR JURISDICTIONAL DISCOVERY**

Cellular South specifically alleges in Paragraph 45 of its Third Amended and Supplemental Complaint (the "TASC") [Doc. 125] that:

- "AT&T Inc. . . . does not merely own the stock of its subsidiaries but is actively engaged in the operations of the wireless carrier business conducted by the subsidiaries, including AT&T Mobility LLC in Mississippi and throughout the United States.";

- "AT&T Inc. is found and transacts business in the State of Mississippi" – which "AT&T Inc. has previously admitted" in prior litigation;

- "AT&T Inc. actually directs, operates and oversees the wireless business operated by AT&T Mobility LLC.";

- "AT&T Inc. is directly involved in matters involving the wireless spectrum . . . made available to AT&T Mobility LLC for its use in operation of wireless operations.";

- "AT&T Inc. itself is actively engaged in the wireless industry by participating directly in FCC proceedings, and, in particular, the FCC proceedings relating to Cellular South's Interoperability Petition.";

- "AT&T Inc., itself, filed at least three separate comments opposing the Interoperability Petition . . . .";

- "AT&T Inc. . . . directly participated in the 3GPP proceedings related to the creation of Band 17 . . . .";

- "AT&T Inc. . . . took action at 3GPP as part of a concerted plan to create a private ecosystem for the use of AT&T Mobility LLC.";

- "AT&T Inc. and AT&T Mobility LLC acted jointly and together as part of a conspiracy with each other – and also with the other Defendants – to violate the antitrust laws of the United States.";

- "AT&T Inc. acted to cause 3GPP to create Band 17 even though no interference required that creation and the only purpose of that action was to create a private band for AT&T."; and

- "AT&T Inc. and the other Defendants knew and understood that the effect of creating Band 17 would injure and restrain competition throughout the United States and in Mississippi."

TASC at ¶ 45.[1]

Cellular South demonstrated in opposition to AT&T Inc.'s Rule 12(b)(2) motion that these allegations regarding AT&T Inc.'s direct (*not* imputed) acts of participation in the conspiracy to create Band 17 are sufficient to establish personal jurisdiction over AT&T Inc. both (1) under the Clayton Act (a) because AT&T Inc. has previously admitted that it transacts business in Mississippi and (b) because AT&T Inc.'s co-conspirator, AT&T Mobility, transacts business in Mississippi, which contacts are properly attributable to AT&T Inc. for jurisdictional purposes; and (2) under the tort prong of the Mississippi long-arm statute because AT&T Inc. and its co-conspirators committed a tort, at least in part, in Mississippi. [Doc. 145].[2] *See generally Norris v. Krystaltech Int'l*, 133 F. Supp. 2d 465, 469 (S.D. Miss. 2000) (co-conspirators' contacts with forum are properly imputed to a nonresident defendant for personal jurisdiction unless "plaintiffs' allegations of conspiracy are entirely conclusory, unsupported by any *factual* allegation"); *Insultherm, Inc. v. Tank Insulation, Int'l*, 909 F. Supp. 465, 468-69

---

[1] The TASC refers to AT&T Inc. throughout as "AT&T, Inc." (with a comma). Because AT&T Inc. consistently omits the comma in its briefing, Cellular South will do the same here.

[2] Cellular South does not waive its argument that the Clayton Act only requires that AT&T Inc. have requisite contacts with the United States, not specifically with the State of Mississippi.

(S.D. Tex. 1995) ("For purposes of this personal jurisdiction analysis, conspiracy to commit antitrust violations is in the nature of a tort. Thermacon's conduct was directed at and caused injury to [Plaintiff] in Texas. Therefore, by conspiring with Insultherm to wrongfully bring an infringement action based on an invalid patent, Thermacon committed a tort in Texas, and is amenable to service of process under the Texas long arm statute.") (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 685-86 (5th Cir. 1977)) (internal citation omitted); *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) ("Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.") (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

