## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

CORR WIRELESS COMMUNICATIONS, L.L.C.
CELLULAR SOUTH, INC., AND
CELLULAR SOUTH LICENSES, LLC                                    PLAINTIFFS

vs.                                          CIVIL ACTION NO. 3:12-cv-00036-SA-SAA

AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC., AND
QUALCOMM INCORPORATED                                          DEFENDANTS

## MEMORUNADUM IN SUPPORT OF PLAINTIFFS'
## RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE'S ORDER
## DENYING MOTION FOR JURISDICTIONAL DISCOVERY

Plaintiffs Corr Wireless Communications, L.L.C., Cellular South, Inc., and Cellular

South Licenses, LLC (collectively "Cellular South") submit this Memorandum in support of

their Objections to the Magistrate Judge's June 5, 2013 Order Denying Motion for Jurisdictional

Discovery [Doc. 164] pursuant to Fed. R. Civ. P. 72(a).

## SUMMARY OF ISSUES RELATED TO THESE OBJECTIONS

The Magistrate Judge's Order reflects an apparent misunderstanding of the grounds

asserted for personal jurisdiction over AT&T Inc.  Even more significant for purposes of these

Objections, the Magistrate Judge appears to have misunderstood the information that Cellular

South seeks though its Motion for Jurisdictional Discovery [Doc. 141].  One thing is clear:

Cellular South is not engaged in a fishing expedition.

**The point of the requested discovery is to determine what AT&T Inc. itself did – as**

**opposed to what AT&T Mobility or other AT&T entities did.  It is clear that one or more**

**AT&T entities did in fact act at 3GPP and elsewhere to create Band 17 and to delay**

**development of Band 12. It is equally clear that those actions injured competition in Mississippi. The purpose of this discovery to establish what acts AT&T Inc. itself committed in furtherance of those anticompetitive actions so as to injure competition in Mississippi.**

Among the grounds asserted to support personal jurisdiction over AT&T Inc. is that AT&T Inc. itself committed acts as part of a joint enterprise with other AT&T entities (along with Qualcomm and Motorola) which constituted the commission of a tort in Mississippi through antitrust violations directed toward the relevant markets in Mississippi. The jurisdictional discovery seeking to show that AT&T Inc. itself was involved in the creation and utilization of Band 17 and the delay of Band 12 cannot properly be viewed as a fishing expedition. This is the classic type of information sought through jurisdictional discovery.

Cellular South submits that its well-pleaded allegations and the evidence it has presented regarding AT&T Inc.'s direct actions in furtherance of the conspiracy to injure competition in Mississippi are sufficient to establish a prima facie case of personal jurisdiction over AT&T Inc. *See* Pls.' Mem. Opp'n AT&T Inc.'s Mot. Dismiss [Doc. 145]. At a minimum, these well-pleaded allegations and evidence satisfy the preliminary showing requirement for jurisdictional discovery. The Court therefore should set aside the Magistrate Judge's Order and grant Cellular South's Motion for Jurisdictional Discovery, to allow Cellular South an opportunity to obtain necessary evidence to support its jurisdictional allegations and to refute AT&T Inc.'s denials before the Court rules on AT&T Inc.'s Rule 12(b)(2) motion.

PROCEDURAL BACKGROUND

AT&T Inc. filed its Rule 12(b)(2) motion to dismiss the Third Amended and Supplemental Complaint ("TASC") for lack of personal jurisdiction on February 27, 2013 [Doc.

133, 134].[1]  Cellular South responded to AT&T Inc.'s motion on April 3, 2013 [Doc. 144, 145]

and on that same date filed a separate motion for jurisdictional discovery [Doc. 141, 142].  The

Court has not yet ruled on AT&T Inc.'s 12(b)(2) motion.  The Magistrate Judge entered her

Order denying Cellular South's motion for jurisdictional discovery on June 5, 2013 [Doc. 164].

It is this Order from which Cellular South appeals pursuant to Rule 72(a).

