## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**CORR WIRELESS COMMUNICATIONS, L.L.C.**
**CELLULAR SOUTH, INC., AND**
**CELLULAR SOUTH LICENSES, LLC**                                            **PLAINTIFFS**

**vs.**                                            **CIVIL ACTION NO. 3:12-cv-00036-SA-SAA**

**AT&T, INC., AT&T MOBILITY LLC,**
**MOTOROLA SOLUTIONS, INC., AND**
**QUALCOMM INCORPORATED**                                            **DEFENDANTS**

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE'S ORDER
## DENYING MOTION FOR JURISDICTIONAL DISCOVERY

Plaintiffs Corr Wireless Communications, L.L.C., Cellular South, Inc., and Cellular South Licenses, LLC (collectively "Cellular South") submit this Reply Memorandum in support of their Objections to the Magistrate Judge's June 5, 2013 Order Denying Motion for Jurisdictional Discovery [Doc. 164] pursuant to Fed. R. Civ. P. 72(a).

As demonstrated in Cellular South's opening brief and below, the Magistrate Judge's Order Denying Jurisdictional Discovery is clearly erroneous and contrary to law. Cellular South submits that it has established a prima facie case of personal jurisdiction over AT&T Inc. through its well-pleaded allegations and supporting evidence. At a minimum, Cellular South's allegations and evidence are sufficient to make the preliminary showing necessary to develop additional supporting evidence through the limited jurisdictional discovery sought by Cellular South. The Court therefore should set aside the Magistrate Judge's Order and grant Cellular South's motion for jurisdictional discovery.

I.      **The Relevant Jurisdictional Analysis**

A.      **The Mississippi Long-Arm Statute**

AT&T Inc. cannot reasonably dispute that a nonresident defendant's acts committed

outside the State of Mississippi pursuant to an unlawful agreement to restrain trade and

monopolize within the State of Mississippi – resulting in foreseeable injury to competition within

the State of Mississippi – constitute the commission of a tort in whole or in part within the State

as contemplated by the Mississippi long-arm statute.  *See Waffenschmidt v. McKay,* 763 F.2d

711, 720 (5th Cir. 1985) ("Mississippi allows for service on nonresidents who commit acts

outside the state with foreseeable effects resulting within the forum.") (citing *Mississippi*

*Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 (5th Cir. 1982)); *Insultherm, Inc.*

*v. Tank Insulation, Int'l, Inc.*, 909 F. Supp. 465, 468 (S.D. Tex. 1995) ("For purposes of this

personal jurisdiction analysis, conspiracy to commit antitrust violations is in the nature of a tort.

Thermacon's conduct was directed at and caused injury to [Plaintiff] in Texas.  Therefore, by

conspiring with Insultherm to wrongfully bring an infringement action based on an invalid

patent, Thermacon committed a tort in Texas, and is amenable to service of process under the

Texas long arm statute.") (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 685-86 (5th Cir.

1977), for its holding that "where conduct violating antitrust laws occurred outside Texas,

defendant was subject to service under the Texas long arm statute because the conduct 'produced

reasonably foreseeable harm within Texas.'").

In its November 1, 2012 Memorandum Opinion granting AT&T Inc.'s 12(b)(2) motion,

this Court cited *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996), for the

proposition that "[i]n determining where the injury occurred for jurisdictional purposes, actual

injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury." [Doc. 116 at 12-13.] But *Jobe* is easily distinguished. Mr. Jobe was a Louisiana resident who filed suit in Mississippi on behalf of a Louisiana corporation (Air New Orleans) that had filed for bankruptcy protection in Louisiana. *Id*. at 752. The suit alleged that the non-Mississippi resident defendants tortiously breached an agreement to deliver six airplanes to the Louisiana corporation in 1987. *Id*. It was only after the tortious breach of contract and ANO's resulting bankruptcy filing in Louisiana that ANO relocated its operations – for one month – from Louisiana to Gulfport, Mississippi in May 1988. *Id*. The court thus understandably found that ANO's injuries occurred in Louisiana rather than Mississippi because:

