IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CORR WIRELESS
COMMUNICATIONS, L.L.C.,
CELLULAR SOUTH, INC., and
CELLULAR SOUTH LICENSES, LLC                                PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:12CV036- SA

AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC.,
QUALCOMM INCORPORATED, and
JOHN DOES 1-10                                              DEFENDANTS

MEMORANDUM OPINION

Plaintiffs originally filed this anti-trust matter on April 2, 2012. After Defendants filed motions to dismiss, Plaintiffs amended their complaint and added a defendant in June of 2012. Analyzing the allegations of the First Amended Complaint, the Court granted the Defendants' motions to dismiss pursuant to Rule 12(b)(6) finding that Plaintiffs' amended complaint failed to state a claim for which they were entitled to relief. The Court additionally dismissed AT&T Inc. as a party defendant under Rule 12(b)(2). Plaintiffs then requested and were granted the right to again amend their complaint by the magistrate judge [124].

Defendants have appealed that order allowing Plaintiffs to amend the complaint [126] on the basis that the order allowing amendment does not bind the district judge in deciding the motions to dismiss. Because Plaintiffs have acknowledged that the magistrate judge's order granting the motion to amend does not require this Court to find that the Third Amended Complaint states a claim for relief, that appeal is granted and the magistrate judge's order affirmed. Defendants thereafter filed motions to dismiss as to the Third Amended Complaint. See [130], [135], [136]. In addition to those dispositive motions, Qualcomm requested that the

Court judicially notice documents attached to its motion for dismissal [132], and Plaintiff filed a motion seeking to exclude matters outside of the pleadings [143]. In deciding the merits of the motions to dismiss, the Court has only reviewed the pleadings and those documents attached thereto. Accordingly, Qualcomm's request for judicial notice is DENIED, and Plaintiffs' motion to exclude matters outside the pleadings is GRANTED.

Nevertheless, because the Plaintiffs fail to plausibly allege the existence of an unlawful conspiracy, the Court dismisses the Third Amended Complaint. In addition to the following findings, the Court additionally adopts and incorporates the findings and legal conclusions from its first Order [101] and Memorandum Opinion [100] granting Defendants' motions to dismiss and reiterates here the necessary standard.

*Motion to Dismiss Standard*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004) and Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). To withstand a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570–72, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Rule 8 of the Federal Rules of Civil Procedure sets out the fundamental pleading standard for civil litigation and governs all claims in a civil suit, requiring "a short plain statement of the

claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. 1955. Factual allegations must be enough to raise a right to relief above the speculative level. Id. Although the Supreme Court in Twombly stressed that it did not impose a probability standard at the pleading stage, the allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. Id. at 557, 127 S. Ct. 1955; see also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all of the factual allegations contained in the complaint. Twombly, 550 U.S. at 555-56, 127 S. Ct. 1955 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 326–27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). But, a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," which will not defeat a Rule 12(b)(6) motion to dismiss. Plotkin v. IP Axess, Inc., 407 F.3d 690, 696 (5th Cir. 2005) (citing Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004)).

In Iqbal, the Court formalized a two-pronged approach to apply the underlying jurisprudential principles of Twombly. The first prong requires the Court to separate factual allegations from legal conclusions. Id. The Court in Iqbal dismissed those allegations deemed to be "conclusory" on the basis that bare legal conclusions are not entitled to the privilege that all

3

well-pleaded facts be taken as true at the motion to dismiss stage. Id.[1] The second prong then applies the plausibility test to the remaining allegations. Id. (explaining that although the court must "take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). That two-pronged approach is now the standard for evaluating the plausibility of a complaint under Rule 8(a)(2).

*Discussion and Analysis*

In the Third Amended Complaint, Plaintiffs added seventy-four paragraphs to the 146 page, 432 paragraph First Amended Complaint in an attempt to surpass the legal burden outlined

---

[1] Iqbal illustrated its analysis of the first prong as follows:

We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." Complaint ¶ 96, App. to Pet. for Cert. 173a–174a. The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, id., ¶ 10, at 157a, and that Mueller was "instrumental" in adopting and executing it, id., ¶ 11, at 157a. These bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group ." Feeney, 442 U.S., at 279, 99 S. Ct. 2282, 60 L. Ed. 2d 870. As such, the allegations are conclusory and not entitled to be assumed true. Twombly, *supra*, 550 U.S., at 554–555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. We do not so characterize them any more than the Court in Twombly rejected the plaintiffs' express allegation of a "'contract, combination or conspiracy to prevent competitive entry,'" id. at 551, 127 S. Ct. 1955, 167 L. Ed. 2d 929, because it thought that claim too chimerical to be maintained. It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

Id. at 680, 129 S. Ct. 1937.

above. Among the new allegations, Plaintiffs adamantly allege that the interference concerns cited by Defendants as justifying the creation of Band 17 were pretextual. Plaintiffs contend that because Band 17 was not necessary to deal with alleged interference concerns, Defendants' independent excuse of interference to justify the creation of Band 17 is sufficient to allege a plausible conspiracy. Indeed, Plaintiffs contend that because the balkanization of Band 12 was against the self-interest of all Defendants, except the AT&T Defendants, there could be no plausible explanation for such conduct except an agreement among the group.

