UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CORR WIRELESS
COMMUNICATIONS, L.L.C.,
CELLULAR SOUTH, INC., and
CELLULAR SOUTH LICENSES, LLC                                    PLAINTIFFS

V.                                      CIVIL ACTION NO. 3:12-CV-036-SA-SAA

AT&T, INC., AT&T MOBILITY LLC,
MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC.,
QUALCOMM INCORPORATED, and
JOHN DOES 1-10                                                   DEFENDANTS

**DEFENDANT QUALCOMM INCORPORATED'S OPPOSITION
TO PLAINTIFFS' MOTION TO ALTER OR AMEND ORDER**

        L. F. Sams, Jr. (MSB #6426)
        Otis R. Tims (MSB #8221)
        Margaret Sams Gratz (MSB #99231)
        MITCHELL MCNUTT & SAMS, P.A.
        P.O. Box 7120
        Tupelo, MS 38802
        (662) 842-3871
        ssams@mitchellmcnutt.com
        otims@mitchellmcnutt.com
        mgratz@mitchellmcnutt.com

        Roger G. Brooks, *admitted pro hac vice*
        Yonatan Even, *admitted pro hac vice*
        CRAVATH, SWAINE & MOORE LLP
        Worldwide Plaza
        825 Eighth Avenue
        New York, NY 10019
        (212) 474-1000
        rgbrooks@cravath.com
        yeven@cravath.com

October 8, 2013        *Attorneys for Defendant Qualcomm Incorporated*

Winning points for consistency if nothing else, Cellular South[1] tries once more to use assertions of "pretext" to vault all the way to an inference of conspiracy. Once again, it ignores the law and the actual contents of its own Third Amended Complaint ("TAC") and the documents it cites. Defective for multiple, independently fatal reasons, Cellular South's Rule 59(e) motion is frivolous both as a matter of law and of fact.

1. <u>The "New Evidence" Cellular South Offers Provides No Support for Cellular South's Claims.</u>

Cellular South asserts that the new "evidence", which demonstrates AT&T's conditional agreement to utilize Band 12 *beginning in 2015*, and Motorola's purported manufacture of Band 12-compatible phones *in late 2013*, somehow fills the gap between the deficient allegations in its TAC and the inference it wishes to draw from them—namely, that Band 17 was created *in 2007* for no reason other than a conspiracy among Defendants intended to harm Cellular South. The "evidence" simply cannot support that heavy load.

As an initial matter, AT&T's September 10, 2013 letter to the FCC (the "2013 Letter") on its face says just the opposite of what Cellular South asserts. In the 2013 Letter, AT&T notes that "interference challenges into the lower 700 MHz A block are significant", asserts that "these challenges can and should be addressed", and commits to supporting interoperability in the Lower 700 MHz A, B, and C Blocks by September of 2015 if—*and only if*—these challenges are addressed through a *"final resolution of the E Block interference issues"*. (Dkt. 173-1 at 1, 6 (emphasis added).) That resolution "requires the Commission to adopt an Order" imposing strict restrictions on high power E Block licensees to reduce interference.[2] (*Id.*

---

[1] We refer to the plaintiffs collectively as "Cellular South".

[2] Cellular South tries to downplay the import of this condition, noting that another source of interference remains unaddressed. But the condition is very real; it requires the FCC to order certain licensees of E Block spectrum to cut their emissions from 50 kW to only 1-2 kW per megahertz of emission bandwidth—a very

1

at 6.) In other words, Cellular South's assertion that "AT&T has abandoned the merits of its technical objections to interoperability" (Mot. at 3), is a simple fabrication with no basis in the document it cites.[3]

*Second*, even if AT&T *had* in 2013 "abandoned . . . its technical objections to interoperability" (Mot. at 3) (which it clearly did not), this could not justify an inference that there was no good faith technical concern *back in 2007*—the time of the allegedly "pretextual" objections. Circumstances change over such a long period,[4] and technology evolves. Participants in the cellular telecommunications industry pour *billions* of dollars into research and development every year precisely to attempt to solve previously unsolved problems. If a solution is found today that allows for operation on Band 12, this does not imply that there was never an interference problem on that Band to begin with—much less that there was never a good faith concern. For this reason, any attempt to ground an inference of "pretext" back in 2007 on this recent "evidence" is specious, not an indication of "a claim to relief that is plausible on its face". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5]

---

substantial reduction. (Dkt. 173-1 at 1, 6.) Thus, even seven years later, AT&T is still unwilling to deploy Band 12 in the current interference environment.

[3] Cellular South's attempt to cite AT&T's agreement to move towards interoperability—the very thing Cellular South demanded in this lawsuit—as evidence of a sinister scheme by AT&T to buy up and exploit Lower A Block spectrum (Mot. at 3) simply demonstrates Cellular South's willingness to throw any stones that come to hand. But this "damned if you do, damned if you don't" rhetoric has no relevance to this motion, or to any inference of conspiracy.

[4] Here, for example, Qualcomm's FLO TV, a high-power broadcast network that was intended to be broadcast nationwide on the D Block and in certain regions of the country on the E Block, was terminated, and these portions of the spectrum have been repurposed to be used for standard, low-power cellular communications.

