## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| CORR WIRELESS COMMUNICATIONS, L.L.C., CELLULAR SOUTH, INC., AND CELLULAR SOUTH LICENSES, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:12-cv-036-SA-SAA |
| AT&T INC., AT&T MOBILITY LLC, MOTOROLA SOLUTIONS, INC., AND QUALCOMM INCORPORATED, | ) ) ) ) | |
| Defendants. | ) ) | |

## AT&T MOBILITY LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND ORDER PURSUANT TO F.R.C.P. 59(e)

The Court should deny Plaintiffs' Rule 59(e) motion to alter or amend the judgment, because the materials attached to Plaintiffs' motion fail to bolster the purported allegations of conspiracy that this Court dismissed as insufficient to state a claim under Section 1. In dismissing both the First Amended Complaint and then, with prejudice, the Third Amended Complaint ("TAC"), the Court held that Plaintiffs failed to provide a sufficient factual basis for inferring that Defendants reached any unlawful agreement and that Plaintiffs' claim that Defendants' reasons for supporting the creation of a separate Band Class that did not include the Lower A Block were "pretextual" was not sufficient to bridge that gap. *See* 9/10/13 Mem. Op. at 5-6 (rejecting the "suggest[ion] that because the actions taken by Defendants were allegedly against their self-interest and/or technically unjustified, that those actions evidence an agreement"); 8/31/12 Mem. Op. at 21. As the Court recognized, Plaintiffs' allegations failed in the face of their concession that the standard-setting process at 3GPP "was followed to the letter"

and in the absence of any "facts demonstrating procedural irregularities within the process, that the 3GPP process was subverted or turned into a sham, or that the Defendants agreed to employ – or indeed did employ – any improper practices." 8/31/12 Mem. Op. at 21; *see* 9/10/13 Mem. Op. at 7 (noting absence of "allegations that [3GPP] processes were tainted by the Defendants").

Nothing in the documents submitted purports to address these defects. To the contrary, Plaintiffs rely on those documents to re-argue their claim that there was insufficient technical justification for the creation of Band 17. This is the same argument that Plaintiffs made in support of their First Amended Complaint and in support of the TAC. And the reasons that this Court gave for rejecting that assertion as insufficient continue to apply with undiminished force.

In any event, Plaintiffs' submission provides no new factual support for the premise that the reasons given for the proposal to create Band 17 were pretextual. *First*, although Plaintiffs contend (at 5) that AT&T Mobility's commitment to offer Band 12 devices shows a "change of position by AT&T" with respect to interference, the materials attached to Plaintiffs' motion in fact reinforce what AT&T Mobility has maintained all along – namely, that "[t]he interference challenges in[] the lower 700 MHz A block are significant" and that any carrier operating on this block will suffer poor network quality unless substantial investment is incurred to remedy the interference problem.[1] *Second*, the assertion (based on a U.S. Cellular press release) that Motorola will begin making Band 12 devices could have been made before the Court dismissed the TAC,[2] and Motorola's willingness to offer such devices half a decade after the creation of

---

[1] Letter from Joan Marsh, AT&T Services, Inc., *Promoting Interoperability in the 700 MHz Commercial Spectrum*, WT Docket No. 12-69, at 1 (FCC filed Sept. 10, 2013) (ECF No. 173-1) ("9/10/13 Letter").

[2] *See* U.S. Cellular Press Release, *U.S. Cellular Begins Presale for Moto X with Exclusive Offer for Free Motorola Boom Headset* (Aug. 1, 2013) (ECF No. 173-2).

Band 17 does nothing to support Plaintiffs' speculation that Motorola conspired to disadvantage AT&T Mobility's competitors.

Plaintiffs' submission does not come close to satisfying their heavy burden under Rule 59(e) to show that new evidence "would probably change the outcome" of the Court's ruling. *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003).