AT&T Inc. submitted with its motion to dismiss an affidavit from employee Steven Threlkeld detailing AT&T Inc.'s corporate history, its separate corporate identity from its subsidiaries, and its lack of any employees or property located in Mississippi. [Doc. 62-1]. Yet, Mr. Threlkeld's affidavit says nothing to dispute the TASC's allegations regarding AT&T Inc.'s direct participation with the other Defendants in the unlawful conspiracy to carve Band 17 out from Band 12, and then to further delay standardization for what remained of Band 12.[3] AT&T Inc. asserts, for example, that the explicit reference to "AT&T" in the 3GPP minutes was not

---

[3] Cellular South has made clear throughout the briefing on AT&T Inc.'s motion to dismiss that Cellular South does not seek to impute AT&T Mobility's conduct to AT&T Inc. under an "alter ego" theory. To the contrary, AT&T Inc. is subject to this Court's jurisdiction based on AT&T Inc.'s prior admission that it does business in Mississippi, its own direct actions in furtherance of the antitrust conspiracy, and its co-conspirators' contacts with the State of Mississippi pursuant to the conspiracy theory of jurisdiction. *See Norris*, 133 F. Supp. 3d at 469 (citing *Thomas v. Kadish,* 748 F.2d 276 (5th Cir.1984)); *Textor v. Board of Regents of No. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983).

actually meant to refer to AT&T Inc. as a 3GPP participant, but instead was a reference "only to AT&T generically." [Doc. 152 at 7]. However, AT&T Inc. offers no evidence, through Mr. Threlkeld's affidavit or otherwise, to support this denial, nor does it identify the "AT&T" entity to which the 3GPP scrivener supposedly meant to refer if not to AT&T Inc.

AT&T Inc. similarly asserts that its CEO Randall Stephenson's characterization of "AT&T" as a "driver" of 3GPP standards was a reference not to AT&T Inc., but instead to "the corporate family" (except for AT&T Inc.?) or "the brand AT&T." *Id*. at 9. But AT&T Inc. offers no affidavit from Mr. Stephenson in support, nor does Mr. Threlkeld's affidavit speak to this issue. AT&T Inc. asserts that even when AT&T Inc. submitted its FCC filings under its own name in opposition to the Interoperability Petition, it did so only "on behalf of" of its subsidiaries – sometimes expressly so, but sometimes not. *Id*. at 9 and n.8. Yet AT&T Inc. offers no evidence to support the notion that such filings under AT&T Inc.'s name were actually filed only on behalf of unnamed subsidiaries. Finally, AT&T Inc. asserts – again with zero evidence – that both the federal government and AT&T Inc. somehow tacitly agreed in the government's antitrust lawsuit against AT&T Inc. that the complaint's allegation – and AT&T Inc.'s express admission of the allegation – that AT&T Inc. does business in Mississippi did not in fact mean that AT&T Inc. actually does business in Mississippi, but only that AT&T Mobility or some other, unidentified subsidiary of AT&T Inc. does business here. *Id*. at 12.

AT&T Inc.'s unsupported denials regarding its direct participation in the actions of "AT&T" at 3GPP, before the FCC, and otherwise, unaccompanied by any evidence, are plainly insufficient to defeat Cellular South's jurisdictional allegations. *See In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 208 (2nd Cir. 2003) ("SKM concedes that one of its executives was present at the meeting in question, but argues that the meeting was a 'short culturally

4

required courtesy meeting,' in which no price-fixing discussion took place. This factual argument, however, is not proper for resolution in the context of a motion to dismiss."). If the Court is to consider AT&T Inc.'s unsupported denials, however, Cellular South must be permitted an opportunity to conduct discovery regarding the allegations and denials. *See Magnetic Audiotape*, 334 F.3d at 208 ("At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that SKM participated directly in a conspiracy, the effects of which were purposefully directed at the United States. Remand will provide the opportunity for full consideration by the court of the meeting in Korea with regard to the question of personal jurisdiction.")