      The Magistrate Judge denied Cellular South's motion for jurisdictional discovery based

on her determinations that (1) "Plaintiff has not satisfied the preliminary showing necessary to

obtain jurisdictional discovery" and (2) the proposed discovery requests "do not appear to relate

to any jurisdiction issues, but instead appear to be a fishing expedition to obtain evidence relating

to the merits of the case rather than the issue of whether AT&T is subject to personal jurisdiction

in the Northern District of Mississippi" [Doc. 164 at 1-2].  These findings indicate, first, a

misapprehension of the grounds asserted for personal jurisdiction over AT&T Inc. and, second, a

misreading of Cellular South's arguments as to why AT&T Inc.'s unsupported denials of the

TASC's well-pleaded jurisdictional allegations were insufficient to defeat personal jurisdiction

and why, if the Court were to consider AT&T Inc.'s unsupported denials, Cellular South should

be afforded an opportunity to conduct discovery to refute those denials in opposition to AT&T

Inc.'s Rule 12(b)(2) motion.[2]  The Magistrate Judge's Order is thus clearly erroneous and

contrary to law.

---

[1] The Magistrate Judge's Order erroneously characterizes this motion as "AT&T Inc.'s third motion to dismiss for lack of personal jurisdiction" [Doc. 164 at 1] and erroneously states that this Court previously granted AT&T Inc.'s "first two motions to dismiss" [*Id*. at 1 n.1].  The Court granted AT&T Inc.'s Rule 12(b)(2) motion once, on November 1, 2012 [Doc. 115, 116]. After the Court granted leave to amend, Cellular South filed the TASC on January 23, 2013 [Doc. 125].  AT&T Inc. filed its second Rule 12(b)(2) motion, seeking to dismiss the TASC, on February 27, 2013 [Doc. 133, 134].  It was in response to this second motion to dismiss that Cellular South moved for jurisdictional discovery.  [Doc. 141, 142].

<u>ARGUMENT</u>

Cellular South specifically alleges in Paragraph 45 of its Third Amended and

Supplemental Complaint (the "TASC") [Doc. 125] that:

- "AT&T Inc. . . . does not merely own the stock of its subsidiaries but is actively engaged in the operations of the wireless carrier business conducted by the subsidiaries, including AT&T Mobility LLC in Mississippi and throughout the United States.";

- "AT&T Inc. is found and transacts business in the State of Mississippi" – which "AT&T Inc. has previously admitted" in prior litigation;

- "AT&T Inc. actually directs, operates and oversees the wireless business operated by AT&T Mobility LLC.";

- "AT&T Inc. is directly involved in matters involving the wireless spectrum . . . made available to AT&T Mobility LLC for its use in operation of wireless operations.";

- "AT&T Inc. itself is actively engaged in the wireless industry by participating directly in FCC proceedings, and, in particular, the FCC proceedings relating to Cellular South's Interoperability Petition.";

- "AT&T Inc., itself, filed at least three separate comments opposing the Interoperability Petition . . . .";

- "AT&T Inc. . . . directly participated in the 3GPP proceedings related to the creation of Band 17 . . . .";

- "AT&T Inc. . . . took action at 3GPP as part of a concerted plan to create a private ecosystem for the use of AT&T Mobility LLC.";

- "AT&T Inc. and AT&T Mobility LLC acted jointly and together as part of a conspiracy with each other – and also with the other Defendants – to violate the antitrust laws of the United States.";

- "AT&T Inc. acted to cause 3GPP to create Band 17 even though no interference required that creation and the only purpose of that action was to create a private band for AT&T."; and

---

[2] The Magistrate Judge's Order gives no indication that she reviewed the jurisdictional arguments and evidence set forth in Cellular South's separate response to AT&T Inc.'s Rule 12(b)(2) motion [Doc. 145], despite Cellular South's explicit references to that response in both its opening brief and reply in support of its motion for jurisdictional discovery [*See* Doc. 142 at 5, Doc. 160 at 2 (both citing Doc. 145)].