> ANO's principal place of business when the defendants conducted their alleged tortious activities was Metairie, Louisiana; the alleged tortious conduct culminated in ANO's financial ruin and bankruptcy filing in the Eastern District of Louisiana in January 1988; ANO's actual injuries and many of the economic consequences resulting from those injuries (including its bankruptcy filing) occurred well-before ANO attempted to shift its operations from Louisiana to Gulfport, Mississippi in May 1988. Accepting ANO's pleadings and allegations as true, it is nonetheless clear on this record that ANO's actual injuries occurred and were completed outside of Mississippi.

*Id*. at 754-55.

By contrast, Cellular South "is a **Mississippi** corporation with its principal place of business in Ridgeland, Mississippi." TASC [Doc. 125] at ¶ 42. Cellular South provides wireless service to "customers in all of **Mississippi** and parts of Tennessee, Alabama, and Florida." *Id*. at ¶ 8. The TASC thus defines "Cellular South's Existing Service Area" as "most of **Mississippi**, some portions of Tennessee, Alabama, and the Florida Panhandle." *Id*. at ¶ 66. Cellular South "purchased numerous Lower 700 MHz spectrum licenses in **Mississippi** and in the surrounding

states . . . for the purpose of operating a 4G-LTE network in Cellular South's 700 MHz License Area," *id*. at ¶ 112, which the TASC defines as "most of **Mississippi**, Alabama, and Tennessee" plus "portions of surrounding Florida, Kentucky, Arkansas, and Louisiana." *Id*. at ¶ 102. The TASC alleges that AT&T Inc.'s wrongful acts have adversely affected Cellular South's ability to compete in its Existing Service Area and its License Area (both expressly defined to include **Mississippi**), which "will in turn reduce or limit price competition, competitive innovation, and other forms and benefits of competition" in these Areas. *Id*. at ¶ 414. Moreover, the TASC alleges that "AT&T Inc. and the other Defendants knew and understood that that the effect of creating Band 17 would injure and restrain competition throughout the United States and in **Mississippi**." *Id*. at ¶ 45. Indeed, the TASC specifically alleges "that AT&T Inc. engaged in concerted action with its direct or indirect subsidiary AT&T Mobility LLC to unlawfully restrain competition in the wireless carrier market in **Mississippi**." *Id*. at ¶ 52.

Thus, unlike in *Jobe*, the complaint here does not allege mere "economic effects or other collateral consequences" in Mississippi stemming from some injury that occurred outside of Mississippi. To the contrary, the TASC alleges that AT&T Inc. and its co-conspirators intentionally restrained competition in Mississippi – which the TASC specifically defines as the relevant geographic market for Cellular South's antitrust claims. The facts of this case thus hardly compare to those of *Jobe*, in which the Louisiana plaintiff attempted to establish Mississippi long-arm jurisdiction solely on the fortuity that the Louisiana corporation relocated to Mississippi for one month after the defendants' tortious conduct had already allegedly driven

the corporation into bankruptcy in Louisiana. *Jobe* thus has no bearing on the long-arm analysis here.[1]

### B. Due Process

AT&T Inc. likewise cannot reasonably dispute that application of the Mississippi long-arm statute to exercise specific jurisdiction over it here – to require AT&T Inc. to answer in Mississippi for its participation in the unlawful agreement to restrain competition and monopolize within Mississippi – comports with due process. The Fifth Circuit resolved this issue almost thirty years ago in *Waffenschmidt*:

> Respondents allege that because they committed no act in Mississippi, they are not subject to the jurisdiction of courts located in that state, including United States district courts. As *Mississippi Interstate* illustrates, courts may assert jurisdiction of a person who acts outside the forum, but causes effects within it. . . . The jurisdictional issue turns solely on the consequences which their acts had in Mississippi. The court is not trying to assert general in personam jurisdiction over these respondents for causes of action unrelated to their actions; it merely is holding them responsible for the intended consequences which their nonforum activities had [in Mississippi].