As noted in the Court's previous Memorandum Opinion dismissing the First Amended Complaint, ". . . Plaintiffs provide no factual allegations to plausibly show the existence of an agreement. That is, there are no allegations of when such a purported agreement happened, nor are there facts showing that particular individuals met at particular times, or even what such an alleged agreement entailed." In the Third Amended Complaint, Plaintiffs have simply added another conjecture to consider determining the plausibility of a conspiracy, indeed, another "had to have" an agreement argument. However, as the Court noted in its previous opinion, Plaintiffs failed to allege specific facts necessary as required by Rule 12(b)(6). Moreover, "[c]ircumstantial evidence of parallel behavior must be pled in 'a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 226–27 (3d Cir. 2011) (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Parallel conduct in itself is insufficient to state a claim for conspiracy because it is 'consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions in the market.'" Id. (quoting Twombly, 550 U.S. at 554, 127 S. Ct. 1955). Plaintiffs have merely suggested that because the actions taken by Defendants were allegedly against their

self-interest and/or technically unjustified, that those actions evidence an agreement. The Court finds this argument insufficient considering the mandates of Twombly and Iqbal. Indeed, "[t]he resulting 'nub' of plaintiff's Complaint must describe more than parallel conduct; it must include 'factual enhancements' that raise the entitlement to relief above the speculative level." TruePosition, Inc. v. LM Ericsson Tele. Co., 2012 WL 3584626 *21 (E.D. Pa. Aug. 21, 2012). The Court further notes that this pretextual argument was considered and rejected in its previous analysis on the First Amended Complaint.

Plaintiffs further cite the 3GPP process as failing to provide meaningful safeguards to ensure that process was not used to injure competition. Indeed, Plaintiffs assert, because the 3GPP process failed to provide those meaningful safeguards, the action handed down from that entity failed to provide a considered and credible judgment that does not adversely impact non-members for the benefit of those who control the decision. Plaintiffs fail to counter the Court's determination that the 3GPP process was "followed to the letter," or the Court's determination that Plaintiffs presented no "facts demonstrating procedural irregularities within the process, that the 3GPP process was subverted or turned into a sham, or that the Defendants agreed to employ – or indeed did employ – any improper practices within the standard setting process." Further, the Court earlier held that

> The highly complex and technical arguments in favor of creating Band Class 17 were set out in writing for evaluation by experts, and the concerns relating to such creation of Band Class 17 were duly contemplated at 3GPP meetings. The 3GPP acted by a consensus as it relates to the creation of Band Class 17, and there was no objection from any person or entity, including the Plaintiffs and Verizon Wireless, who also holds spectrum licenses in the Lower A Block.

Plaintiffs now claim that there were no meaningful safeguards at 3GPP to prevent the Defendants from biasing the process. The cases cited by Plaintiffs indicate that there is the

6

possibility of actions taken in standard-setting organizations that are unreasonably anti-competitive. See Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 309-10 (3d Cir. 2007). The Third Circuit has noted that judicial acceptance of private standard setting is not without limits. Id. However, as long as the standard setting process is conducted in a nonpartisan manner offering procompetitive benefits together with "meaningful safeguards" that "prevent the standard-setting process from being biased by members with economic interests in stifling product competition," that process should not be deemed anticompetitive under antitrust law. Id. (citing Allied Tube, 486 U.S. at 501, 108 S. Ct. 1931)). However, without allegations that those processes were tainted by the Defendants, the Court is unable to find fault with the 3GPP or determine that Plaintiffs' allegations as to actions taken in the 3GPP process violated antitrust law. See Clamp-All Corp. v. Cast Iron Soil Pipe Inst., 851 F.2d 478 (1st Cir. 1988) (finding that where plaintiff alleged no improper practices or procedures in standard-setting process, evidence was insufficient to go to the jury). Indeed, the Plaintiffs aver that "meaningful safeguards" were not available at the 3GPP, but neglect to allege what proper safeguards were necessary to prevent the standard-setting process from being biased. The Court previously acknowledged that the 3GPP had hundreds of members. The creation of Band 17 was on the meeting agenda at 3GPP for several months. Motorola, Qualcomm, Ericsson, and AT&T submitted public submissions regarding the creation of Band 17. The final decision approving the creation of Band 17 was passed without objection. Further, Plaintiffs do not dispute that they had the option of being members of 3GPP and voicing their opinions as to the standard-setting decisions made by that group.

As for the allegations relating to the delay of standards for Band 12 and the denial of roaming by AT&T and any exclusivity agreements by AT&T and handset providers, Plaintiffs

have asserted no allegation different or more detailed than those which were alleged in the First Amended Complaint. To that end, the Court reiterates its holding in the Memorandum Opinion [100] dismissing the First Amended Complaint.

Because Plaintiffs have again failed to plausibly allege a cause of action against the Defendants, the Third Amended Complaint and Plaintiffs' case is hereby DISMISSED WITH PREJUDICE. Plaintiffs shall not be given the opportunity to amend their complaint again, as it has been made clear that no additional factual allegations can or have been made to support Plaintiffs' claims.

*Conclusion*

Plaintiffs have failed to bring new factual allegations of conspiracy in this Third Amended Complaint sufficient to constitute a plausible right to relief. Twombly, 550 U.S. at 557, 127 S. Ct. 1955. In addition to the findings made heretofore, the Court adopts the findings made in its earlier Memorandum Opinion [100] dismissing Plaintiffs' First Amended Complaint. Accordingly, Defendants' Motions to Dismiss [130], [135], [136] are GRANTED and Plaintiffs' Third Amended Complaint is DISMISSED.

SO ORDERED, this the 10th day of September, 2013.

                                                **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**