[5] The U.S. Cellular press release that Cellular South attaches scarcely requires mention. As a threshold matter, the press release is neither "new" nor "evidence"; it *predates* this Court's decision dismissing the TAC by nearly a month, and is clearly hearsay. But even assuming for present purposes that Motorola is indeed now building Band 12 phones for U.S. Cellular, that fact is not distinguishable from Cellular South's allegation that Qualcomm had ultimately decided to make Band 12 chips—an allegation that this Court has already deemed insufficient. (*See* Dkt. 100 at 25-26; Dkt. 172 at 2 (adopting findings and conclusions of prior opinion).)

2

*Finally*, the new "evidence" clearly does nothing at all to correct the core omission in the TAC. The fatal flaw found by this Court is that allegations that "the actions taken by Defendants were . . . technically unjustified" (*i.e.*, pretextual) (Dkt. 172 at 5-6), could not give rise to a reasonable inference that the Defendants entered into any agreement, because they were equally consistent with independent and self-interested action. (*See* Dkt. 100 at 21-22 (rejecting argument that allegations relating to the creation of Band 17 showed pretext); Dkt. 172 at 5-6 (incorporating the same rejection and holding that these allegations were just as consistent with unilateral action).) But the new "evidence"—even if it could show "pretext" (which it clearly cannot)—does nothing to fill in the missing "factual allegations [necessary] to plausibly show the existence of an agreement. That is, . . . allegations of when such a purported agreement happened, . . . that particular individuals met at particular times, or . . . what such an alleged agreement entailed". (Dkt. 172 at 5.) The "cure" does not treat the disease that killed the TAC.

2. "New Evidence" Can Do Nothing to Cure Defective Pleadings.

Cellular South's Motion is also procedurally defective. Although Rule 59(e) does permit a motion bringing forward "new evidence" that "would probably change the outcome", *see Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 677 (5th Cir. 2010), Rule 59(e)'s "new evidence" rule cannot provide a basis to attack a judgment entered under Rule 12(b)(6)— that is, based on the failure of plaintiffs' *pleadings* to state a claim. A Rule 12(b)(6) motion does not turn on "evidence": it assumes the truth of all facts alleged with particularity, and inquires about the legal adequacy of those allegations. *See* Fed. R. Civ. P. 12(b)(6); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). As a result, and absent exceptions not

3

relevant here,[6] extrinsic evidence, whether old or "new", is *never* relevant to a motion to dismiss. *See* Dkt. 172 at 2-3, *Katrina*, 495 F.3d at 205. The documents that Cellular South seeks to have this Court consider as evidence of its allegations of "pretext" therefore cannot, as a matter of law, justify a reversal of the judgment.

It is true that, when asked to consider extrinsic evidence in connection with a nominal Rule 12(b)(6) motion, a court has discretion to convert the motion to one for summary judgment under Rule 56. *See Curry v. Shaw Sch. Dist.*, No. 06-cv-45, 2007 WL 670962, at *1 (N.D. Miss. Feb. 28, 2007) (stating that a court has discretion to consider extrinsic evidence); *Kmart Corp. v. Kroger Co.*, No. 11-cv-103, 2013 WL 4049659, at *3 (N.D. Miss. 2013) (stating that where extrinsic evidence is considered, a motion under Rule 12(b)(6) must be converted to one under Rule 56). This conversion, however, is a means to facilitate a prompt adjudication of the merits of allegations that are actually made in the complaint. *See* 5C Wright & Miller, Federal Practice & Procedure § 1366 (3d ed. 2013). It almost goes without saying that Cellular South cites no case in which, after dismissing a case for failure to state a claim and entering judgment, a court has admitted new "evidence" from the plaintiff under Rule 59(e), then backed up and converted the defendants' previously granted motion to dismiss to a motion for summary judgment under Rule 56, and reversed the entry of judgment.

---

[6] For example, a court considering a motion to dismiss may consider the full text of documents cited or relied on by a complaint, or information of which a court may properly take judicial notice. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

4

<u>Conclusion</u>

For all of these reasons, Cellular South's Motion to Alter or Amend Order Pursuant to Rule 59(e) is without merit and should be denied.


Dated: October 8, 2013
/s/ L.F. Sams, Jr.
L. F. Sams, Jr. (MSB #6426)
Otis R. Tims (MSB #8221)
Margaret Sams Gratz (MSB #99231)
MITCHELL MCNUTT & SAMS, P.A.
P.O. Box 7120
Tupelo, MS 38802
(662) 842-3871
ssams@mitchellmcnutt.com
otims@mitchellmcnutt.com
mgratz@mitchellmcnutt.com

Roger G. Brooks
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rgbrooks@cravath.com
yeven@cravath.com

*Attorneys for Defendant Qualcomm Incorporated*

## CERTIFICATE OF SERVICE

I, L. F. Sams, Jr., one of the attorneys for defendant Qualcomm Incorporated, hereby certify that I have electronically filed the foregoing "Memorandum of Law in Opposition to Plaintiffs' Motion to Alter or Amend Judgment" with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

This, the 8th day of October, 2013.

                                            /s/ L.F. Sams, Jr.
                                            L. F. Sams, Jr.