## ARGUMENT

### PLAINTIFFS' SUBMISSION DOES NOT SUPPORT THE ALLEGATION THAT DEFENDANTS CONSPIRED TO SUBVERT THE 3GPP PROCESS TO HARM COMPETITION

1.      The Court found that the TAC failed to state a claim because "Plaintiffs provide no factual allegations to plausibly show the existence of an agreement" among Defendants, and that Plaintiffs' allegations of "pretext" do not constitute "factual enhancements that raise the entitlement to relief above the speculative level." 9/10/13 Mem. Op. at 5-6 (internal quotation marks omitted). In particular, the Court found that Plaintiffs offered no factual allegations to suggest that the 3GPP process was manipulated by Defendants in violation of the antitrust laws. *See id.* at 6-7. Plaintiffs' Rule 59(e) motion fails to address the basis for this Court's judgment; moreover, it offers no further support for the (insufficient) premise that Defendants' concerns about interference in the Lower A Block were pretextual.

Plaintiffs' Rule 59(e) motion ignores the basis for this Court's ruling and offers nothing that would tend to cast any doubt on it. Plaintiffs purport merely to bolster the allegation that the interference concerns that prompted Defendants to support the creation of Band 17 were not, as a technical matter, a sufficient basis to justify 3GPP's action. But this Court has properly held, from the start, that such allegations fail to carry Plaintiffs' pleading burden: they fail to render plausible the claim that Defendants reached an unlawful agreement. Plaintiffs continue to

dispute the correctness of the determinations 3GPP reached, but that dispute does not provide any basis for a claim under Section 1 in the absence of allegations – which Plaintiffs do not and cannot make – that the 3GPP process was subverted and turned into a cover for anticompetitive conduct. Nothing in Plaintiffs' submission affects the Court's analysis or warrants a "change [to] the outcome" of dismissal, *Infusion*, 351 F.3d at 696-97; accordingly, Rule 59(e) relief should be denied.

    **2.**    Even if the Court's ruling had turned on the adequacy of factual support for the assertion that interference concerns were "pretextual," Plaintiffs' submission would not provide any reason for the Court to reconsider that result.

    **a.**    Plaintiffs argue (at 2-3, 5) that the 9/10/13 Letter to the FCC represents a "change of position by AT&T" and shows that "AT&T has abandoned the merits of its technical objections to interoperability" because AT&T Mobility has conditionally committed to distribute Band 12-compatible devices in the future. But AT&T Mobility has not altered its position. Motorola's proposal to create Band 17 stated that "[t]he rationale for this new band is to address possible co-existence issues with High power TV broadcast transmission in Channel 51 and other broadcast transmission in channel 55 (Block D) and channel 56 (Block E)."[3] AT&T Mobility supported Motorola's proposal and submitted its own technical paper to 3GPP detailing the risk of interference posed by broadcasts in Channel 51 and the E Block.[4]

    The 9/10/13 Letter makes clear that AT&T Mobility has never changed its position regarding interference. The letter states: "The interference challenges in[ ] the lower 700 MHz A

---

    [3] Motorola, 3GPP TSG RAN WG4 (Radio) Meeting #47, *TS36.101: Lower 700 MHz Band 15*, at 1 (Apr. 2008) (ECF No. 67-4); *see* TAC ¶ 189.

    [4] *See* TAC ¶ 193; AT&T, 3GPP TSG RAN WG4 (Radio) Meeting #47bis, *Performance and Coexistence Issues in the Lower 700 MHz Band* (June 2008) (ECF No. 67-5) (discussing and analyzing Channel 51 and E Block interference concerns for Lower A Block operators).

block are significant. The high power broadcasts currently permitted in Channel 51 and in the lower 700 MHz E block create the potential for significant interference problems for LTE deployments in the adjacent 700 MHz A, B and C Blocks." 9/10/13 Letter at 1. Far from changing its position, AT&T Mobility contends that it "is committed to supporting lower 700 MHz interoperability . . . *if certain conditions are met*." *Id.* (emphasis added). These conditions include FCC-ordered efforts to mitigate the sources of interference that affect Band 12, as well as successful development and testing of new technology to achieve interoperability that was not in existence at the time AT&T Mobility and others voted to adopt Band 17.