Notwithstanding AT&T Inc.'s repeated cries of "fishing expedition," Cellular South is plainly entitled to jurisdictional discovery under settled Fifth Circuit law if it can "present 'factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts'" or "otherwise show that jurisdictional discovery would not be wholly futile." *Blessey Marine Servs. v. Jeffboat, LLC*, 2011 WL 651999, *6 (E.D. La. Feb. 10, 2011) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); also citing *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)); *accord Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3rd Cir. 2009) ("if the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden") (internal quotations omitted). As demonstrated above and in its opposition to AT&T Inc.'s motion to dismiss, Cellular South has easily met this burden.

Discovery is particularly appropriate here because the evidence to refute AT&T Inc.'s denials is in the hands of AT&T Inc. and others over whom Cellular South has no control.

5

Courts have long found it an abuse of discretion not to allow the plaintiff jurisdictional discovery in cases such as this, in which corporate affiliates such as AT&T Inc. and AT&T Mobility attempt to defeat personal jurisdiction through intricacies of their corporate structures and operational details known only to themselves. Indeed, "discovery is particularly important here where each of the Defendants is a corporation and much of the information that Plaintiffs require to evaluate the nature of the relationships among the Defendants and the extent of their contacts with this forum, such as the franchise agreement, other contracts and transactional data, is publicly inaccessible and controlled by Defendants." *Orazi v. Hilton Hotels Corp.*, 2010 WL 4751728, *7 (E.D. Pa. Nov. 22, 2010) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3rd Cir. 2009) (finding jurisdictional discovery "particularly important" when plaintiff is "faced with the difficult task of trying to establish personal jurisdiction over a corporation.")). Jurisdictional discovery has thus long been found appropriate in such circumstances:

> A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery. If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions.

*Surpitski v. Hughes–Keenan Corp.,* 362 F.2d 254, 255–56 (1st Cir. 1966) (quoted in *Metcalfe*, 566 F.3d at 336).

Nor does Cellular South impermissibly seek "merits" discovery. To the contrary, Cellular South seeks limited discovery specifically targeted to AT&T Inc.'s direct participation in the conspiracy solely to refute AT&T Inc.'s denials of Cellular South's jurisdictional allegations. The TASC's allegations regarding AT&T Inc. are very much like those in *Magnetic Audiotape*, in which the complaint alleged "that SKM, a Korean corporation, along with a number of other manufacturers and distributors of magnetic audiotape, conspired to fix the price of such tape in the United States" and specifically alleged that SKM "participated directly in the

6

conspiracy, as well as indirectly, by directing the activities of employees of its United States subsidiary, SKMA, Inc." 334 F.3d at 206. Just as in *Magnetic Audiotape*, Cellular South has pointed to evidence including 3GPP minutes and FCC filings indicating that AT&T Inc. itself directly participated in the conspiracy to carve out Band 17 and delay development of Band 12 so as to illegally restrain trade and increase AT&T Mobility's monopoly power in the relevant markets in Mississippi. "At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that [the defendant] participated directly in a conspiracy, the effects of which were purposefully directed at [the forum]. Remand will provide the opportunity for full consideration by the court of [defendant's actions] with regard to the question of personal jurisdiction." 334 F.3d at 208; *see also Asevedo v. NBCUniversal Media, LLC*, 2013 WL 437999, *9 (E.D. La. Feb. 4, 2013) ("The Court finds that Asevedo's request for discovery has merit because he has presented 'factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts.' Discovery may reveal whether NBCUniversal and Syfy have sufficient contacts with the forum as the alleged producers and/or broadcasters of *Dream Machines* to support a finding of personal jurisdiction.") (citations omitted).

## **CONCLUSION**

Cellular South has established a prima facie case of personal jurisdiction over AT&T Inc. through its well-pleaded allegations regarding (1) AT&T Inc.'s prior admission that it transacts business in Mississippi; (2) the undisputed fact that its co-conspirators transact business in Mississippi; and (3) AT&T Inc.'s and its co-conspirators' commission of a tort in Mississippi through antitrust violations directed toward the relevant markets in Mississippi. AT&T Inc.'s unsupported denials of these well-pleaded allegations are insufficient to defeat jurisdiction.