- "AT&T Inc. and the other Defendants knew and understood that the effect of creating Band 17 would injure and restrain competition throughout the United States and in Mississippi."

TASC [Doc. 125] at ¶ 45;[3] *see also* TASC Exs. B [Doc. 125-2], F [Doc. 125-6], G [Doc. 125-7], and H [125-8]; Pls.' Resp. Opp'n AT&T Inc.'s Mot. Dismiss Ex. A [Doc. 144-2]; and Pls.' Resp. Opp'n Qualcomm's Renewed Mot. Dismiss Exs. B [Doc. 147-2], E [Doc. 147-5], F [Doc. 147-6], G [Doc. 147-7], and H [Doc. 147-8].

Cellular South has demonstrated in opposition to AT&T Inc.'s Rule 12(b)(2) motion that these allegations and evidence regarding AT&T Inc.'s **direct** (*not* imputed) acts of participation in the conspiracy to create Band 17 and to delay Band 12 are sufficient to establish personal jurisdiction over AT&T Inc. both (1) under the Clayton Act (a) because AT&T Inc. has previously admitted that it transacts business in Mississippi and (b) because AT&T Inc.'s co-conspirator, AT&T Mobility, transacts business in Mississippi, which contacts are properly attributable to AT&T Inc. for jurisdictional purposes; and (2) under the tort prong of the Mississippi long-arm statute because AT&T Inc. and its co-conspirators committed a tort, at least in part, in Mississippi. [Doc. 145].[4] *See generally Norris v. Krystaltech Int'l, Inc.*, 133 F. Supp. 2d 465, 469 (S.D. Miss. 2000) (co-conspirators' contacts with forum are properly imputed to a nonresident defendant for personal jurisdiction unless "plaintiffs' allegations of conspiracy are entirely conclusory, unsupported by any *factual* allegation"); *Insultherm, Inc. v. Tank Insulation, Int'l*, 909 F. Supp. 465, 468-69 (S.D. Tex. 1995) ("For purposes of this personal jurisdiction analysis, conspiracy to commit antitrust violations is in the nature of a tort. Thermacon's

---

[3] The TASC refers to AT&T Inc. throughout as "AT&T, Inc." (with a comma). Because AT&T Inc. omits the comma in its briefing, Cellular South does the same here.

[4] Cellular South does not waive its argument that the Clayton Act only requires that AT&T Inc. have requisite contacts with the United States, not specifically with the State of Mississippi.

conduct was directed at and caused injury to [Plaintiff] in Texas. Therefore, by conspiring with Insultherm to wrongfully bring an infringement action based on an invalid patent, Thermacon committed a tort in Texas, and is amenable to service of process under the Texas long arm statute.") (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 685-86 (5th Cir. 1977)) (internal citation omitted); *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) ("Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.") (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

AT&T Inc. submitted with its Rule 12(b)(2) motion an affidavit from employee Steven Threlked detailing AT&T Inc.'s corporate history, its separate corporate identity from its subsidiaries, and its lack of any employees or property located in Mississippi [Doc. 62-1]. Yet Mr. Threlkeld's affidavit says nothing to dispute the TASC's allegations regarding AT&T Inc.'s direct participation with the other Defendants in the unlawful conspiracy to carve Band 17 out from Band 12 and then to further delay standardization for what remained of Band 12.[5] AT&T Inc. asserts in the briefing on its motion, for example, that the explicit reference to "AT&T" in the 3GPP minutes [*see* Docs. 147-6, 147-7, and 147-8] was not actually meant to refer to AT&T Inc. as a 3GPP participant, but instead was a reference "only to AT&T generically" [Doc. 152 at

---

[5] Cellular South has made clear throughout the briefing on AT&T Inc.'s motion to dismiss that Cellular South does not seek to impute AT&T Mobility's conduct to AT&T Inc. under an "alter ego" theory. To the contrary, AT&T Inc. is subject to this Court's jurisdiction based on AT&T Inc.'s prior admission that it does business in Mississippi, its own direct actions in furtherance of the antitrust conspiracy, and its co-conspirators' contacts with the State of Mississippi pursuant to the conspiracy theory of jurisdiction. *See Norris*, 133 F. Supp. 3d at 469 (citing *Thomas v. Kadish,* 748 F.2d 276 (5th Cir.1984)); *Textor v. Board of Regents of No. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983).