---

[1] Cellular South demonstrated in its opening brief and in its brief in opposition to AT&T Inc.'s Rule 12(b)(2) motion that AT&T Inc.'s co-defendants' tortious conduct in Mississippi is properly attributed to AT&T Inc. under the conspiracy theory of jurisdiction. [Doc. 166 at 5-6; 145 at 4-13.] *See also Crompton Corp. v. Clariant Corp.,* 221 F. Supp. 2d 683, 690-92 (M.D. La. 2002); *Kentucky Speedway, LLC v. NASCAR,* 410 F. Supp. 2d 592, 598-99 (E.D. Ky. 2006) ("Simply put, if one co-conspirator commits acts in the forum which would justify the forum court in exercising personal jurisdiction over it, those acts are attributed to the other co-conspirators and personal jurisdiction exists over them as well."); *Gibbs v. PrimeLending,* 381 S.W.3d 829, 834 (Ark. 2011) ("[W]e find nothing that prohibits the use of the conspiracy theory of jurisdiction. . . . As noted by the Delaware Supreme Court, 'a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws.'" (quoting *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.,* 449 A.2d 210, 225 (Del. 1982)). Cellular South's requested jurisdictional discovery is limited, however, to AT&T Inc.'s direct actions in furtherance of the conspiracy, not those of its co-defendants.

763 F.2d at 722-23; *see also Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) ("Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.") (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)); *Insultherm*, 909 F. Supp. at 468-69; *Crompton Corp. v. Clariant Corp.,* 221 F. Supp. 2d 683, 691-92 (M.D. La. 2002) (foreign defendant Daicel Chemical Industries, which allegedly participated in anticompetitive agreement *not* to sell its product anywhere in the United States, "knew that the injury would be felt where the consumer purchased the product, in this case Taft, Louisiana, [such] that Daicel should have reasonably expected that it could be 'haled into court' here for its participation in this anti-competitive agreement").

As detailed in Cellular South's opening brief [Doc. 166], the TASC expressly alleges that AT&T Inc. directly participated in the 3GPP proceedings through which AT&T Inc. and its co-defendants unlawfully created Band 17 and delayed standardization of Band 12 – specifically, that AT&T Inc. "directly participated in the 3GPP proceedings related to the creation of Band 17" and "took action at 3GPP as part of a concerted plan to create a private ecosystem for the use of AT&T Mobility LLC." TASC at ¶ 45.[2] The TASC alleges that AT&T Inc. committed these acts for the specific purposes of restraining competition and increasing AT&T Mobility's monopoly power within Cellular South's Existing Service Area and its 700 MHz License Area – which AT&T Inc. and the other defendants **knew** included the State of Mississippi. *See* TASC at ¶¶ 52, 66, 102. Again, the TASC alleges that "AT&T Inc. and the other Defendants knew and

---

[2] AT&T Inc.'s assertion that "Plaintiffs allege no facts to support the assertion that AT&T Inc., rather than its subsidiaries, played any role in the adoption of Band 17" [Doc. 168 at 4] is thus flat wrong.

understood that that the effect of creating Band 17 would injure and restrain competition throughout the United States and in **Mississippi**." *Id*. at ¶ 45. And the TASC specifically alleges "that AT&T Inc. engaged in concerted action with its direct or indirect subsidiary AT&T Mobility LLC to unlawfully restrain competition in the wireless carrier market in **Mississippi**." *Id*. at ¶ 52.

Cellular South's allegations and supporting evidence thus establish that, like the nonresident corporate defendant in *Crompton,* AT&T Inc. participated in an anticompetitive agreement from which it knew the injury would be felt in Mississippi. AT&T Inc. thus should reasonably expect to be haled into a Mississippi court to answer for its participation in that unlawful agreement. *Crompton,* 221 F. Supp. 2d at 692. As in *Waffenschmidt,* it does not violate due process for this Mississippi court to hold AT&T Inc. responsible for the intended consequences which its nonforum activities had in Mississippi. 763 F.2d at 723.