More specifically, AT&T Mobility's interoperability commitment is conditioned on a final, non-appealable FCC order in which the FCC first eliminates the risk of E Block interference by changing its rules to allow only low-power transmissions in the E Block – a restriction previously imposed on AT&T Mobility but not other E Block licensees. *Id.* at 2, 6.[5] Moreover, AT&T Mobility's commitment to begin offering Band 12 devices will not take effect for at least two years after the FCC promulgates those rule changes. This two-year period is intended to give AT&T Mobility time to test and deploy MFBI – a new technology that would

---

[5] Plaintiffs note (at 2 n.1) that AT&T Mobility did not condition its agreement to operate on Band 12 on "any action to be taken [by the FCC] against alleged Channel 51 interference," but AT&T Mobility's letter makes clear that Channel 51 interference remains a serious issue. *See* 9/10/13 Letter at 1. As AT&T Mobility explained to the FCC, "managing and mitigating the interference from Channel 51" and the E Block "would account for the greatest expenses" in deploying a Band 12 network. Notice of Proposed Rulemaking, *Promoting Interoperability in the 700 MHz Commercial Spectrum*, 27 FCC Rcd 3521, ¶ 33 (2012), *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-12-31A1.pdf. Moreover, Plaintiffs fail to note that the FCC has already begun the process of addressing Channel 51 interference: the FCC is reallocating the Channel 51 spectrum from high-powered broadcast TV operations to low-powered mobile wireless operations through an auction currently planned for next year, and TV stations currently broadcasting on Channel 51 will be relocated to other spectrum that poses no interference risk to Band 12 operations. *See* Notice of Proposed Rulemaking, *Expanding the Economic and Innovation Opportunities of Spectrum Through Incentive Auctions*, 27 FCC Rcd 12357 (2012), *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-12-118A1.pdf.

allow AT&T Mobility to support both its existing Band 17 devices and new Band 12 devices. If AT&T Mobility unilaterally concludes that deployment of MFBI in two years will "result in significant negative customer impact," AT&T Mobility is given an additional six months to deploy Band 12 devices. *Id.* at 4. And if at any time AT&T Mobility determines that the process of fulfilling its Band 12 commitments could "undermine the quality of the service it is providing on its network," AT&T Mobility may seek a waiver or extension from the FCC in meeting its commitment. *Id.* at 5.

AT&T Mobility's agreement to offer Band 12 devices does not bolster Plaintiffs' assertion (at 5) that Defendants' justification for adopting Band 17 was "pretextual" or "offered for the purpose of disguising the anticompetitive reasons that were the actual reasons for the fragmentation of Band 12." To the contrary, AT&T Mobility steadfastly argued that operating a Band 12 network open to the Lower A Block would subject customer call traffic to interference emanating from neighboring blocks, and that remedying or mitigating this interference would be very costly without intervention by the FCC. The fact that AT&T Mobility recently reached an agreement with the FCC in which AT&T Mobility will offer Band 12 devices – conditioned on the FCC promulgating rules to remedy a key source of interference – does not show that Defendants acted pretextually in 2008 and 2009 when they advocated for the creation of Band 17 precisely to avoid such interference.

**b.** Plaintiffs additionally rely (at 3-4) on an announcement that Motorola will distribute Band 12 devices, but this information is not new. The press release (by U.S. Cellular, a Band 12 operator) was issued on August 1, 2013 – more than a month before the Court dismissed the TAC with prejudice – and Plaintiffs could have brought it to the Court's attention at that time after conducting "proper diligence." *Infusion*, 351 F.3d at 697. Because they failed

to do so before the Court issued its judgment, Plaintiffs cannot rely on such evidence to obtain Rule 59(e) relief. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (explaining that Rule 59(e) "may not be used to . . . present evidence that could have been raised prior to the entry of judgment") (internal quotation marks omitted); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) ("[A] motion to alter or amend the judgment under Rule 59(e) . . . cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (internal quotation marks omitted).