7

Should the Court find AT&T Inc.'s denials sufficient to controvert Cellular South's well-pleaded allegations, however, Cellular South has easily made the preliminary showing required for jurisdictional discovery. Cellular South, therefore, should be permitted to conduct its proposed discovery regarding its well-pleaded jurisdictional allegations and AT&T Inc.'s denials thereof.

DATED: May 13, 2013.　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Walter H. Boone
　　　　　　　　　　　　　　　　　Alan W. Perry, MSB #4127
　　　　　　　　　　　　　　　　　Daniel J. Mulholland, MSB #3643
　　　　　　　　　　　　　　　　　Walter H. Boone, MSB #8651
　　　　　　　　　　　　　　　　　FORMAN PERRY WATKINS KRUTZ & TARDY LLP
　　　　　　　　　　　　　　　　　City Centre, Suite 200
　　　　　　　　　　　　　　　　　200 South Lamar Street
　　　　　　　　　　　　　　　　　Jackson, Mississippi 39201
　　　　　　　　　　　　　　　　　Tel.: 601-969-7833
　　　　　　　　　　　　　　　　　Fax: 601-960-8613
　　　　　　　　　　　　　　　　　whboone@fpwk.com

　　　　　　　　　　　　　　　　　Charles L. McBride, Jr., MSB #8995
　　　　　　　　　　　　　　　　　M. Patrick McDowell, MSB # 9746
　　　　　　　　　　　　　　　　　Joseph A. Sclafani, MSB #99670
　　　　　　　　　　　　　　　　　Brian C. Kimball, MSB #100787
　　　　　　　　　　　　　　　　　BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
　　　　　　　　　　　　　　　　　The Pinnacle Building, Suite 100
　　　　　　　　　　　　　　　　　190 East Capitol Street
　　　　　　　　　　　　　　　　　Jackson, Mississippi 39201
　　　　　　　　　　　　　　　　　Tel.: 601-960-6891
　　　　　　　　　　　　　　　　　Fax: 601-960-6902
　　　　　　　　　　　　　　　　　cmcbride@brunini.com

　　　　　　　　　　　　　　　　　Walter T. Johnson, MSB#8712
　　　　　　　　　　　　　　　　　WATKINS & EAGER PLLC
　　　　　　　　　　　　　　　　　400 East Capitol Street, Suite 300 (39201)
　　　　　　　　　　　　　　　　　P. O. Box 650
　　　　　　　　　　　　　　　　　Jackson, MS 39205
　　　　　　　　　　　　　　　　　Phone: 601-965-1900
　　　　　　　　　　　　　　　　　Fax: 601- 965-1901
　　　　　　　　　　　　　　　　　wjohnson@watkinseager.com

　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs Cellular South, Inc.,*
　　　　　　　　　　　　　　　　　*Corr Wireless Communications, L.L.C. and*
　　　　　　　　　　　　　　　　　*Cellular South Licenses, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

***Attorneys for Defendants AT&T Mobility LLC, and AT&T, Inc.***

David W. Upchurch
Holland Ray Upchurch and Hillen
P.O. Drawer 409
Tupelo, MS 38802-0409
dwu@hruhpa.com

Michael K. Kellogg (PHV)
William J. Rinner (PHV)
Kenneth M. Fetterman (PHV)
Aaron M. Panner (PHV)
Kellogg, Huber, Hansen, Todd, Evans & Figel P.L.L.C.
1615 M. Street NW, Suite 400
Washington, D.C. 20036
mkellogg@khhte.com
wrinner@khhte.com
kfetterman@khhte.com
apanner@khhte.com

***Attorneys for Defendant Qualcomm Incorporated***

Sandy Sams
Margaret Sams Gratz
Otis R. Tims
Mitchell McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802
ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com

Yonatan Even (PHV)
Roger G. Brooks (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com

***Attorneys for Defendant Motorola Solutions, Inc.***

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
jmurray@crowell.com


THIS, the 13th day of May, 2013.

                                                             /s/ Walter H. Boone_____