7]. Yet AT&T Inc. has offered no evidence through Mr. Threlkeld's affidavit or otherwise to support this denial, nor does it identify the "AT&T" entity to which the 3GPP scrivener supposedly meant to refer if not to AT&T Inc.

AT&T Inc. similarly asserts that its CEO Randall Stephenson's characterization of "AT&T" as a "driver" of 3GPP standards [*see* Doc. 144-2 at 8] was a reference not to AT&T Inc., but instead to "the corporate family" (all but AT&T Inc.?) or "the brand AT&T." *Id*. at 9. But AT&T Inc. offers no affidavit from Mr. Stephenson in support, nor does Mr. Threlkeld's affidavit say anything to support this self-serving explanation by counsel of Mr. Stephenson's statements. Similarly, AT&T Inc. seeks to explain that even when AT&T Inc. submitted its FCC filings under its own name in opposition to the Interoperability Petition [*see* Docs. 147-2, 147-5, 147-6, 147-7, and 147-8], it did so only "on behalf of" its subsidiaries – sometimes expressly so, but sometimes not. *Id*. at 9 and n.8. Yet AT&T Inc. offers no evidence to support counsel's factual assertion that such filings under AT&T Inc.'s name were actually filed only on behalf of unnamed subsidiaries. Finally, AT&T Inc. asserts – again with zero evidence – that both the federal government and AT&T Inc. somehow tacitly agreed in the government's antitrust lawsuit against AT&T Inc. that the complaint's allegation – and AT&T Inc.'s express admission of the allegation – that AT&T Inc. does business in Mississippi [*see* Doc. 145 at 9] did not in fact mean that AT&T Inc. actually does business in Mississippi, but only that AT&T Mobility or some other, unidentified subsidiary of AT&T Inc. does business here. *Id*. at 12.

**AT&T Inc.'s unsupported denials of its direct participation in the actions of "AT&T" at 3GPP, before the FCC, and otherwise, unaccompanied by any evidence, are plainly insufficient to defeat Cellular South's jurisdictional allegations and supporting evidence**. *See In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 208 (2nd Cir. 2003)

("SKM concedes that one of its executives was present at the meeting in question, but argues that the meeting was a 'short culturally required courtesy meeting,' in which no price-fixing discussion took place. This factual argument, however, is not proper for resolution in the context of a motion to dismiss."). If the Court is to consider AT&T Inc.'s unsupported denials, however, Cellular South must be permitted an opportunity to conduct discovery regarding these jurisdictional allegations and denials before the Court rules on AT&T's motion to dismiss. *See Magnetic Audiotape*, 334 F.3d at 208 ("At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that SKM participated directly in a conspiracy, the effects of which were purposefully directed at the United States. Remand will provide the opportunity for full consideration by the court of the meeting in Korea with regard to the question of personal jurisdiction.")

"When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss." *LTA, Inc. v. Breeck*, 2011 WL 3841374, at *6 (S.D. Miss. Aug. 26, 2011) (internal quotations omitted). Thus, even if AT&T Inc.'s unsupported denials were competent to challenge jurisdiction, Cellular South's well-pleaded jurisdictional allegations and evidentiary support easily satisfy the preliminary showing threshold for jurisdictional discovery. *Royal Ten Cate USA, Inc. v. TTAH Trust Co. Ltd.*, 2012 WL 2376282, at *2 (W.D. Tex. June 22, 2012). "A preliminary showing is less than a prima facie showing; if the plaintiff made a prima facie showing, jurisdictional discovery would be unnecessary." *Id.* Cellular South is therefore entitled to jurisdictional discovery under settled Fifth Circuit law if it can "present 'factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts'" or "otherwise show that jurisdictional discovery would not be wholly futile." *Blessey Marine Servs. v. Jeffboat, LLC*, 2011 WL 651999, *6 (E.D.