## II. The Jurisdictional Discovery Analysis

As demonstrated above, personal jurisdiction over AT&T Inc. is premised on Cellular South's allegations and supporting evidence that AT&T Inc. directly participated in an unlawful agreement to restrain competition which AT&T Inc. knew would cause – and which did in fact cause – injury in Mississippi. Cellular South submits that its well-pleaded allegations and the evidence presented in opposition to AT&T Inc.'s Rule 12(b)(2) motion regarding AT&T Inc.'s direct role in this agreement to restrain competition in Mississippi are sufficient to establish a prima facie case of personal jurisdiction in Mississippi. *See supra* and Pls.' Mem. Opp'n AT&T Inc.'s Mot. Dismiss [Doc. 145]; TASC [Doc. 125] at ¶ 45 and Exs. B [Doc. 125-2], F [Doc. 125-6], G [Doc. 125-7], and H [125-8]; Pls.' Resp. Opp'n AT&T Inc.'s Mot. Dismiss Ex. A [Doc.

144-2]; and Pls.' Resp. Opp'n Qualcomm's Renewed Mot. Dismiss Exs. B [Doc. 147-2], E [Doc. 147-5], F [Doc. 147-6], G [Doc. 147-7], and H [Doc. 147-8].

At a minimum, Cellular South's well-pleaded allegations and evidence satisfy the preliminary showing threshold for jurisdictional discovery. *See Royal Ten Cate USA, Inc. v. TTAH Trust Co. Ltd.*, 2012 WL 2376282, at *2 (W.D. Tex. June 22, 2012) ("A preliminary showing is less than a prima facie showing; if the plaintiff made a prima facie showing, jurisdictional discovery would be unnecessary."). Cellular South is entitled to jurisdictional discovery because it has "present[ed] 'factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts'" or "otherwise show that jurisdictional discovery would not be wholly futile." *Blessey Marine Servs. v. Jeffboat, LLC*, 2011 WL 651999, *6 (E.D. La. Feb. 10, 2011) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); also citing *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)); *accord Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3rd Cir. 2009) (when "plaintiff's [jurisdictional] claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.") (internal quotations omitted); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.7 (jurisdictional discovery should be available "when there is some basis for believing that [it] would be fruitful.").

Cellular South has met this burden with its well-pleaded allegations and supporting evidence regarding AT&T Inc.'s direct participation in the conspiracy to create Band 17 and to delay the development of Band 12 so as to injure competition in the State of Mississippi. Conversely, AT&T Inc. has offered **zero** evidence to dispute Cellular South's allegations and evidence supporting the exercise of specific jurisdiction: **zero** evidence to dispute that AT&T

Inc. directly participated with the other the defendants in the 3GPP proceedings to create Band 17 as a separate ecosystem for AT&T Mobility; **zero** evidence to dispute that AT&T Inc. directly participated with the other defendants to wrongfully delay the standardization of Band 12 as an alternative to Band 17; **zero** evidence to dispute that AT&T Inc. directly participated in the threats and retaliation against Cellular South for filing the Interoperability Petition; and **zero** evidence to dispute that AT&T knew that the injuries from these wrongful acts would occur primarily in Mississippi – the center of Cellular South's business operations, Cellular South's customer base, Cellular South's existing service area, and Cellular South's new 700 MHz license area specifically intended to carry Cellular South's new 4G-LTE service. AT&T Inc.'s unsupported denials and arguments of counsel are plainly insufficient to defeat Cellular South's well-pleaded and supported jurisdictional allegations. *See In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 208 (2nd Cir. 2003) ("SKM concedes that one of its executives was present at the meeting in question, but argues that the meeting was a 'short culturally required courtesy meeting,' in which no price-fixing discussion took place. This factual argument, however, is not proper for resolution in the context of a motion to dismiss.").