In any event, rather than providing "strong evidence" that Motorola's concerns regarding interference were "mere pretexts," as Plaintiffs insist (at 4), the U.S. Cellular announcement lends no support to any notion of a conspiracy. The fact that Motorola may have reached a different business judgment concerning whether to manufacture Band 12 devices five years after Band 17 was initially proposed and after technology evolved substantially does nothing to call into question the legitimacy of its original judgment. The Court rejected a similar argument that Qualcomm's initial refusal to supply Band 12 chips and subsequent decision to offer Band 12 chips provided evidence of a conspiracy. *See* 8/31/12 Mem. Op. at 25-26. Motorola's alleged actions offer no indication of conspiracy, but instead reflect a "rational and competitive business strategy unilaterally prompted by common perceptions of the market," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) – namely, the opportunity to profit from sales of equipment compatible with Band 12.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to alter or amend the judgment dismissing the TAC with prejudice should be denied.

Dated:  October 21, 2013                    Respectfully submitted,

                                            AT&T Mobility LLC


                                            /s/ *David W. Upchurch*
                                            DAVID W. UPCHURCH, MSB #10558
                                            HOLLAND, RAY, UPCHURCH & HILLEN, P.A.
                                            P.O. DRAWER 409
                                            TUPELO, MS 38802-0409
                                            TELEPHONE: 662-842-1721
                                            FACSMILE: 662-844-613
                                            dwu@hruhpa.com

                                            Michael K. Kellogg (Admitted *Pro Hac Vice*)
                                            Aaron M. Panner (Admitted *Pro Hac Vice*)
                                            William J. Rinner (Admitted *Pro Hac Vice*)
                                            Kellogg, Huber, Hansen, Todd,
                                               Evans & Figel, P.L.L.C.
                                            1615 M Street, N.W., Suite 400
                                            Washington, DC 20036
                                            Telephone: (202) 326-7921
                                            mkellogg@khhte.com
                                            apanner@khhte.com
                                            wrinner@khhte.com

## CERTIFICATE OF SERVICE

I, David W. Upchurch, hereby certify that I have this day filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following registered participants:

Alan W. Perry, Esq., MSB #4127
Daniel J. Mulholland, Esq., #3643
Walter H. Boone, Esq., #8651
Forman, Perry, Watkins, Krutz & Tardy, LLP
200 S. Lamar Street, Suite 100
Jackson, MS 39201-4099
Tel: 601-969-7833
Fax: 601-960-8613
aperry@fpwk.com

Charles L. McBride, Esq., MSB #8995
M. Patrick McDowell, Esq., MSB #9746
Joseph A. Sclafani, Esq., MSB #99670
Brian C. Kimball, Esq., MSB #100787
Brunini, Grantham, Grower & Hewes, PLLC
190 E. Capitol Street, Suite 100
Jackson, MS 39201-2151
Tel: 601-960-6891
Fax: 601-960-6902
cmcbride@brunini.com

Walter T. Johnson, Esq., MSB #8712
Watkins & Eager PLLC
400 East Capitol Street, Suite 300 (39201)
P.O. Box 650
Jackson, MS 39205
Tel: 601-965-1900
Fax: 601-965-1901
wjohnson@watkineager.com

*Counsel for Plaintiffs Cellular South, Inc.*
*Corr Wireless Communications, L.L.C. and*
*CellularSouth Licenses, LLC*

L.F. Sams, Jr.
Otis R. Tims
Margaret Sams Gratz
Mitchell, McNutt & Sams, P.A.
P.O. Box 7120
Tupelo, MS 38802-7120
ssams@mitchellmcnutt.com
otims@mitchellmcnutt.com

Roger G. Brooks, Esq.
Yonatan Even, Esq.
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Counsel for Defendant Qualcomm Inc.*

Jim M. Greenlee, Esq.
Holcomb, Dunbar, Watts, Best, Masters & Golmon
400 South Lamar Blvd., Suite A
P.O. Drawer 707
Oxford, MS 39655
jgreenlee@holcombdunbar.com

John S. Gibson, Esq.
Chahira Solh, Esq.
Crowell & Moring, LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505

*Counsel for Defendant Motorola Solutions, Inc.*

DATED this the 21st day of October, 2013.

/s/ *David W. Upchurch*
DAVID W. UPCHURCH