La. Feb. 10, 2011) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); also citing *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)); *accord Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3rd Cir. 2009) (when "plaintiff's [jurisdictional] claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.") (internal quotations omitted); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.7 (jurisdictional discovery should be available "when there is some basis for believing that [it] would be fruitful."). Cellular South has met this burden with its well-pleaded allegations and supporting evidence regarding AT&T Inc.'s direct participation in the conspiracy to create Band 17 and to delay the development of Band 12 so as to injure Cellular South in the State of Mississippi.

Moreover, jurisdictional discovery is particularly appropriate here because the evidence to refute AT&T Inc.'s denials of Cellular South's jurisdictional allegations and AT&T Inc.'s spin on the evidentiary materials on which Cellular South relies is in the hands of AT&T Inc. and others over whom Cellular South has no control. Courts have long found it an abuse of discretion not to allow the plaintiff jurisdictional discovery in cases such as this, in which corporate affiliates such as AT&T Inc. and AT&T Mobility attempt to defeat personal jurisdiction through the intricacies of their corporate structures and operational details known only to themselves. Indeed, "discovery is particularly important here where each of the Defendants is a corporation and much of the information that Plaintiffs require to evaluate the nature of the relationships among the Defendants and the extent of their contacts with this forum, such as the franchise agreement, other contracts and transactional data, is publicly inaccessible and controlled by Defendants." *Orazi v. Hilton Hotels Corp.*, 2010 WL 4751728, *7 (E.D. Pa. Nov. 22, 2010) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3rd Cir. 2009)

(finding jurisdictional discovery "particularly important" when plaintiff is "faced with the difficult task of trying to establish personal jurisdiction over a corporation.")). Jurisdictional discovery has thus long been found appropriate in such circumstances:

> A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery. If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions.

*Surpitski v. Hughes–Keenan Corp.,* 362 F.2d 254, 255–56 (1st Cir. 1966) (quoted in *Metcalfe*, 566 F.3d at 336).

Cellular South does not impermissibly seek "merits" discovery. To the contrary, Cellular South seeks limited discovery **specifically targeted to AT&T Inc.'s direct participation in the conspiracy solely to refute AT&T Inc.'s denials of Cellular South's jurisdictional allegations.** The TASC's allegations regarding AT&T Inc. are very much like those in *Magnetic Audiotape*, in which the complaint alleged "that SKM, a Korean corporation, along with a number of other manufacturers and distributors of magnetic audiotape, conspired to fix the price of such tape in the United States" and specifically alleged that SKM "participated directly in the conspiracy, as well as indirectly, by directing the activities of employees of its United States subsidiary, SKMA, Inc." 334 F.3d at 206. Just as in *Magnetic Audiotape*, Cellular South has pointed to evidence including 3GPP minutes and FCC filings indicating that AT&T Inc. itself directly participated in the conspiracy to carve out Band 17 and to delay development of Band 12 so as to illegally restrain trade and increase AT&T Mobility's monopoly power in the relevant markets within the Northern District of Mississippi. "At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that [AT&T Inc.] participated directly in a conspiracy, the effects of which