If the Court is inclined to consider AT&T Inc.'s unsupported denials and arguments, Cellular South must be permitted an opportunity to conduct discovery to further develop its evidence that AT&T Inc. directly participated in the unlawful agreement with knowledge that it would injure competition in Mississippi. Such discovery is not a "fishing expedition" but goes directly to the heart of Cellular South's jurisdictional allegations. *See Magnetic Audiotape*, 334 F.3d at 208 ("At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that SKM participated directly in a conspiracy, the effects of which were purposefully directed at the United States.

Remand will provide the opportunity for full consideration by the court of the meeting in Korea with regard to the question of personal jurisdiction.").[3]

Jurisdictional discovery likewise is appropriate here to allow Cellular South to respond to AT&T Inc.'s unsupported contentions regarding when "AT&T" does and does not mean "AT&T Inc." As Cellular South pointed out it in its opening brief, for example, AT&T Inc. asserted in support of its Rule 12(b)(2) motion that the reference to "AT&T" in the minutes of the 3GPP proceedings in which Band 17 was created [*see* Docs. 147-6, 147-7, and 147-8] was not intended to refer to AT&T Inc. as a 3GPP participant, but instead was intended to refer "only to AT&T generically," whatever that means. [Doc. 152 at 7]. Cellular South must be permitted to respond to this self-serving assertion with evidence developed through discovery. Cellular South likewise should be permitted to conduct discovery regarding AT&T Inc.'s unsupported assertions that its CEO Randall Stephenson's characterization of "AT&T" as a "driver" of 3GPP standards [*see* Doc. 144-2 at 8] was a reference not to AT&T Inc., but instead to "the corporate family" or "the brand AT&T" [*id*. at 9], and that when AT&T Inc. submitted its FCC filings under its own name in opposition to the Interoperability Petition [*see* Docs. 147-2, 147-5, 147-6, 147-7, and 147-8], it did so only "on behalf of" of unnamed subsidiaries [*id*. at 9 and n.8]. As noted in Cellular South's opening brief, courts have long found it an abuse of discretion not to allow the plaintiff jurisdictional discovery in cases such as this, in which corporate defendants rely on corporate structures and formalities known only to themselves to defeat jurisdiction. *See,*

---

[3] AT&T Inc. correctly points out that Cellular South's proposed discovery does not "seek[] facts to suggest that AT&T Inc. transacts business in Mississippi, owns spectrum, or operates its own wireless network in Mississippi" but only "probe[s] into actions taken [by AT&T Inc.] in connection with the adoption of Band 17 . . ." [Doc. 169 at 7.] As demonstrated above, evidence that AT&T Inc. directly participated in the unlawful conspiracy to restrain competition in Mississippi through the adoption of Band 17 will satisfy both the tort prong of Mississippi's long-arm statute and due process.

*e.g., Orazi v. Hilton Hotels Corp.*, 2010 WL 4751728, \*7 (E.D. Pa. Nov. 22, 2010) ("[D]iscovery is particularly important here where each of the Defendants is a corporation and much of the information that Plaintiffs require to evaluate the nature of the relationships among the Defendants and the extent of their contacts with this forum, such as the franchise agreement, other contracts and transactional data, is publicly inaccessible and controlled by Defendants.") (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3rd Cir. 2009) (finding jurisdictional discovery "particularly important" when plaintiff is "faced with the difficult task of trying to establish personal jurisdiction over a corporation.")); *Surpitski v. Hughes–Keenan Corp.*, 362 F.2d 254, 255–56 (1st Cir. 1966) ("A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery.") (quoted in *Metcalfe*, 566 F.3d at 336).

Cellular South thus does not impermissibly seek "merits" discovery, but seeks only limited discovery – specifically targeted to AT&T Inc.'s direct participation in the unlawful agreement to restrain competition in Mississippi – to refute AT&T Inc.'s denials of Cellular South's jurisdictional allegations. Cellular South's request for jurisdictional discovery is thus much like that in *Magnetic Audiotape*, in which the plaintiff alleged "that SKM, a Korean corporation, along with a number of other manufacturers and distributors of magnetic audiotape, conspired to fix the price of such tape in the United States" and specifically alleged that SKM "participated directly in the conspiracy, as well as indirectly, by directing the activities of employees of its United States subsidiary, SKMA, Inc." 334 F.3d at 206. Just as in *Magnetic Audiotape*, Cellular South has pointed to evidence including 3GPP minutes and FCC filings indicating that AT&T Inc. itself directly participated in the conspiracy to carve out Band 17 and to delay development of Band 12 so as to illegally restrain competition and increase AT&T