were purposefully directed at [Mississippi]. Remand will provide the opportunity for full consideration by the court of [AT&T Inc.'s actions] with regard to the question of personal jurisdiction." 334 F.3d at 208; *see also Asevedo v. NBCUniversal Media, LLC*, 2013 WL 437999, \*9 (E.D. La. Feb. 4, 2013) ("The Court finds that Asevedo's request for discovery has merit because he has presented 'factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts.' Discovery may reveal whether NBCUniversal and Syfy have sufficient contacts with the forum as the alleged producers and/or broadcasters of *Dream Machines* to support a finding of personal jurisdiction.") (citations omitted). **Such discovery concerning AT&T Inc.'s direct participation in the conspiracy to restrain trade and increase its monopoly power in the Northern District of Mississippi does not simply relate to the merits of Cellular South's claims, but goes directly to the heart of the jurisdictional analysis.** The Magistrate Judge's failure to appreciate this distinction renders her Order Denying Jurisdictional Discovery clearly erroneous and contrary to law. The Court therefore should set the Order aside, and should grant Cellular South's motion to conduct the requested jurisdictional discovery.

<u>CONCLUSION</u>

Cellular South has established a prima facie case of personal jurisdiction over AT&T Inc. through its well-pleaded allegations and evidentiary materials demonstrating (1) AT&T Inc.'s prior admission that it transacts business in Mississippi; (2) the undisputed fact that AT&T Inc.'s co-conspirators transact business in Mississippi; and (3) AT&T Inc.'s and its co-conspirators' commission of a tort in Mississippi through antitrust violations purposefully directed toward relevant markets in Mississippi. AT&T Inc.'s unsupported denials of these allegations and evidence are insufficient to defeat jurisdiction.

11

As demonstrated above, however, if the Court should find AT&T Inc.'s denials sufficient to controvert Cellular South's well-pleaded allegations and evidence, then Cellular South has easily made the preliminary showing required for jurisdictional discovery. The Magistrate Judge's Order Denying Jurisdictional Discovery is thus clearly erroneous and contrary to law. The Court should reverse the Magistrate Judge's Order and grant Cellular South's Motion for Jurisdictional Discovery to allow Cellular South the opportunity to develop the evidence needed to further support its jurisdictional allegations and to refute AT&T Inc.'s denials thereof.

Dated: June 12, 2013.                    Respectfully submitted,

 /s/ Walter H. Boone
Alan W. Perry, MSB #4127
Daniel J. Mulholland, MSB #3643
Walter H. Boone, MSB #8651
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
City Centre, Suite 200
200 South Lamar Street
Jackson, Mississippi 39201
Tel.: 601-969-7833
Fax: 601-960-8613
whboone@fpwk.com

Charles L. McBride, Jr., MSB #8995
M. Patrick McDowell, MSB # 9746
Joseph A. Sclafani, MSB #99670
Katie L. Wallace, MSB #101919
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Tel.: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, MSB#8712
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
P. O. Box 650
Jackson, MS 39205
Phone: 601-965-1900
Fax: 601- 965-1901
wjohnson@watkinseager.com

*Counsel for Plaintiffs Cellular South, Inc.,
Corr Wireless Communications, L.L.C. and
Cellular South Licenses, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2013, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to the following:

**Attorneys for Defendants AT&T Mobility LLC, and
AT&T, Inc.**

David W. Upchurch
Holland Ray Upchurch and Hillen
P.O. Drawer 409
Tupelo, MS 38802-0409
dwu@hruhpa.com

Michael K. Kellogg (PHV)
William J. Rinner (PHV)
Kenneth M. Fetterman (PHV)
Aaron M. Panner (PHV)
Kellogg, Huber, Hansen, Todd, Evans & Figel P.L.L.C.
1615 M. Street NW, Suite 400
Washington, D.C. 20036
mkellogg@khhte.com
wrinner@khhte.com
kfetterman@khhte.com
apanner@khhte.com

***Attorneys for Defendant Qualcomm Incorporated***

Sandy Sams
Margaret Sams Gratz
Otis R. Tims
Mitchell McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802
ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com

Yonatan Even (PHV)
Roger G. Brooks (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com

***Attorneys for Defendant Motorola Solutions, Inc.***

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA  90071
jmurray@crowell.com


THIS, the 12th day of June, 2013.


       /s/ Walter H. Boone       _____