Mobility's monopoly power in the State of Mississippi. "At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that [AT&T Inc.] participated directly in a conspiracy, the effects of which were purposefully directed at [Mississippi]. Remand will provide the opportunity for full consideration by the court of [AT&T Inc.'s actions] with regard to the question of personal jurisdiction." 334 F.3d at 208; *see also Asevedo v. NBCUniversal Media, LLC*, 2013 WL 437999, *9 (E.D. La. Feb. 4, 2013) ("The Court finds that Asevedo's request for discovery has merit because he has presented 'factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts.' Discovery may reveal whether NBCUniversal and Syfy have sufficient contacts with the forum as the alleged producers and/or broadcasters of *Dream Machines* to support a finding of personal jurisdiction.") (citations omitted).

### III.   Conclusion

As demonstrated above, the Magistrate Judge's Order Denying Jurisdictional Discovery is clearly erroneous and contrary to law. If the Court does not find that Cellular South has already established a prima facie case of personal jurisdiction over AT&T Inc., then the Court should set aside the Magistrate Judge's Order and grant Cellular South's motion to conduct the requested jurisdictional discovery.

Respectfully submitted,

/s/ Alan W. Perry
Alan W. Perry, MSB #4127
Daniel J. Mulholland, MSB #3643
Walter H. Boone, MSB #8651
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
City Centre, Suite 200
200 South Lamar Street
Jackson, Mississippi 39201
Tel.: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Jr., MSB #8995
M. Patrick McDowell, MSB # 9746
Joseph A. Sclafani, MSB #99670
Katie L. Wallace, MSB #101919
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Tel.: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, MSB#8712
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
P. O. Box 650
Jackson, MS 39205
Phone: 601-965-1900
Fax: 601- 965-1901
wjohnson@watkinseager.com

*Counsel for Plaintiffs Cellular South, Inc.,*
*Corr Wireless Communications, L.L.C. and*
*Cellular South Licenses, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2013, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to the following:

**_Attorneys for Defendants AT&T Mobility LLC, and AT&T, Inc._**

David W. Upchurch
Holland Ray Upchurch and Hillen
P.O. Drawer 409
Tupelo, MS 38802-0409
dwu@hruhpa.com

Michael K. Kellogg (PHV)
William J. Rinner (PHV)
Kenneth M. Fetterman (PHV)
Aaron M. Panner (PHV)
Kellogg, Huber, Hansen, Todd, Evans & Figel P.L.L.C.
1615 M. Street NW, Suite 400
Washington, D.C. 20036
mkellogg@khhte.com
wrinner@khhte.com
kfetterman@khhte.com
apanner@khhte.com

**_Attorneys for Defendant Qualcomm Incorporated_**

Sandy Sams
Margaret Sams Gratz
Otis R. Tims
Mitchell McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802
ssams@mitchellmcnutt.com
mgratz@mitchellmcnutt.com
otims@mitchellmcnutt.com

Yonatan Even (PHV)
Roger G. Brooks (PHV)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
yeven@cravath.com
rgbrooks@cravath.com

14

***Attorneys for Defendant Motorola Solutions, Inc.***

Jim M. Greenlee
James D. Johnson
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 S. Lamar, Ste. A
P.O. Drawer 707
Oxford, MS 38655
jgreenlee@holcombdunbar.com
jdjohnson@holcombdunbar.com

John S. Gibson (PHV)
Chahira Solh (PHV)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
jgibson@crowell.com
csolh@crowell.com

Jason C. Murray (PHV)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA  90071
jmurray@crowell.com

       /s/ Alan W. Perry
       ALAN W. PERRY